Jon B. Fougner (State Bar No. 314097)
Email: Jon@FougnerLaw.com
600 California Street, 11th Fl.
San Francisco, CA 94108
Telephone: (434) 623-2843
Facsimile: (206) 338-0783

[Additional counsel appear on signature page]

*Attorneys for Plaintiff and the Proposed Classes*

## UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF CALIFORNIA
### OAKLAND DIVISION

| | |
|---|---|
| DANIEL BERMAN,<br><br>                    Plaintiff,<br><br>    v.<br><br>FREEDOM FINANCIAL NETWORK, LLC,<br>and FREEDOM DEBT RELIEF, LLC,<br><br>                    Defendants. | Case No.<br><br>**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**<br><br>**Class Action**<br><br>**JURY TRIAL DEMAND** |

Plaintiff Daniel Berman, by his undersigned counsel, for this class action complaint against Defendants Freedom Financial Network, LLC and Freedom Debt Relief, LLC and their present, former, and future direct and indirect parent companies, subsidiaries, affiliates, agents, and/or related entities, alleges as follows:

## I.    INTRODUCTION

1. <u>Nature of Action</u>: What Plaintiff seeks freedom and relief from isn't debt. It's Freedom Debt Relief itself. Accordingly, Plaintiff, individually and as class representative for all others similarly situated, brings this action against Defendants for sending robotexts and robocalls in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA").

## II.    PARTIES

2.   Plaintiff is an individual residing in California, in this District and Division.

3.   Defendant Freedom Financial Network, LLC is a limited liability company organized under the laws of Delaware with its principal place of business at 1875 South Grant Street, Suite 400, San Mateo, California 94402.

4.   Defendant Freedom Debt Relief, LLC is a limited liability company organized under the laws of Delaware with its principal place of business at 1875 South Grant Street, Suite 400, San Mateo, California 94402.

5.   Freedom Debt Relief, LLC is a wholly owned subsidiary of Freedom Financial Network, LLC.

## III.    JURISDICTION AND VENUE

6.   Jurisdiction: This Court has federal-question subject matter jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1331 because the TCPA is a federal statute. 47 U.S.C. § 227; *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 372 (2012).

7.   Personal Jurisdiction: This Court has personal jurisdiction over Defendants because:

        a.    they are headquartered in California; and

        b.    their conduct at issue targeted Plaintiff, a California resident, while Plaintiff was in California, at Plaintiff's cellular telephone number, which bears a California area code.

8.   Venue: Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1)-(2) because a substantial part of the events giving rise to Plaintiff's claims—namely, the receipt of the illegal telemarketing—occurred in this District.

9.   Intradistrict Assignment:   Assignment to this Division is proper pursuant to Civil L.R. 3-2(c) because a substantial part of the events or omissions that give rise to Plaintiff's claims—namely, the receipt of the illegal telemarketing—occurred in the County of Alameda.

## IV.    FACTS

### A.    The Enactment of the TCPA and its Regulations

10. Robocalls Outlawed: Enacted in 1991, the TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice … to any telephone number assigned to a … cellular telephone service." 47 U.S.C. § 227(b)(1). Encouraging individuals to hold robocallers accountable on behalf on their fellow Americans, the TCPA provides a private cause of action to persons who receive such calls. 47 U.S.C. § 227(b)(3).

11. Rationale: In enacting the TCPA, Congress found: "Evidence compiled by the Congress indicates that residential telephone subscribers consider automated or prerecorded telephone calls, regardless of the content or the initiator of the message, to be a nuisance and an invasion of privacy." Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, 105 Stat. 2394 § 2(10). Congress continued: "Banning such automated or prerecorded telephone calls to the home, except when the receiving party consents to receiving the call or when such calls are necessary in an emergency situation affecting the health and safety of the consumer, is the only effective means of protecting telephone consumers from this nuisance and privacy invasion." *Id.* § 2(12). The TCPA's sponsor described unwanted robocalls as "the scourge of modern civilization. They wake us up in the morning; they interrupt our dinner at night; they force the sick and elderly out of bed; they hound us until we want to rip the telephone out of the wall." 137 Cong. Rec. 30,821 (1991) (statement of Sen. Hollings).

12. Text Messages: For TCPA purposes, a text message is a call. *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 951 – 52 (9th Cir. 2009).

13. Prior Express Written Consent: In 2013, the FCC made clear that "prior express written consent" is required before making telemarketing robocalls to wireless numbers. Specifically, it ordered:

> [A] consumer's written consent to receive telemarketing robocalls
> must be signed and be sufficient to show that the consumer: (1)

received clear and conspicuous disclosure of the consequences of providing the requested consent, i.e., that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates. In addition, the written agreement must be obtained without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service.

*In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 FCC Rcd. 1830, 1844 ¶ 33 (2012) (footnotes omitted) (internal quotation marks omitted).

14. <u>Do Not Call Registry</u>: Additionally, the TCPA outlaws unsolicited telemarketing (robocalls or otherwise) to phone numbers on the National Do Not Call Registry. 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(c)(2). Encouraging individuals to hold telemarketers accountable on behalf on their fellow Americans, the TCPA provides a private cause of action to persons who receive such calls. 47 U.S.C. § 227(c)(5).

15. <u>Broadly Construed</u>: As a remedial statute that was passed to protect consumers from unwanted automated telephone calls, the TCPA is construed broadly to benefit consumers. *Lofton v. Verizon Wireless (VAW) LLC*, No. 13-cv-05665-YGR, 2015 U.S. Dist. LEXIS 34516, at *9 (N.D. Cal. Mar. 18, 2015).

**B.   Defendants**

16. Defendants offer debt negotiation and counseling services.

17. One of Defendants' marketing strategies involves an automatic telephone dialing system ("ATDS").

18. One of Defendants' marketing strategies involves the use of an ATDS to place telemarketing phone calls.

19. One of Defendants' marketing strategies involves the use of an ATDS to send telemarketing text messages.

20. One of Defendants' marketing strategies involves making telemarketing calls using artificial or prerecorded voices.

21. Defendants use ATDS equipment that has the capacity to store or produce telephone numbers to be called, that includes autodialers and predictive dialers, and that plays a prerecorded message once the calls connect.

22. Defendants advertise a job opening in Tempe, Arizona for an "Inside Sales Representative" to "[r]eceive and work fresh leads daily through outbound and inbound calls," requiring "1+ year of call center experience in a high volume, outbound environment."

23. Recipients of these outbound calls, including Plaintiff, did not consent to receive them.

24. These outbound calls were not necessitated by an emergency.

**C.     Plaintiff**

25. Plaintiff is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

26. Plaintiff owns a phone number that begins "(510) 326." All calls to Plaintiff referenced herein were to that number.

27. Plaintiff's phone number is assigned to a cellular telephone service. Calls to it make his cell phone ring.

28. Plaintiff's phone number has been listed on the National Do Not Call Registry since 2003.

29. Plaintiff never consented to receive phone calls or text messages from Defendants.

30. Plaintiff never gave his phone number to Defendants.

31. Plaintiff never did business with Defendants.

**D.     Defendants' Illegal Telemarketing Robocalls to Plaintiff**

32. On February 14, 2018, Plaintiff received a text message out of the blue.

33. The caller ID was (409) 359-9066.

34. The message said, in its entirety: "Dêbt-Help: Need to pay $10,000 + in cc bills? We're here to help! We can save you a ton of money. Call for more info. Respond no to quit" [sic].

35. Plaintiff inferred that the message had been sent automatically rather than manually typed by a human for the following reasons.

      a.      It was out of the blue.

      b.      It came from a caller ID he did not recognize.

      c.      It did not name him.

      d.      It did not name its sender.

      e.      It was not at all personalized to Plaintiff.

      f.      It misspelled the word "Debt" as "Dêbt," in an apparent attempt to evade spam detection.

      g.      It purported to provide mechanical opt-out instructions, something real human beings rarely do when text messaging each other one-on-one.

36. Within an hour, Plaintiff received a phone call from the same caller ID, (409) 359-9066.

37. Plaintiff answered. No human promptly came on the other end of the line. Instead, an artificial or prerecorded voice told Plaintiff to press "1" for more information. He did. A male with an American accent promptly came on the line.

38. The male claimed to be calling from a company with two names: "Freedom Financial Network" and "Freedom Debt Relief."

39. The purpose of the call was to advertise the goods or services of Defendants.

40. The male stated that he was in Phoenix, Arizona.

41. Phoenix borders Tempe.

42. Plaintiff said that, should he wish to learn any more about Defendants' products, *he* preferred to call *them*—rather than vice versa.

43. The male stated that his name was "Cody Longfield" and that his phone number was (602) 732-3664.

44. Plaintiff asked how Defendants had obtained his phone number. Mr. Longfield stated that Defendants had purchased it from a lead generator for the purpose of cold-calling him.

45. Plaintiff's privacy was invaded by, Plaintiff's cellular telephone was occupied by and Plaintiff was annoyed and harassed by these telemarketing robocalls.

## V.    CLASS ACTION ALLEGATIONS

46. Cellular Telephone Class Definition: Pursuant to Federal Rules of Civil Procedure 23(b)(2) and (b)(3), Plaintiff brings this case as a member of and on behalf of two classes (each a "Class," collectively, the "Classes"). One Class (the "Cellular Telephone Class") is defined as follows: All persons in the United States to whom:

     a.     Defendants and/or a third party acting on their behalf made a call or sent a text message;

     b.     to a cellular telephone number;

     c.     using an automated telephone dialing system or an artificial or prerecorded voice;

     d.     in order to market Defendants' products;

     e.     during the period that begins four years before the filing of the original complaint in this matter and ends on the first day of trial.

47. DNC Class Definition: The other Class (the "DNC Class") is defined as follows: All persons in the United States to whom:

     a.     Defendants and/or a third party acting on their behalf made a call or sent a text message;

     b.     to a residential telephone number on the National Do Not Call Registry;

     c.     in order to market Defendants' products;

     d.     during the period that begins four years before the filing of the original complaint in this matter and ends on the first day of trial;

48. Exclusions: Excluded from the Classes are Defendants, any entity in which Defendants (or either of them) have a controlling interest or that has a controlling interest in Defendants (or either of them), Defendants' legal representatives, assignees, and successors, the judge to whom this case is assigned and the judge's immediate family.

49. <u>Numerosity</u>: The Classes are so numerous that joinder of all their members is impracticable. Defendants are the largest debt settlor in the United States. Sending a robotext or placing a robocall costs less than one cent, so Defendants could afford to do so at massive scale. On information and belief, each Class has more than 100 members.

50. <u>Commonality</u>: There are many questions of law and fact common to Plaintiff and members of each Class. Indeed, the very feature that makes Defendants' conduct so annoying— its automated nature—makes this dispute amenable to classwide resolution. These common questions of law and fact include, but are not limited to, the following:

    a.    What the relationships between Defendants are;

    b.    Whether the text message quoted above was sent en masse (or, instead, individually composed and transmitted to Plaintiff);

    c.    Whether the voice referenced above was artificial or prerecorded (or, instead, a live person who sounds robotic and asks people to press buttons);

    d.    Whether Defendants' desire to sell their debt-negotiation services constitutes as "emergency" within the meaning of the TCPA;

    e.    Whether, under the TCPA, one may send automated, unsolicited, telemarketing text messages to cellular telephone numbers provided that they contain opt-out instructions;

    f.    Whether Defendants had a pattern and practice of telemarketing to numbers on the National Do Not Call Registry; and

    g.    Whether Defendants' violations were knowing or willful.

51. <u>Typicality</u>: Plaintiff's claims are typical of the claims of the Classes. Plaintiff's claims and those of the Classes arise out of the same course of conduct by Defendants and are based on the same legal and remedial theories.

52. <u>Adequacy</u>: Plaintiff will fairly and adequately protect the interests of the Classes. Plaintiff has retained competent and capable counsel experienced in TCPA class action litigation. Plaintiff and his counsel are committed to prosecuting this action vigorously on behalf of the

Classes and have the financial resources to do so. Neither Plaintiff nor his counsel have interests contrary to or conflicting with those of the proposed Classes.

53. <u>Superiority</u>: The common issues arising from this conduct that affect Plaintiff and members of the Classes predominate over any individual issues, making a class action the superior means of resolution. Adjudication of these common issues in a single action has important and desirable advantages, including judicial economy, efficiency for Class members and classwide res judicata for Defendants. Classwide relief is essential to compel Defendants to comply with the TCPA.

a.    <u>Control</u>: The interest of individual members of the Classes in individually controlling the prosecution of separate claims against Defendants is small because the damages in an individual action ($500 to $1,500 per violation) are dwarfed by the cost of prosecution.

b.    <u>Litigation</u>: Plaintiff is not aware of any pending TCPA litigation between Class members and Defendant.

c.    <u>Forum</u>: The forum is a desirable, efficient location in which to resolve the dispute because Plaintiff lives in the District and Defendants are headquartered in it.

d.    <u>Difficulties</u>: No significant difficulty is anticipated in the management of this case as a class action. Management of these claims is likely to present significantly fewer difficulties than are presented in many class actions because the calls at issue are automated and because the TCPA articulates bright-line standards for liability and damages.

54. <u>Appropriateness</u>: Defendants have acted on grounds generally applicable to the Classes, thereby making final injunctive relief and corresponding declaratory relief with respect to the Classes appropriate on a classwide basis.

## VI.    FIRST CLAIM FOR RELIEF
**(Violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227(b)(1)—Robocalling)**
**On Behalf of Plaintiff and the Cellular Telephone Class**
**Against All Defendants**

55. Plaintiff realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

56. Defendants and/or their affiliates or agents violated the TCPA, 47 U.S.C. § 227(b)(1), by placing non-emergency calls (including text messages) to the cellular telephone numbers of Plaintiff and members of the Cellular Telephone Class using an ATDS and/or artificial or prerecorded voice without prior express written consent.

57. Plaintiff and members of the Cellular Telephone Class are entitled to an award of $500 in damages for each such violation. 47 U.S.C. § 227(b)(3)(B).

58. Plaintiff members of the Cellular Telephone Class are also entitled to and do seek an injunction prohibiting Defendants and/or their affiliates and agents from violating the TCPA, 47 U.S.C. § 227(b)(1), by placing non-emergency calls (including text messages) to any cellular telephone number using an ATDS and/or artificial or prerecorded voice without prior express written consent.

## VII.    SECOND CLAIM FOR RELIEF
**(Knowing and/or Willful Violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227(b)(1)—Robocalling)**
**On Behalf of Plaintiff and the Cellular Telephone Class**
**Against All Defendants**

59. Plaintiff realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

60. Defendants and/or their affiliates or agents knowingly and/or willfully violated the TCPA, 47 U.S.C. § 227(b)(1), by placing non-emergency calls (including text messages) to the cellular telephone numbers of Plaintiff and members of the Cellular Telephone Class using an ATDS and/or artificial or prerecorded voice without prior express written consent.

61. Plaintiff and members of the Cellular Telephone Class are entitled to an award of up to $1,500 in damages for each such knowing and/or willful violation. 47 U.S.C. § 227(b)(3).

## VIII.    THIRD CLAIM FOR RELIEF
**(Violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227(c)—Telemarketing)**
**On Behalf of Plaintiff and the DNC Class**
**Against All Defendants**

62. Plaintiff realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

63. Defendants and/or their affiliates or agents violated the TCPA, 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(c)(2), by placing unsolicited telemarketing calls (including text messages) to the telephone numbers of Plaintiff and members of the DNC Class even though those numbers were listed on the National Do Not Call Registry.

64. Plaintiff and members of the DNC Class seek an award of $500 in damages for each such violation. 47 U.S.C. § 227(c)(5)(B).

65. Plaintiff members of the DNC Class are also entitled to and do seek an injunction prohibiting Defendants and/or their affiliates and agents from violating the TCPA, 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(c)(2), by placing unsolicited telemarketing calls (including text messages) to any telephone numbers on the National Do Not Call Registry.

## IX.   FOURTH CLAIM FOR RELIEF
**(Knowing and/or Willful Violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227(c)—Telemarketing)**
**On Behalf of Plaintiff and the DNC Class**
**Against All Defendants**

66. Plaintiff realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

67. Defendants and/or their affiliates or agents knowingly and/or willfully violated the TCPA, 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(c)(2), by placing unsolicited telemarketing calls (including text messages) to the telephone numbers of Plaintiff and members of the DNC Class even though those numbers were listed on the National Do Not Call Registry.

68. Plaintiff and members of the DNC Class are entitled to and seek an award of up to $1,500 in damages for each such violation. 47 U.S.C. § 227(c)(5).

## X.   PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on his own behalf and on behalf of all members of the Classes, prays for judgment against Defendants as follows:

A.   Certification of the proposed Classes;

B.   Appointment of Plaintiff as representative of the Classes;

C.   Appointment of the undersigned counsel as counsel for the Classes;

D.      A declaration that actions complained of herein violate the TCPA;

E.      An order enjoining Defendants and their affiliates, agents and related entities from engaging in the unlawful conduct set forth herein;

F.      An award to Plaintiff and the Classes of damages, as allowed by law;

G.      An award to Plaintiff and the Classes of costs and attorneys' fees, as allowed by law, equity and/or California Code of Civil Procedure section 1021.5;

H.      Leave to amend this Complaint to conform to the evidence presented at trial; and

I.      Orders granting such other and further relief as the Court deems necessary, just, and proper.

## XI.    DEMAND FOR JURY

Plaintiffs demand a trial by jury for all issues so triable.

## XII.    SIGNATURE ATTESTATION

The ECF user filing this paper attests that concurrence in its filing has been obtained from each of the other signatories.

1    RESPECTFULLY SUBMITTED AND DATED this 19th day of February, 2018.

2

3                                      By: */s/ Jon B. Fougner*
                                          Jon B. Fougner
4

5                                      Edward A. Broderick
                                       Email: ted@broderick-law.com
6                                      Anthony I. Paronich
                                       Email: anthony@broderick-law.com
7                                      BRODERICK & PARONICH, P.C.
                                       99 High Street, Suite 304
8                                      Boston, Massachusetts 02110
                                       Telephone:  (617) 738-7080
9                                      Facsimile:   (617) 830-0327
                                       *Subject to Pro Hac Vice*
10

11                                     Matthew P. McCue
                                       E-mail: mmccue@massattorneys.net
12                                     THE LAW OFFICE OF MATTHEW P. McCUE
                                       1 South Avenue, Suite 3
13                                     Natick, Massachusetts  01760
                                       Telephone:  (508) 655-1415
14                                     Facsimile:   (508) 319-3077
                                       *Subject to Pro Hac Vice*
15

16

17                                     *Attorneys for Plaintiff and the Proposed Classes*

18

19

20

21

22

23

24

25

26

27

28