SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
  A Limited Liability Partnership
  Including Professional Corporations
JAY T. RAMSEY, Cal. Bar No. 273160
1901 Avenue of the Stars, Suite 1600
Los Angeles, California 90067-6055
Telephone:  310.228.3700
Facsimile:   310.228.3701
jramsey@sheppardmullin.com

Attorneys for Defendants
FREEDOM FINANCIAL NETWORK, LLC,
and FREEDOM DEBT RELIEF, LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANIEL BERMAN,<br><br>              Plaintiff,<br><br>         v.<br><br>FREEDOM FINANCIAL NETWORK, LLC, and FREEDOM DEBT RELIEF, LLC,<br><br>              Defendants. | Case No.: 4:18-CV-01060-DMR<br><br>*Hon. Donna M. Ryu*<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br><br>Date: June 14, 2018<br>Time: 11:00 AM<br>Courtroom: 4, 3rd Floor |

**TO THE COURT, PLAINTIFF AND HIS COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on June 14, 2018 at 11:00 a.m., or as soon thereafter as the matter may be heard, before the Honorable Donna M. Ryu, United States District Court Magistrate Judge, in Courtroom 4, 3rd Floor of the above entitled Court, the Oakland Courthouse, located at 1301 Clay Street, Oakland, California 94612, or at a location otherwise designated by the Court, Defendants Freedom Financial Network, LLC and Freedom Debt Relief, LLC will and hereby do move for an order compelling the individual arbitration of the claims for relief set forth in Plaintiff's Complaint pursuant to the Federal Arbitration Act, 9 U.S.C. 1, *et seq.*, and staying Plaintiff's claims pending the completion of arbitration.   This Motion is made on the grounds that Plaintiff agreed in writing to arbitrate the claims asserted in the Complaint.

This Motion is based on this Notice of Motion, the Memorandum of Points and Authorities herein, the Declaration of Daniel Barsky, Esq. (which is attached to the Motion as Exhibit A), the Declaration of Mitenkumar Bhadania and the exhibits thereto (which are attached to the Motion as Exhibit B), all pleadings, papers, and records on file with the Court, and such further evidence and argument as the Court may deem necessary and proper.

Dated:  April 30, 2018          SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

By_____ */s/ Jay T. Ramsey*
                                      JAY T. RAMSEY

                                   Attorneys for Defendants
                          FREEDOM FINANCIAL NETWORK, LLC,
                            and FREEDOM DEBT RELIEF, LLC

SMRH:485007298.3                        FREEDOM'S MOTION TO COMPEL ARBITRATION

# **<u>TABLE OF CONTENTS</u>**

**Page**

I.    INTRODUCTION ..................................................................................... 1

II.    FACTUAL BACKGROUND ..................................................................... 2

III.   ARGUMENT ............................................................................................ 5

    A.    Any Dispute Regarding the Enforceability and Scope of the Arbitration Provision is Delegated to the Arbitrator for Resolution ..................................................................................... 5

          1.    The Arbitration Provision Expresses Clear and Unmistakable Intent to Arbitrate Threshold Questions of Arbitrability ........................................................... 6

          2.    Incorporation of AAA's Rules Proves the Parties Intent to Arbitrate Threshold Questions of Arbitrability ............................ 7

    B.    The Arbitration Provision Must Be Enforced ................................. 8

          1.    The FAA Applies to the Arbitration Provision ............................ 9

          2.    The Arbitration Provision is Valid and Binding............................ 9

          3.    The Terms and Conditions Are Not Unconscionable ................ 12

               a.    The Arbitration Provision is Not Procedurally Unconscionable ................................................. 13

               b.    The Arbitration Provision is Not Substantively Unconscionable ................................................. 14

          4.    Plaintiff's Claims Are Subject to the Arbitration Provision....... 16

          5.    The Terms and Conditions Apply to Non-Signatories Such as Freedom ................................................................... 17

               a.    Equitable Estoppel.......................................... 18

               b.    Freedom is a Third-Party Beneficiary.............................. 19

          6.    Plaintiff Waived the Right to Participate in a Class Action ....... 20

    C.    The Court Should Stay the Proceedings Pending Resolution at Arbitration ..................................................................... 20

IV.   CONCLUSION ...................................................................................... 21

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

<u>Federal Cases</u>

*Allied-Bruce Terminix Cos., Inc. v. Dobson*
    513 U.S. 265 (1995) .......................................................................................... 8

*Anonymous v. JP Morgan Chase & Co.*
    2005 U.S. Dist. LEXIS 26083 (S.D.N.Y. Oct. 29, 2005) .................................... 16

*Arthur Andersen, LLP v. Carlisle*
    129 S. Ct. 1896 (2009) ...................................................................................... 17

*AT&T Mobility LLC v. Concepcion*
    131 S. Ct. 1740 (2011) ...................................................................................... 20

*AT&T Technologies, Inc. v. Comm. Workers of Am.*
    475 U.S. 643 (1986) .......................................................................................... 8

*Carnival Cruise Lines, Inc. v. Shute*
    499 U.S. 585, 111 S. Ct. 1522, 113 L. Ed. 2d 622 (1991) ................................. 12

*Carr v. Citibank, N.A.*
    2015 U.S. Dist. LEXIS 172137 (S.D.N.Y. Dec. 23, 2015) .................................. 17

*Carr v. Credit One Bank*
    No. 15-cv-6663 (LAK), 2015 U.S. Dist. LEXIS 168353 (S.D.N.Y.
    Dec. 16, 2015) ............................................................................................ 14, 15

*Chavarria v. Ralphs Grocery Co.*
    733 F.3d 916 (9th Cir. 2013) ............................................................................. 12

*Chiron Corp. v. Ortho Diagnostic Sys.*
    207 F.3d 1126 (9th Cir. 2000) ......................................................................... 8, 9

*Citizens Bank v. Alafabco, Inc.*
    539 U.S. 52 (2002) ............................................................................................ 9

*Conrad v. Phone Dirs. Co.*
    585 F.3d 1376 (10th Cir. 2009) .......................................................................... 1

*Contec Corp. v. Remote Sol. Co.*
    398 F.3d 205 (2d Cir. 2005) ............................................................................... 7

*Cordas v. Uber Tech.*
   228 F. Supp. 3d 985 (N.D. Cal. 2017)................................................................. 10

*Crawford v. Beachbody, LLC*
   2014 U.S. Dist. LEXIS 156658, 2014 WL 6606563 (S.D. Cal. Nov.
   5, 2014) ............................................................................................................... 11

*Dean Witter Reynolds, Inc. v. Byrd*
   470 U.S. 213 (1985) .............................................................................................. 8

*Denney v. BDO Seidman, LLP*
   412 F.3d 58 (2d Cir. 2005) .................................................................................. 18

*First Options of Chicago, Inc. v. Kaplan*
   514 U.S. 938 (1995) .............................................................................................. 6

*Fteja v. Facebook, Inc.*
   841 F. Supp. 2d 829 (S.D.N.Y. 2012) ................................................................ 12

*Gilmer v. Interstate/Johnson Lane Corp.*
   500 U.S. 20 (1991) .............................................................................................. 16

*Howsam v. Dean Witter Reynolds, Inc.*
   537 U.S. 79 (2002) ................................................................................................ 6

*Kai Peng v. Uber Techs., Inc.*
   237 F. Supp. 3d 36 (E.D.N.Y. 2017) .................................................................. 13

*Katz v. Cellco P'ship*
   794 F.3d 341 (2d Cir. 2015) ................................................................................ 20

*Koyoc v. Progress Fin. Co.*
   2014 U.S. Dist. LEXIS 65229 (C.D. Cal. May 9, 2014) ..................................... 17

*Lewis v. UBS Fin. Servs.*
   818 F. Supp. 2d 1161 (N.D. Cal. 2011) .............................................................. 20

*Marmet Health Care Ctr., Inc. v. Brown*
   132 S. Ct. 1201 (2012) .......................................................................................... 8

*McNamara v. Royal Bank of Scot. Group, PLC*
   2012 U.S. Dist. LEXIS 158580 (S.D. Cal. Nov. 5, 2012) ................................... 17

SMRH:485007298.3
Case No.: 4:18-CV-01060-DMR
FREEDOM'S MOTION TO COMPEL ARBITRATION

*Meyer v. Uber Techs., Inc.*
    868 F.3d 66 (2d Cir. 2017) ............................................................................ 11

*Mohamed v. Uber Techs., Inc.*
    836 F.3d 1102 (9th Cir. 2016) ...................................................................... 13

*Momot v. Mastro*
    652 F.3d 982 (9th Cir. 2011) .......................................................................... 6

*Mortensen v. Bresnan Communs., LLC*
    722 F.3d 1151 (9th Cir. 2013) ........................................................................ 9

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*
    460 U.S. 1 (1983) ............................................................................... 8, 16, 20

*Naval v. HIP Network Servs. IPA, Inc.*
    620 F. Supp. 2d 566 (S.D.N.Y. 2009) .......................................................... 14

*Nevarez v. Forty Niners Football Co.*
    No. 16-CV-07013, 2017 U.S. Dist. LEXIS 131208 (N.D. Cal. Aug.
    15, 2017) ...................................................................................................... 10

*Nguyen v. Barnes & Noble Inc.*
    763 F.3d 1171 (9th Cir. 2014) ...................................................................... 10

*Oracle Am., Inc. v. Myriad Group A.G.*
    724 F.3d 1069 (9th Cir. 2013) ........................................................................ 7

*Register.com, Inc. v. Verio, Inc.*
    356 F.3d 393 (2d Cir. 2004) ......................................................................... 10

*Rent-A-Center, W., Inc. v. Jackson*
    130 S. Ct. 2772 (2010) .................................................................................... 5

*Shearson/Am. Exp., Inc. v. McMahon*
    482 U.S. 220 (1987) ...................................................................................... 12

*Sokol Holdings, Inc. v. BMB Munai, Inc.*
    542 F.3d 354 (2d Cir. 2008) ......................................................................... 18

*Spano v. V&J Nat'l Enterprises, LLC*
    264 F. Supp. 3d 440 (W.D.N.Y. 2017) ......................................................... 19

-iv-

*Spear, Leeds & Kellogg v. Cent. Life Assur. Co.*
    85 F.3d 21 (2d Cir. 1996) ...................................................................... 19

*Specht v. Netscape Commc'ns Corp.*
    306 F.3d 17 (2d Cir. 2002) .................................................................... 10

*Starkey v. G Adventures, Inc.*
    796 F.3d 193 (2d Cir. 2015) .................................................................. 11

*Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*
    559 U.S. 662 (2010) ................................................................................ 8

*Swift v. Zynga Game Network, Inc.*
    805 F. Supp. 2d 904 (N.D. Cal., 2011) ................................................ 11

*United Bhd. of Carpenters & Joiners of Am., Local No. 1780 v. Desert*
    *Palace, Inc.*
    94 F.3d 1308 (9th Cir. 1996) .................................................................. 6

*Uptown Drug Co. v. CVS Caremark Corp.*
    962 F. Supp. 2d 1172 (N.D. Cal. 2013).................................................. 15

*Washington v. William Morris Endeavor Entm't, LLC*
    No. 10-cv-9647, 2011 U.S. Dist. LEXIS 81346 (S.D.N.Y. Jul. 20,
    2011) ...................................................................................................... 14

**State Cases**

*Matter of Conifer Realty LLC (Envirotech Servs., Inc.)*
    964 N.Y.S.2d 735 (N.Y. App. Div. 2013)........................................ 14, 15

*Emigrant Mtge. Co., Inc. v. Fitzpatrick*
    95 A.D.3d 1169 (N.Y. App. Div. 2012)................................................. 15

*Gillman v. Chase Manhattan Bank*
    534 N.E.2d 824 (N.Y. 1988) ............................................................ 12, 14

*King v. Fox*
    851 N.E.2d 1184 (N.Y. 2006) ............................................................... 13

*Ranieri v Bell Atl. Mobile*
    759 N.Y.S.2d 448 (N.Y. App. Div. 2003).............................................. 20

SMRH:485007298.3

*Tsadilas v. Providian Nat'l Bank*
    786 N.Y.S.2d 478 (N.Y. App. Div. 2004)......................................................... 13, 14

SMRH:485007298.3                                                       FREEDOM'S MOTION TO COMPEL ARBITRATION

## **MEMORANDUM OF POINTS AND AUTHORITIES**

Defendants Freedom Financial Network, LLC and Freedom Debt Relief, LLC (collectively "Freedom"), submit this Memorandum of Points and Authorities in support of their Motion to Compel Arbitration of the claims raised in Plaintiff's Class Action Complaint ("Complaint" or "Compl.") (Dkt. No. 1) as required by the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, *et seq.*, and to stay the action in favor of arbitration.[1]

## I.   **INTRODUCTION**

On February 19, 2018, Plaintiff Daniel Berman ("Plaintiff") filed a putative class action Complaint alleging violations under the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.*, (the "TCPA").  (Compl. at ¶¶ 1, 55-68).  In bringing this putative class action, Plaintiff disregards the terms and conditions (the "Terms and Conditions") on http://signup.electronics-sweepstakes.com (the "Website") to which he agreed when he accessed the Website and registered thereon with his cellular telephone number.  By registering, Plaintiff agreed to the Terms and Conditions and consented to be contacted via telephone or text message by, or on behalf of, marketing partners including Freedom. The Terms and Conditions contain a mandatory dispute resolution provision (hereinafter "Arbitration Provision") which requires that Plaintiff's claims be arbitrated in accordance with the Commercial Arbitration Rules of the American Arbitration Association ("AAA") in New York—not litigated in this Court, or any other court. Further, the putative class claims are prohibited by the Terms and Conditions, pursuant to which Plaintiff expressly waived any right he may have to bring or participate in a class

---

[1]   Freedom hereby reserves its right to file a substantive Motion to Dismiss at a later date in accordance with any schedule set by the Court, if this Court does not grant this motion.  *See Conrad v. Phone Dirs. Co.*, 585 F.3d 1376, 1382 n.2 (10th Cir. 2009) (a party may file a Rule 12 motion to dismiss complaint following denial of motion to compel arbitration).

action lawsuit against Freedom. Moreover, to the extent that Plaintiff may contend—incorrectly—that his claims are outside the ambit of the arbitration provision, Plaintiff also expressly delegated that issue to the arbitrator.

Although Freedom is not a signatory to the Terms and Conditions, Freedom can still compel arbitration of Plaintiff's claims because a non-signatory may enforce an arbitration agreement with respect to allegations that are intertwined with the underlying contract obligations. The claims against Freedom are intertwined with the Terms and Conditions because Plaintiff's allegations against Freedom arise out of and directly relate to his use of the Survey Website. It is through the use of the Website wherein Plaintiff not only agreed to the Terms and Conditions but provided prior express written consent to receive text messages and phone calls by, or on behalf of, Freedom. Indeed, the Terms and Conditions include a separate paragraph stating that where consent is provided, such as here, a user consents to be contacted by the marketing partners (which are included in blue hyperlink in the consent) and includes Freedom. Moreover, the Terms and Conditions provide for "any disputes or claims" to be submitted to arbitration and further the Arbitration Provision encompasses "a dispute concerning any aspect of these Terms & Conditions."

Accordingly, this Court is not the proper forum to adjudicate this action, which is only properly adjudicated in arbitration by AAA, as Plaintiff agreed, and only on an individual basis, as Plaintiff also agreed.

## II.   **FACTUAL BACKGROUND**

Plaintiff agreed to the mandatory dispute resolution procedures set forth in the Terms and Conditions on the Website operated by American Prize Center, LLC ("APC"). *See* Declaration of Mitenkumar Bhadania ("Bhadania Decl."), attached as **Exhibit A** to the Motion, at ¶¶ 8-11; Declaration of Daniel Barsky, Esq. ("Barsky Decl.") attached as **Exhibit B** to the Motion, Ex. 1 thereto. APC is a digital marketing company owned by Fluent, LLC ("Fluent") that is used to provide

advertising and lead generation services for its advertiser customers, such as Freedom. (Barsky Decl. ¶ 4). Fluent uses APC's website to collect first-party data and stores the data in a database that is used by Fluent and APC to assist brands like Freedom in targeting customers. (*Id.* ¶ 4). In order to participate in promotions and reward surveys on APC's website, users are required to register and agree to the Terms and Conditions, which includes a mandatory arbitration provision. (*Id.* ¶ 5). Users then have the option of consenting to receive texts and telemarketing calls to the telephone numbers provided. (*Id.*). Unless a user consents to receiving texts and calls, no texts or calls will be sent to the number provided by the user. (Bhadania Decl. ¶¶ 17-19).

Plaintiff alleges that he received one text message and one telephone call by or on behalf of Freedom on February 14, 2018. (Compl. ¶ 32-33, 36). About one and a half months before that date, on December 24, 2017 at 8:39:16 PM EST, a user who inputted Plaintiff's telephone number visited the Survey Site, a website owned and operated by APC. (Bhadania Decl. ¶ 6). Upon landing on the Survey Site, the user agreed to the Terms and Conditions of the Survey Site by clicking the "Enter to Win" button on the registration page. (*Id.* ¶ 9). The System contemporaneously recorded the date and time when the user clicked "Enter to Win," which was at 8:40:12 PM EST. (*Id.*). Above the "Enter to Win" button, the following sentence is reproduced: "I understand and agree to the Terms & Conditions which includes mandatory arbitration and Privacy Policy." (*Id.* ¶ 10).

The Terms and Conditions in effect when Plaintiff registered with the Survey Site, and agreed to by Plaintiff, contain a mandatory arbitration provision. (Barsky Decl., Ex. 1). The Terms and Conditions provide:

> If you have a dispute concerning any aspect of these Terms & Conditions, the Service, the Content or a Site, you should first contact customer support on our Sites. We may choose to provide you with a final written settlement offer during this process. If we provide you with a final written settlement offer and you don't accept it, or we can't otherwise satisfactorily resolve your dispute,

you can submit your dispute for resolution by arbitration before the American Arbitration Association ("AAA") in the county where you live by filing a separate Demand for Arbitration online by following the instructions at https://apps.adr.org/webfile/.

If we have a dispute, we will submit our dispute for resolution by arbitration before the AAA in New York, NY. If either party files for arbitration, it will be conducted in accordance with the then current AAA Commercial Arbitration Rules. The arbitrator will have exclusive authority to resolve any dispute including any claim that all or any part of the Terms & Conditions, including this provision, are unenforceable.

\*\*\*

To the extent permitted by law, you agree that you will not bring, join or participate in any class action lawsuit as to any claim, dispute or controversy that you may have against us and/or our employees, officers, directors, members, representatives and/or assigns.

\*\*\*

You may opt-out of this Arbitration/Dispute Resolution Provision by providing written notice of your decision within thirty (30) days of the date that you first access a Site.

(Barksy Decl., Ex. 1 hereto). In fact on the first page of the Terms and Conditions, the second paragraph notifies a user that the Terms and Conditions contain a mandatory arbitration provision, class action waiver, and that a user can opt-out within 30-days. (*Id.*).

The user who inputted Plaintiff's telephone number consented to being contacted via telemarketing calls and text messages from APC's marketing partners when he checked the unchecked check box and clicked the "Continue" button. (Bhadania Decl. ¶¶ 11-13). The System contemporaneously recorded the date and time when the user who inputted Plaintiff's telephone number clicked the "Continue" button, which was December 24, 2017 at 08:41:13 PM EST. (*Id.* ¶ 13-16). Above the "Continue" button was a hyperlink to "Marketing Partners," which included Freedom Financial. (*Id.*¶ 11).

Thus, Plaintiff is expressly bound to arbitrate his claims based on the Terms and Conditions governing telemarketing calls and texts that Plaintiff claims were sent to his telephone number by, or on behalf of, Freedom. And, Plaintiff did not opt-out of the arbitration provision. (Barsky Decl. ¶ 9). Because Plaintiff agreed to the Arbitration Provision and did not opt-out, he remains bound by it and must individually arbitrate his claims.

Additionally, by agreeing to the Terms and Conditions, Plaintiff expressly waived his right to bring or participate in a class action lawsuit. Accordingly, not only is Plaintiff barred from bringing this putative class action, he must be compelled to arbitrate his claims individually.

## III.  ARGUMENT

Under the FAA, Plaintiff should be compelled to arbitrate his claims on an individual basis. Plaintiff has agreed to the Terms and Conditions pursuant to which he agreed to mandatory arbitration and waived his right to participate in a class action. Accordingly, and as set forth more fully below, the Court should compel arbitration of this dispute for at least two independent reasons: (1) the arbitrator, and not the court, should determine arbitrability; and (2) even if the Court reaches the questions of arbitrability, it must still compel arbitration.

### A.  Any Dispute Regarding the Enforceability and Scope of the Arbitration Provision is Delegated to the Arbitrator for Resolution

The arbitrator, not the Court, should decide whether the parties entered into a valid arbitration agreement and the scope of that agreement. Federal law permits parties to arbitrate the two threshold questions of arbitrability, namely whether the arbitration agreement is valid and whether its scope covers the claims at issue. *See Rent-A-Center, W., Inc. v. Jackson*, 130 S. Ct. 2772, 2777 (2010) ("[P]arties can agree to arbitrate 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy."). To do so, the parties must "clearly and unmistakably" express an

intent to arbitrate gateway questions of arbitrability in their agreement. *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83-84 (2002); *United Bhd. of Carpenters & Joiners of Am., Local No. 1780 v. Desert Palace, Inc.*, 94 F.3d 1308, 1310 (9th Cir. 1996) (where parties "clearly and unmistakably" provide for an arbitrator to decide questions of arbitrability, "courts will be divested of their authority and an arbitrator will decide the first instance of whether a dispute is arbitrable").

Here, the language of the Arbitration Provision provides "clear and unmistakable" evidence of the parties' intent to arbitrate threshold questions of arbitrability for two reasons: (1) the parties used both an express provision and broad terms to describe the scope of arbitration; and (2) the parties' incorporation of the AAA's Commercial Arbitration Rules into the Arbitration Provision is clear and unmistakable evidence of their intent to leave threshold arbitrability determinations to the arbitrator.

### 1. *The Arbitration Provision Expresses Clear and Unmistakable Intent to Arbitrate Threshold Questions of Arbitrability*

The Arbitration Provision uses both an express provision, and broad terms, to describe the scope of arbitration, which refers questions of arbitrability to the arbitrator. Where the parties clearly and unmistakably assign determination of the arbitration agreement's scope to the arbitrator, the court must allow the arbitrator to decide that issue. *See First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944-45 (1995).

Here, the arbitration clause provides that "[t]he arbitrator will have exclusive authority to resolve any dispute including any claim that all or any part of the Terms and Conditions, including this provision, are unenforceable." (*See* Barsky Decl., Ex. 1.) The language of the delegation clause of the Arbitration Provision clearly manifests the parties' intent to arbitrate the gateway issue of whether the dispute is subject to arbitration. *See Momot v. Mastro*, 652 F.3d 982, 988 (9th Cir. 2011) (finding that the language "delegating to the arbitrators the authority to determine

'the validity or application of any of the provisions of' the arbitration clause, constitutes 'an agreement to arbitrate threshold issues concerning the arbitration agreement'") (quoting *Rent-A-Center*, 130 S. Ct. at 2777). Thus, the Arbitration Provision in the Terms and Conditions, on its face, requires that disputes over the validity and scope of the Arbitration Provision be submitted to arbitration.

### 2. *Incorporation of AAA's Rules Proves the Parties Intent to Arbitrate Threshold Questions of Arbitrability*

The parties expressly incorporated the Commercial Arbitration Rules of AAA into the Arbitration Provision. This is clear and unmistakable evidence of their intent to leave threshold arbitrability determinations to the arbitrator. *Oracle Am., Inc. v. Myriad Group A.G.*, 724 F.3d 1069, 1074 (9th Cir. 2013) ("Virtually every circuit to have considered the issue has determined that incorporation of the [AAA's] arbitration rules constitutes clear and unmistakable evidence that the parties agreed to arbitrate arbitrability."); *Contec Corp. v. Remote Sol. Co.*, 398 F.3d 205, 2011 (2d Cir. 2005) (holding that where "a signatory to a contract containing an arbitration clause and incorporating by reference the AAA Rules, [the party] cannot now disown its agreed-to obligation to arbitrate *all* disputes, including the question of arbitrability"). Indeed, AAA rules provide that "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim." AAA Rule R-7(a). Here, the Arbitration Provision explicitly incorporates AAA's arbitration rules by stating that "[i]f either party files for arbitration, it will be conducted in accordance with the then current AAA Commercial Arbitration Rules." (Barsky Decl., Ex. 1.) By virtue of the foregoing, the parties agreed that the issue of whether a valid arbitration agreement exists be expressly for the arbitrator to resolve. Accordingly, this motion must be granted.

### B.  The Arbitration Provision Must Be Enforced

Section 2 of the FAA, 9 U.S.C. §§ 1-16, provides that written agreements to arbitrate "shall be valid, irrevocable, and enforceable, save upon grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  The central purpose of the FAA is to ensure that "private agreements to arbitrate are enforced according to their terms."  *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 682 (2010).   Indeed, the United States Supreme Court has repeatedly emphasized that the FAA enunciates a "strong federal policy in favor of arbitration agreements" that requires courts to "rigorously enforce agreements to arbitrate." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 217, 221 (1985); *Marmet Health Care Ctr., Inc. v. Brown*, 132 S. Ct. 1201, 1203 (2012) (stating that the FAA "reflects an emphatic federal policy in favor of arbitral dispute resolution"). Furthermore, federal policy applies "notwithstanding any state substantive or procedural policies to the contrary."  *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983).   With respect to consumer disputes, the Supreme Court has also emphasized that arbitration is favored:

> We agree that Congress, when enacting [the FAA], had the needs of consumers, as well as others, in mind. . . . [T]he Act, by avoiding the delay and expense of litigation, will appeal to big business and little business alike . . . corporate interests [and] . . . individuals.   Indeed, arbitration's advantages often would seem helpful to individuals, say, complaining about a product, who need a less expensive alternative to litigation.

*Allied-Bruce Terminix Cos., Inc. v. Dobson*, 513 U.S. 265, 280 (1995) (internal quotation marks omitted).

The merits of the underlying dispute cannot be considered when deciding an arbitration motion.  *See AT&T Technologies, Inc. v. Comm. Workers of Am.*, 475 U.S. 643, 649-50 (1986). Rather, the FAA mandates that a court determine only: (1) whether a valid agreement to arbitrate exists; and (2) whether the agreement encompasses the dispute. *See Chiron Corp. v. Ortho Diagnostic Sys.*, 207 F.3d

1126, 1132 (9th Cir. 2000).  If a court finds that a valid agreement to arbitrate exists and that it encompasses the dispute, that court is required to refer the matter to arbitration. *Id.*

A party challenging an arbitration clause "bear[s] the burden of proving that the provision is unenforceable" based on validity and scope. *Mortensen v. Bresnan Communs., LLC*, 722 F.3d 1151, 1157 (9th Cir. 2013) (citing *Green Tree Fin. Corp.-Ala. v. Randolph,* 531 U.S. 79, 91 (2000).

### 1.    The FAA Applies to the Arbitration Provision

The FAA applies to the instant Arbitration Provision because it is a written provision in a "contract evidencing a transaction involving commerce." 9 U.S.C. § 2. A "written provision . . . in a contract" includes electronic contracts like the subject Terms and Conditions. *See* 15 U.S.C. § 7001(a)(1) ("[A] signature, contract, or other record relating to such transaction may not be denied legal effect, validity or enforceability solely because it is in electronic form.").   The United States Supreme Court has interpreted the term "involving commerce," as used in the FAA to be "the functional equivalent of the more familiar 'affecting commerce'--words of art that ordinarily signal the broadest permissible exercise of Congress' Commerce Clause power." *Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 56 (2002).

Here, the Terms and Conditions affect commerce because the services offered to Plaintiff included, among other things, the opportunity to participate in sweepstakes and promotions and to be contacted by APC's marketing partners, including Freedom, for information pertaining to debt relief, and Plaintiff (or someone on his behalf) provided prior express written consent to be contacted in connection with same.

### 2.    The Arbitration Provision is Valid and Binding

The Arbitration Provision must be enforced because Plaintiff (or someone on his behalf) provided prior express written consent when Plaintiff's telephone number was used to register on one of APC's websites to receive information from

Freedom. By providing consent and registering, Plaintiff agreed to APC's Terms and Conditions—which included notice that APC's marketing partners, such as Freedom, would contact Plaintiff—and included an explicit agreement to arbitrate. (*See* Barsky Decl., Ex. 1). While the Arbitration Provision allows a user to opt-out within 30-days, Plaintiff did not advise APC or Freedom that he intended to opt-out of the dispute resolution provision.  (*Id.*).  As a result, Plaintiff remains bound by those provisions.

Contracts formed on the Internet come primarily in two forms: "'clickwrap' (or 'click-through') agreements, in which website users are required to click on an 'I agree' box after being presented with a list of terms and conditions of use; and 'browsewrap' agreements, where a website's terms and conditions of use are generally posted on the website via a hyperlink." *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1175 (9th Cir. 2014). However, some contracts are considered a hybrid of both clickwrap and browsewrap. *Nevarez v. Forty Niners Football Co.*, No. 16-CV-07013, 2017 U.S. Dist. LEXIS 131208, at *20-21 (N.D. Cal. Aug. 15, 2017) (finding that the subject terms of use were neither true clickwrap nor true browsewrap because the user must either click "Accept and Continue," "Sign In," or "Submit Order" and that below those buttons is the sentence "By continuing past this page, you agree to our terms of use").[2]

A user can manifest assent to terms and conditions by clicking "I agree" or where the user was put on actual or constructive notice of the terms and conditions. *See Register.com, Inc. v. Verio, Inc.*, 356 F.3d 393, 403 (2d Cir. 2004); *Specht v.*

---

[2]   "While new commerce on the Internet has exposed courts to many new situations, it has not fundamentally changed the principles of contract." *Register.com, Inc. v. Verio, Inc.*, 356 F.3d 393, 403 (2d Cir. 2004).; *Specht v. Netscape Commc'ns Corp.*, 306 F.3d 17, 29 (2d Cir. 2002) ("Mutual manifestation of assent, whether by written or spoken word or by conduct, is the touchstone of contract."); *Cordas v. Uber Tech.*, 228 F. Supp. 3d 985, 988 (N.D. Cal. 2017) ("[M]utual assent is key to contract formation.").

*Netscape Commc'ns Corp.*, 306 F.3d 17, 29 (2d Cir. 2002). Here, Plaintiff (or someone on his behalf) clicked the "Enter to Win" button. Above that button was a hyperlink to the Terms and Conditions. Thus, Plaintiff cannot argue that he did not consent to the Terms and Conditions (and the Arbitration Provision contained therein).

There can be no doubt that Plaintiff was put on actual or constructive notice of the Terms and Conditions and agreed to be bound by them.[3] The hyperlink to the Terms and Conditions was <u>underlined</u> and hyperlinked. *Swift v. Zynga Game Network, Inc.*, 805 F. Supp. 2d 904, 911-12 (N.D. Cal., 2011) (concluding that where a user was provided with an opportunity to review the terms of service in the form of a hyperlink immediately below the acceptance button, the user had agreed to the terms and was bound by them); *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 78 (2d Cir. 2017) (finding that the entire screen was visible and the terms of service appeared directly below the registration button and that the relevant language was in "dark print contrast[ed] with the bright white background, and the hyperlinks are in blue and underlined); *Starkey v. G Adventures, Inc.*, 796 F.3d 193, 197 (2d Cir. 2015) (multiple bolded, capitalized headings alerting customers of terms and conditions was sufficiently reasonable notice); *Crawford v. Beachbody, LLC*, 2014 U.S. Dist. LEXIS 156658, 2014 WL 6606563, at *2-3 (S.D. Cal. Nov. 5, 2014) (enforcing forum selection clause contained within terms and conditions of website where, at the final page of placing an order, plaintiff was required to click on "Place Order" and language on the same page stated that "by clicking Place Order below, you are agreeing" to the website's terms and conditions, which were hyperlinked).

Additionally, the Terms and Conditions containing the arbitration provision were not "hidden" but located above the "Enter to Win" button and hyperlinked.

---

[3] "New York and California apply 'substantially similar rules for determining whether the parties have mutually assented to a contract term.'" *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 74 (2d Cir. 2017) (citation omitted).

This configuration is entirely proper and enforceable. *Compare Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 587, 589, 111 S. Ct. 1522, 113 L. Ed. 2d 622 (1991) (enforcing forum selection clause printed on a cruise ticket where notice of conditions was printed in bold font and capital letters on the front of the ticket) *with Fteja v. Facebook, Inc.*, 841 F. Supp. 2d 829, 839 (S.D.N.Y. 2012) ("[C]licking the hyperlinked phrase is the twenty-first century equivalent of turning over the cruise ticket. In both cases, the consumer is prompted to examine terms of sale that are located somewhere else. Whether or not the consumer bothers to look is irrelevant.").

Given (i) the clear notice provided to Plaintiff at the time of registration that by clicking "Enter to Win," he agreed to be bound by the Terms and Conditions, (ii) the fact that the language of the Arbitration Provision itself is clear and conspicuous, and (iii) that the Arbitration Provision plainly binds Plaintiff to arbitrate all of his disputes, a valid and enforceable agreement to arbitrate exists. Accordingly, where the Court, as here, is presented with a written agreement to arbitrate, the Court must enforce it.

### 3.    *The Terms and Conditions Are Not Unconscionable*

An arbitration clause, like the one here, which is governed by the FAA "is presumed to be valid and enforceable." *Shearson/Am. Exp., Inc. v. McMahon*, 482 U.S. 220, 226-27 (1987). Though the FAA applies, the statute is construed to permit use of state law to invalidate arbitration agreements under certain limited circumstances, such as "fraud, duress, or unconscionability." *Chavarria v. Ralphs Grocery Co.*, 733 F.3d 916, 921-22 (9th Cir. 2013). The Terms and Conditions provide that "New York law controls, without regard to conflicts of law provisions." (Barsky Decl., Ex. 1).

Under New York law, "[a] determination of unconscionability generally requires a showing that [a] contract was both procedurally and substantively unconscionable when made." *Gillman v. Chase Manhattan Bank*, 534 N.E.2d 824,

828 (N.Y. 1988). That is, there must be some showing of "an absence of meaningful choice on the part of one . . . part[y] together with contract terms which are unreasonably favorable to the other." *King v. Fox*, 851 N.E.2d 1184, 1191 (N.Y. 2006). Here, to the extent that Plaintiff may argue unconscionability, the argument lacks merit for the reasons set forth herein.

a.   <u>The   Arbitration   Provision   is   Not   Procedurally   Unconscionable</u>

Courts applying New York law have consistently rejected challenges to procedural unconscionability where there is an opt-out provision. *See Kai Peng v. Uber Techs., Inc.*, 237 F. Supp. 3d 36, 55 (E.D.N.Y. 2017) ("Courts applying New York law have considered an opt-out provision as an *important, if not dispositive*, factor in rejecting challenges of procedural unconscionability.") (emphasis added). Here, Plaintiff had the opportunity to opt-out within 30-days. *See Tsadilas v. Providian Nat'l Bank*, 786 N.Y.S.2d 478, 480-81 (N.Y. App. Div. 2004) ("The arbitration provision alone is not unconscionable because plaintiff had the opportunity to opt out without any adverse consequences."); *Kai Peng*, 237 F. Supp. 3d at 55 (collecting cases); *Mohamed v. Uber Techs., Inc.*, 836 F.3d 1102, 1111 (9th Cir. 2016) (finding that the 30-day opt-out provision in an Uber service agreement precluded a finding that the delegation clause was procedurally unconscionable, explaining that "the existence of a meaningful right to opt-out of [arbitration] necessarily renders [the arbitration clause] (and the delegation clause specifically) procedurally conscionable as a matter of law") (alterations in original).

Here, the 30-day opt-out notice is provided in the second paragraph on the first page of the Terms and Conditions and then again in the Arbitration Provision. Its inclusion is material and renders the Arbitration Provision procedurally conscionable.

Moreover, Plaintiff was under no duress to accept the arbitration agreement in the Terms and Conditions, nor was he fraudulently induced into accepting the same.

*See Carr v. Credit One Bank*, No. 15-cv-6663 (LAK), 2015 U.S. Dist. LEXIS 168353, at *7 (S.D.N.Y. Dec. 16, 2015) ("arbitration agreements are enforceable despite an inequality in bargaining power" unless "coupled with high pressure tactics that coerce" agreement); *accord*, *Tsadilas*,786 N.Y.S.2d at 481; *see also*, *Naval v. HIP Network Servs. IPA, Inc.*, 620 F. Supp. 2d 566, 571 (S.D.N.Y. 2009) (a form contract offered on a take-it-or-leave-it basis does not alone render a contract procedurally unconscionable).

Arbitration is the alternative dispute resolution expressly preferred by Congress. There could be no credible surprise to Plaintiff by the inclusion of the arbitration clause in the Terms and Conditions. It is neither buried within fine print, nor was it of a smaller or indistinguishable font size or type. *See Matter of Conifer Realty LLC (Envirotech Servs., Inc.)*, 964 N.Y.S.2d 735, 738-39 (N.Y. App. Div. 2013) (the arbitration provision was not unconscionable because it was "printed in the same size type and same color ink" as the rest of the agreement and was not buried or obscured); *Tsadilas*, 786 N.Y.S.2d at 481 (arbitration provision was in same type size as the rest of the agreement). The Arbitration Provision is readily ascertainable by a review of the plain language, and the failure to read a contract does not invalidate it (in the absence of fraud). *See Washington v. William Morris Endeavor Entm't, LLC*, No. 10-cv-9647, 2011 U.S. Dist. LEXIS 81346, at *24 (S.D.N.Y. Jul. 20, 2011) (there was "no evidence that [plaintiff] was precluded from reading the . . . Agreement or asking questions about its terms before signing it"). Accordingly, the Court should find that the Arbitration Provision contained in the Terms and Conditions is not procedurally unconscionable.

b.  The Arbitration Provision is Not Substantively Unconscionable

Because the Arbitration Provision is not procedurally unconscionable, the Court need not address substantive unconscionably. *See Gillman*, 534 N.E.2d at 828 (a finding of unconscionability requires a showing of both procedural and

-14-

substantive unconscionability); *Uptown Drug Co. v. CVS Caremark Corp.*, 962 F. Supp. 2d 1172, 1182 (N.D. Cal. 2013) (finding that plaintiff "has not shown that the arbitration clause is procedurally unconscionable to any degree, the court need not inquire into whether the agreement is substantively unconscionable").

In any event, the Arbitration Provision contained in the Terms and Conditions is not substantively unconscionable. Substantive unconscionability concerns the actual terms of the contract and examines the relative fairness of obligations assumed. Substantive unconscionability "appear[s] in the content of the contract per se" and may include, by way of example, "inflated prices, unfair termination clauses, unfair limitations on consequential damages and improper disclaimers of warranty." *Emigrant Mtge. Co., Inc. v. Fitzpatrick*, 95 A.D.3d 1169, 1170 (N.Y. App. Div. 2012) (internal quotation marks and citations omitted).

Here, there is nothing in the arbitration agreement that is unreasonably favorable to APC or Freedom. *Credit One Bank*, 2015 U.S. Dist. LEXIS 168353 at *7 (finding, among other reasons, that the arbitration is not substantively unconscionable where "the arbitration clause does not foreclose plaintiff's TCPA claims, is enforceable by either party, [and] permits appeals"). The Arbitration Provision contains none of the indicia of substantive unconscionability that courts typically highlight in refusing to enforce such agreements, as Plaintiff and Freedom are each bound by the same obligations in the arbitration clause. Neither party has the sole right to elect arbitration to the exclusion of the other, because arbitration of all claims is mandated by the Terms and Conditions. Moreover, the Arbitration Provision does not impose prohibitive costs on Plaintiff. Even if there was some minor benefit afforded to Freedom that is not afforded to Plaintiff, mutuality of remedy does not render an arbitration agreement unconscionable. *Envirotech*, 964 N.Y.S.2d at 739 (finding that although the "agreement does not contain a reciprocal arbitration provision and indeed limits petitioner's remedies in the event of a default by EnviroTech, 'mutuality of remedy is not required in an arbitration contract' . . .

1  and . . . '[t]here is nothing inherent in the [agreements] . . . which suggests that the
2  terms [are] *unreasonably* favorable to [EnviroTech].'" (internal citation omitted).

3  Thus, there is nothing in the Arbitration Provision that provides a benefit to
4  Freedom that is not provided to Plaintiff. *See Anonymous v. JP Morgan Chase &*
5  *Co.*, 2005 U.S. Dist. LEXIS 26083, at *18 (S.D.N.Y. Oct. 29, 2005) (finding that
6  "[t]here is no provision of the contract that the plaintiff points to which provided
7  that [defendant] could obtain benefits of arbitration that plaintiff could not").
8  Accordingly, the Court should find that the Terms and Conditions and Arbitration
9  Provision are not substantively unconscionable.

### 4.    *Plaintiff's Claims Are Subject to the Arbitration Provision*

11  The Arbitration Provision requires that "any disputes or claims" that Plaintiff
12  may have which cannot be informally resolved must be submitted to binding
13  arbitration before AAA in the county where Plaintiff resides, to be governed by the
14  Commercial Arbitration Rules of AAA. (Barsky Decl., Ex. 1). The scope of an
15  arbitration clause must be interpreted liberally and "as a matter of federal law, any
16  doubts concerning the scope of arbitrable issues should be resolved in favor of
17  arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24
18  (1983). The party resisting arbitration has the burden of proving that the claims are
19  unsuitable for arbitration. *See Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20,
20  26 (1991).

21  Plaintiff's claims fall squarely within the Arbitration Provision. The crux of
22  Plaintiff's claims is that Freedom allegedly violated the provisions of the TCPA by
23  sending one text message and placing one telephone call to Plaintiff's cellular
24  telephone through the use of an automatic telephone dialing system without
25  Plaintiff's prior express consent to do so. Plaintiff's claims arise out of and are
26  directly related to his use of APC's website and his registration to participate in
27  promotions. The Arbitration Provision requires arbitration of "any disputes or
28  claims" and "any aspect of the[] Terms & Conditions" or use of the website.

(Barsky Decl., Ex. 1).   The Terms and Conditions include a separate paragraph entitled "Telemarketing and Text Messages" which provides that where a user provides prior express consent then the user agrees to be contacted via telemarketing calls or text messages, by among others, ACP's marketing partners, such as Freedom. Plaintiff's claim that he received an unsolicited telephone call and text message clearly falls within the scope of the Arbitration Provision.

Courts in the Ninth Circuit and Second Circuit have routinely held that claims concerning allegations of TCPA violations may be properly arbitrated pursuant to valid and enforceable arbitration agreements. *See McNamara v. Royal Bank of Scot. Group, PLC*, 2012 U.S. Dist. LEXIS 158580, at *21 (S.D. Cal. Nov. 5, 2012) (finding that plaintiff's "TCPA claims relate to his Agreement with Defendants, and are consequently subject to arbitration"); *Koyoc v. Progress Fin. Co.*, 2014 U.S. Dist. LEXIS 65229, at *20 (C.D. Cal. May 9, 2014) (finding that "the determination of Plaintiff's TCPA claim arises directly from and relates to his loan from Defendant and necessarily requires interpretation of the Loan Agreement and related Consent Agreement"); *Carr v. Citibank, N.A.*, 2015 U.S. Dist. LEXIS 172137, at *3 (S.D.N.Y. Dec. 23, 2015) (finding that the arbitration clause in a credit card agreement applied to plaintiff's TCPA claim because it contemplated "arbitration of any claim related to the parties' relationship, and the existence of consent to contact the plaintiff via telephone undeniably implicates the parties' relationship with each other"). Accordingly, because the issues raised by the Complaint fall centrally within the scope of the Arbitration Provision, they must be arbitrated.

### 5.   *The Terms and Conditions Apply to Non-Signatories Such as Freedom*

Although Freedom is not a signatory to the Terms and Conditions, it may nonetheless compel arbitration of Plaintiff's claims.   A non-party may compel arbitration if the relevant state contract law allows him to enforce the arbitration agreement. *Arthur Andersen, LLP v. Carlisle*, 129 S. Ct. 1896, 1903 (2009). Here,

the Terms and Conditions provide that New York law governs. (Barsky Decl., Ex. 1).  The Terms and Conditions apply to Freedom based on equitable estoppel and because Freedom is a third-party beneficiary.

a.   <u>Equitable Estoppel</u>

Under New York law, a non-signatory can compel arbitration under the doctrine of equitable estoppel where a plaintiff's claim against a non-signatory is "'intimately found in' or '"intertwined with' the underlying obligations of the . . . agreement[] as to allow the non-signatory . . . to compel arbitration." *Denney v. BDO Seidman, LLP*, 412 F.3d 58, 70 (2d Cir. 2005) ("[A] careful review of 'the relationship among the parties, the contracts they signed . . . , and the issues that had arisen' among them discloses that 'the issues the nonsignatory is seeking to resolve in arbitration are intertwined with the agreement that the estopped party has signed.'") (internal citations omitted). "[I]n addition to the 'intertwined' factual issues, there must be a relationship among the parties of a nature that justifies a conclusion that the party which agreed to arbitrate with another entity should be estopped from denying an obligation to arbitrate a similar dispute with the adversary which is not a party to the arbitration agreement." *Sokol Holdings, Inc. v. BMB Munai, Inc.*, 542 F.3d 354, 359 (2d Cir. 2008).

APC is owned by Fluent. Fluent uses APC's website to collect first party data to assist brands like Freedom in targeting customers. The claims against Freedom directly relate to Plaintiff's use of the APC website and his participation in promotions. Specifically, it is through the use of APC's website that Plaintiff agreed to the Terms and Conditions and also provided express written prior consent to be contacted by APC/Fluent and their marketing partners such as Freedom. In addition, the Terms and Conditions include a separate paragraph entitled "Telemarketing and Text Messages" wherein a user who has provided prior express consent, which Plaintiff did, also consents to be contacted by "the marketing partners listed in and hyperlinked to the consent." (Barsky Decl., Ex. 1).  The hyperlink to the marketing

-18-

partners located in the consent form (which was underlined and in blue font) that Plaintiff agreed to includes Freedom. (Bhadania Decl. ¶12).

Given that Plaintiff's use of the APC website relates to Plaintiff's consent to receive texts and phone calls on behalf of Freedom, Plaintiff's claims of TCPA violations for receipt of unsolicited texts and calls sent by, on behalf of, Freedom are intimately found in and intertwined with the Terms and Conditions that he agreed to. Accordingly, Freedom has the right to compel arbitration with Plaintiff.

### b.   Freedom is a Third-Party Beneficiary

Freedom is entitled to enforce the arbitration provision as an intended third-party beneficiary because it "receive[d] a 'direct benefit' from a contract containing an arbitration clause." *Spano v. V&J Nat'l Enterprises, LLC*, 264 F. Supp. 3d 440, 453 (W.D.N.Y. 2017) (citing *Ogden Power Dev. Cayman, Inc. v. PMR Ltd. Co.*, No. 14 Civ 8169, 2015 U.S. Dist. LEXIS 66417, at *21 (S.D.N.Y. May 21, 2015)). Here, Freedom used Fluent's services through APC to procure leads for its business via texts and phone calls. When Plaintiff, or a user purportedly acting on Plaintiff's behalf, entered Plaintiff's telephone number to register and consented to being contacted and agreed to the Terms and Conditions, Plaintiff contracted with APC/Fluent to be connected with debt relief providers who might offer Plaintiff a desired debt relief product or service. This contract was intended to primarily and directly benefit Freedom, as well as Plaintiff and APC/Fluent. *See Spear, Leeds & Kellogg v. Cent. Life Assur. Co.*, 85 F.3d 21, 26 (2d Cir. 1996) ("[D]ecisional law recognizes that the FAA requires the enforcement of an arbitration agreement not just in favor of the parties to the agreement, but also in favor of third party beneficiaries of the members' agreement.").

A specific reference to Freedom in the Terms and Conditions is not necessary for it to qualify as a third-party beneficiary so long as the parties intended to confer some benefit on Freedom. As APC/Fluent intended to procure a lead for Freedom, and Plaintiff allegedly intended to enter his information on APC's website to

participate in promotions/surveys and to be contacted by APC's marketing partners, both parties intended to confer a benefit on Freedom.

### 6.      *Plaintiff Waived the Right to Participate in a Class Action*

Plaintiff is also required to arbitrate on an individual basis because the class action waiver in the Terms and Conditions is valid and enforceable. Under New York law, "a contractual proscription against class actions … is neither unconscionable nor violative of public policy." *Ranieri v Bell Atl. Mobile*, 759 N.Y.S.2d 448, 459 (N.Y. App. Div. 2003). As the United States Supreme Court has explained, the "principal purpose of the [Federal Arbitration Act (FAA)] is to ensure private arbitration agreements are enforced according to their terms." *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740, 1748 (2011)). Thus, parties may agree to class-action waivers. Therefore, in accordance with the express terms of the Arbitration Provision and the class action waiver incorporated therein, Plaintiff has agreed to mandatory arbitration and waived the right to participate in a class action.

### C.      <u>The Court Should Stay the Proceedings Pending Resolution at Arbitration</u>

These proceedings must be stayed pending resolution of Plaintiff's claims at arbitration. *See Katz v. Cellco P'ship*, 794 F.3d 341, 343 (2d Cir. 2015) (the FAA "requires a stay of proceedings when all claims are referred to arbitration and a stay [is] requested"). Under Section 3 of the FAA, if a suit is filed in the district court upon any issue that is subject to a written arbitration agreement, the court shall "stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." *Lewis v. UBS Fin. Servs.*, 818 F. Supp. 2d 1161, 1169 (N.D. Cal. 2011) (quoting 9 U.S.C. § 3). The rationale for a stay is that dismissal would convert the decision into an appealable order, thus controverting the FAA's underlying policy "to move the parties to an arbitrable dispute out of court and into arbitration as quickly and easily as possible." *Katz*, 794 F.3d at 346; *Moses H. Cone*

*Mem'l Hosp.*, 460 U.S. at 22 (moving parties out of court and into arbitration should occur "as quickly and easily as possible").  Accordingly, the Court should stay this litigation pending arbitration.

## IV.   **CONCLUSION**

Defendants Freedom Financial Network, LLC and Freedom Debt Relief, LLC respectfully request that the Court compel arbitration of the claims raised in Plaintiff's Complaint, stay the action pending resolution of the arbitration, and grant such other and further relief as this Court deems just and proper.

Dated:  April 30, 2018          SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

By_____/s/ Jay T. Ramsey
                                         JAY T. RAMSEY

Attorneys for Defendants
FREEDOM FINANCIAL NETWORK, LLC,
and FREEDOM DEBT RELIEF, LLC