Jon B. Fougner (State Bar No. 314097)
Email: Jon@FougnerLaw.com
600 California Street, 11th Fl.
San Francisco, CA 94108
Telephone: (434) 623-2843
Facsimile: (206) 338-0783

[Additional counsel appear on signature page]

*Attorneys for Plaintiff and the Proposed Classes*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND DIVISION

| | |
|---|---|
| DANIEL BERMAN,<br><br>    Plaintiff,<br><br> v.<br><br>FREEDOM FINANCIAL NETWORK, LLC, and FREEDOM DEBT RELIEF, LLC,<br><br>    Defendants. | Case No. 4:18-cv-01060-DMR<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO COMPEL ARBITRATION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>Date: June 14, 2018<br>Time: 11:00 a.m.<br>Department: Courtroom 4, 3rd Fl. |

Plaintiff Daniel Berman, by his undersigned counsel, opposes Defendants' Motion to Compel Arbitration ("Mot."). Plaintiff's opposition is based on the Memorandum of Points and Authorities herein, the Declaration of Daniel Berman (which is attached as Exhibit A), the results of a subpoena Plaintiff's counsel have issued to identify the user of the IP address identified in Exhibit A of Defendant's Motion, the pleadings, papers and records on file with the Court and such further evidence and argument as the Court may allow.

RESPECTFULLY SUBMITTED AND DATED this 10th day of May, 2018.

By: */s/ Jon B. Fougner*
    Jon B. Fougner

Edward A. Broderick, *Subject to Pro Hac Vice*
Email: ted@broderick-law.com
Anthony I. Paronich, *Admitted Pro Hac Vice*
Email: anthony@broderick-law.com
BRODERICK & PARONICH, P.C.
99 High Street, Suite 304
Boston, Massachusetts 02110
Telephone:  (617) 738-7080
Facsimile:   (617) 830-0327

Matthew P. McCue, *Subject to Pro Hac Vice*
E-mail: mmccue@massattorneys.net
THE LAW OFFICE OF MATTHEW P. McCUE
1 South Avenue, Suite 3
Natick, Massachusetts  01760
Telephone:  (508) 655-1415
Facsimile:   (508) 319-3077

*Attorneys for Plaintiff and the Proposed Classes*

## I. STATEMENT OF ISSUES TO BE DECIDED

The issue before the Court is whether Plaintiff should be compelled to arbitrate a claim despite not having agreed to the alleged arbitration agreement or even visited the website on which it was allegedly posted.

## II. RELEVANT FACTS

Plaintiff placed his telephone number on the National Do Not Call Registry in 2003. Berman Decl. ¶ 5. He has never removed it. *Id.* He has never done business with Defendants or given them permission to call him. Compl. ¶¶ 29-31 (Dkt. No. 1). Nevertheless, on February 14, 2018, Defendants sent an automated telemarketing text message and placed a prerecorded telemarketing call to him. *Id.* ¶¶ 32-39. Annoyed and harassed by these invasions of his privacy, Plaintiff filed a complaint alleging violations of 47 U.S.C. § 227 on behalf of himself and others similarly situated on February 19, 2018. *Id.* ¶ 45.

Defendants were served with process on February 22, 2018. Dkt. Nos. 10, 11. They were required to respond to the complaint by March 16, 2018. Fed. R. Civ. P. 12(a)(1)(A)(i). They did not. On March 28, 2018, the parties filed a stipulation requiring Defendants to respond to the complaint by April 5, 2018. Dkt. No. 12. They did not. On April 9, 2018, the parties filed a stipulation requiring Defendants to respond to the complaint by April 30, 2018. Dkt. No. 14. They did not. Instead of filing a Rule 12 response, in yet another attempt to delay the proceedings and discovery, Defendants filed their Motion to Compel Arbitration. Dkt. No. 16.

Defendants contend that Plaintiff visited http://signup.electronics-sweepstakes.com (the "Survey Site") on December 24, 2017, input his telephone number, and agreed to an arbitration agreement. Mot. 3. He did not. Berman Decl. ¶¶ 6-7. Nor did Plaintiff ever authorize anyone to do so on his behalf. *Id.* At no time did Plaintiff ever agree to the alleged arbitration agreement. *Id.*

### III. ARGUMENT AND AUTHORITIES

Plaintiff never agreed to arbitrate anything with Defendants or Fluent, LLC ("Fluent"). Nor did he ever become a customer of any of them or accept any of their services. He is simply a victim of illegal telemarketing, nothing more.

#### A. Defendants Bear the Burden of Proving an Agreement to Arbitrate.

Defendants admit, as they must, that arbitration is a creature of contract. Mot. 10 n.2 (collecting cases). "[A] party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582 (1960). "[A] court may order arbitration of a particular dispute only where the court is satisfied that the parties agreed to arbitrate that dispute." *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 297 (2010).

Because arbitration is a matter of consent, the general presumption in favor of arbitrability does not apply to the threshold determination of whether there is an agreement to arbitrate between the parties. *Comer v. Micor, Inc.*, 436 F.3d 1098, 1104 n.11 (9th Cir. 2006) ("The question here is not whether a particular issue is arbitrable, but whether a particular party is bound by the arbitration agreement. Under these circumstances, the liberal federal policy regarding the scope of arbitrable issues is inapposite.").

Instead, the party seeking to compel arbitration bears the burden of proving the existence of an agreement to arbitrate by a preponderance of the evidence. *Norcia v. Samsung Telecomms. Am., LLC*, 845 F.3d 1279, 1283 (9th Cir. 2017).

#### B. Plaintiff Did Not Agree to Arbitrate, Nor Did He Visit the Website Where the Alleged Agreement to Arbitrate Was Posted.

Defendants cannot carry their burden because Plaintiff never even visited the Survey Site before he heard about it during the course of this litigation. Whoever (if anyone) made the alleged visit described by Fluent's engineer, it was not Plaintiff or anyone acting on his behalf, as the following table shows:

|  | **Alleged visitor described by Fluent's engineer** | **Plaintiff** |
|---|---|---|
| **Location** | It allegedly accessed the internet from "Hayw[ar]d, CA." Mot. Ex. A ¶ 7 (Dkt. No. 16-1). | He is not routinely in Hayward, nor was he there on December 24, 2017. Berman Decl. ¶ 9. |
| **ISP** | It allegedly accessed the internet via Comcast. Mot. Ex. A ¶ 7. | He does not routinely access the internet via Comcast, nor does he recall doing so on December 24, 2017. Berman Decl. ¶ 10. |
| **Visit to Survey Site** | It allegedly visited the Survey Site on December 24, 2017. Mot. Ex. A ¶ 6. | He, as of February 19, 2018, had never visited the Survey Site or authorized anyone to do so on his behalf. Berman Decl. ¶ 6. He does not participate in online sweepstakes. *Id.* ¶ 8. |
| **Name** | It allegedly supplied the name "Dunk Loka" to the Survey Site. Mot. Ex. A ¶ 8. | He never used or supplied the name "Dunk Loka" to anyone or authorized anyone to do so on his behalf. Berman Decl. ¶ 11. |
| **Email Address** | It allegedly supplied the email address "Buffola@gmail.com" to the Survey Site. Mot. Ex. A ¶ 8. | He never used or supplied the email address "Buffola@gmail.com" to anyone or authorized anyone to do so on his behalf. Berman Decl. ¶ 12. |

|  | **Alleged visitor described by Fluent's engineer** | **Plaintiff** |
|---|---|---|
| **Mailing Address** | It allegedly provided a partial address on "Grand Street." Mot. Ex. A ¶ 8. | He never lived on, worked on or received mail at Grand Street, nor did he ever claim to do so or authorize anyone to claim he did. Berman Decl. ¶ 13. |
| **Birthdate** | It allegedly provided a particular birthdate in 1974. Mot. Ex. A ¶ 11. | He was not born on the date, nor has he ever claimed to have been born on that date or authorized anyone to claim he was. Berman Decl. ¶ 14. |

Defendants' entire theory of the existence of an agreement to arbitrate rests on the premise that Plaintiff made the alleged website visit, but he did not, so there is no agreement to arbitrate. For the same reason, there is no truth to the declaration of Fluent's General Counsel that "Plaintiff should try to resolve any dispute with customer service before commencing any proceeding." Mot. Ex. B ¶ 9 (Dkt. No. 16-2). Similarly, Defendants do protest too much when they allege, conclusorily: "**There can be no doubt** that Plaintiff was put on actual or constructive notice of the Terms and Conditions and agreed to be bound by them." Mot. 11 (emphasis added). He was not, and he did not. Berman Decl. ¶¶ 6-8.

Defendants' submission runs 48 pages including attachments, but in that stack of paper, the scant evidence that Plaintiff made the alleged visit is an engineer's affidavit that Plaintiff's phone number was entered on a website. That's it. Defendants offer no evidence that they or their agents do anything to verify that numbers are entered accurately or by their rightful owners. To the contrary, the impression that arises from Fluent's engineer's affidavit is that its only safeguard against fraud or user errors is the user's own motivation to obtain eligibility for a sweepstakes—cold comfort to those who are the target of the ensuing spam. Mot. Ex. A ¶¶ 21-22. Defendants provide no explanation for why they would send spam texts and robocalls to a

phone number allegedly obtained in conjunction with a patently fake address. *See id.* ¶ 8 ("Mailing address" has no house number).

This shoot-first approach is all the more cavalier in light of Fluent's corporate family's boasts of being a market leader in exhaustively profiling individuals by connecting disparate databases. *Cogint Transforms Data into Intelligence*, Modern Wall Street, https://www.youtube.com/watch?v=Wj99kMDTddA (Nov. 1, 2017) (CEO states: "In data fusion, we aggregate billions and billions of records and we fuse that data together to present a comprehensive view of individuals, their assets, their businesses and the interrelationships and we serve that to the risk management industry [] to better serve consumers: banking, financial services, insurance companies, law enforcement and government.") How curious, then, that nowhere in Defendants' 48-page submission—filed more than two months after they were served with process in this case—is any light shed on "Dunk Loka," "Buffola@gmail.com," or their connection to each other, Plaintiff's phone number, Plaintiff and/or any other person.

Finally, although Fluent's engineer assumes that a human made the alleged visit, Mot. Ex. A ¶¶ 6, 20, nothing in his affidavit or elsewhere in Defendants' submission shows that a human, rather than a bot, made it.

### IV.   CONCLUSION

Plaintiff did not fill out the alleged survey, agree to any arbitration agreement with Defendants or Fluent or authorize anyone else to do so on his behalf. Plaintiff stands ready to testify in person at the hearing on Defendants' Motion, which should be denied in its entirety.

### V.   SIGNATURE ATTESTATION

The ECF user filing this paper attests that concurrence in its filing has been obtained from each of the other signatories.

RESPECTFULLY SUBMITTED AND DATED this 10th day of May, 2018.

By: */s/ Jon B. Fougner*
　　Jon B. Fougner

　　Edward A. Broderick, *Subject to Pro Hac Vice*
　　Email: ted@broderick-law.com
　　Anthony I. Paronich, *Admitted Pro Hac Vice*
　　Email: anthony@broderick-law.com
　　BRODERICK & PARONICH, P.C.
　　99 High Street, Suite 304
　　Boston, Massachusetts 02110
　　Telephone:  (617) 738-7080
　　Facsimile:   (617) 830-0327

　　Matthew P. McCue, *Subject to Pro Hac Vice*
　　E-mail: mmccue@massattorneys.net
　　THE LAW OFFICE OF MATTHEW P. McCUE
　　1 South Avenue, Suite 3
　　Natick, Massachusetts  01760
　　Telephone:  (508) 655-1415
　　Facsimile:   (508) 319-3077

　　*Attorneys for Plaintiff and the Proposed Classes*