United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANIEL BERMAN, <br><br>        Plaintiff, <br><br>    v. <br><br>FREEDOM FINANCIAL NETWORK, LLC, et al., <br><br>        Defendants. | Case No. 18-cv-01060-DMR <br><br>**ORDER DENYING MOTION TO COMPEL ARBITRATION** <br><br>Re: Dkt. No. 16 |

Before the court is Defendants Freedom Financial Network, LLC and Freedom Debt Relief, LLC's motion to compel arbitration and to stay this case pending arbitration. [Docket No. 16.] This matter is suitable for resolution without a hearing. Civ. L.R. 7-1(b). For the following reasons, the court denies the motion.

## I.    BACKGROUND

In this putative class action, named plaintiff Daniel Berman alleges that Freedom Financial Network, LLC and its subsidiary, Freedom Debt Relief, LLC, violated the Telephone Consumer Protection Act, 47 U.S.C. § 227 et seq. ("TCPA"), by using automatic telephone dialing systems to place telemarketing phone calls and text messages to him and the putative class members without their consent. Specifically, Berman alleges that on February 14, 2018, he received a text message and phone call from (409) 359-9066, advertising Defendants' debt relief services. Compl. ¶¶ 32-39. Berman alleges that he never consented to receive phone calls or text messages from Defendants, and never gave his phone number to Defendants or did business with them. *Id*. at ¶¶ 29-31. Berman further alleges that his cellular telephone number, which begins "(510) 326," has been registered on the National Do Not Call Registry since 2003. *Id*. at ¶¶ 26-28. He alleges four claims for relief under the TCPA on behalf of himself and two proposed subclasses.

1    Defendants move to compel arbitration and to stay Berman's claims pending arbitration.
They assert that Berman agreed to arbitrate the claims that he asserts in this lawsuit when he or
someone acting on his behalf registered his phone number and user information on the website
http://signup.electronics-sweepstakes.com in December 2017. Berman opposes the motion,
arguing that he never entered into an arbitration agreement with Defendants.

## II. LEGAL STANDARDS

The Federal Arbitration Act ("FAA") governs written arbitration agreements affecting interstate commerce. *See Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 111-12 (2001). Enacted for the purpose of enforcing written arbitration agreements according to their own terms, the FAA embodies "the basic precept that arbitration 'is a matter of consent, not coercion.'" *Stolt–Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 681 (2010) (quoting *Volt Info. Sciences, Inc. v. Bd. of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 479 (1989)). "Whether enforcing an agreement to arbitrate or construing an arbitration clause, courts and arbitrators must 'give effect to the contractual rights and expectations of the parties.'" *Id.* at 682 (quoting *Volt*, 489 U.S. at 479). Section 4 of the FAA ensures that "'private agreements to arbitrate are enforced according to their terms,'" *Stolt–Nielsen*, 559 U.S. at 682 (quoting *Volt*, 489 U.S. at 479), by expressly authorizing a party to an arbitration agreement to petition a United States district court for an order directing that "arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4.

Under the FAA, arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Arbitration is a matter of contract, and the FAA places arbitration agreements "upon the same footing as other contracts." *Volt*, 489 U.S. at 478 (citations omitted). "By its terms, the [FAA] 'leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed.'" *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000) (quoting *Dean Witter Reynolds Inc. v. Byrd,* 470 U.S. 213, 218 (1985)) (emphasis in original). Therefore, the court's role under the FAA is limited to determining "(1) whether a

valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Chiron Corp.*, 207 F.3d at 1130 (citations omitted).

"It is axiomatic that '[a]rbitration is a matter of contract and a party cannot be required to submit any dispute which he has not agreed so to submit.'" *Sanford v. MemberWorks, Inc.*, 483 F.3d 956, 962 (9th Cir. 2007) (quoting *AT&T Techs., Inc. v. Comms. Workers*, 475 U.S. 643, 648 (1986)). A court must resolve a challenge to the existence of an arbitration agreement prior to ordering arbitration. *Sanford*, 483 F.3d at 962; *see also Three Valleys Mun. Water Dist. v. E.F. Hutton & Co., In*c., 925 F.2d 1136, 1140-41 (9th Cir. 1991) ("[A] party who contests the making of a contract containing an arbitration provision cannot be compelled to arbitrate the threshold issue of the *existence* of an agreement to arbitrate. Only a court can make that decision." (emphasis in original)).

## III.  DISCUSSION

Defendants move to compel arbitration, arguing that Berman's claims are subject to an arbitration agreement between the parties. According to Defendants, Berman or someone acting on his behalf registered his phone number on a sweepstakes website and gave consent to be contacted via telephone or text message by the website's "marketing partners," including Defendants. The individual who registered Berman's phone number also agreed to the website's terms and conditions, which contain an arbitration provision.

Berman argues that the court should deny Defendants' motion to compel arbitration because he never entered into an arbitration agreement with Defendants.

As the party moving to compel arbitration, Defendants bear "the burden of proving the existence of an agreement to arbitrate by a preponderance of the evidence." *Norcia v. Samsung Telecomms. Am., LLC*, 845 F.3d 1279, 1283 (9th Cir. 2017) (quotation omitted). "When considering a motion to compel arbitration, a court applies a standard similar to the summary judgment standard of [Federal Rule of Civil Procedure] 56." *Concat LP v. Unilever, PLC*, 350 F. Supp. 2d 796, 804 (N.D. Cal. 2004) (quotation omitted). When a party opposes a motion to compel arbitration on the ground that no agreement to arbitrate was made, the court "should give to the opposing party the benefit of all reasonable doubts and inferences that may arise." *Three*

3

Northern District of California

1  *Valleys*, 925 F.2d at 1141 (quoting *Par-Knit Mills, Inc. v. Stockbridge Fabrics Co.*, 636 F.2d 51, 54 (3d Cir. 1980)). "Only when there is no genuine issue of fact concerning the formation of the [arbitration] agreement should the court decide as a matter of law that the parties did or did not enter into such an agreement." *Three Valleys*, 925 F.2d at 1141 (quoting *Par-Knit Mills*, 636 F.2d at 54).

Here, Defendants submit the declarations of Daniel J. Barsky and Mitenkumar Bhadania in support of their position that Berman agreed to arbitrate the claims at issue in this lawsuit. Barsky is an officer of third parties Fluent, LLC ("Fluent"), RewardZone USA, LLC ("Reward Zone"), and American Prize Center, LLC ("APC"). [Docket No. 16-2 (Barsky Decl., Apr. 26, 2018) ¶ 2.] Fluent owns Reward Zone and APC, which "operate websites that are used to provide advertising and lead generation services" for advertiser customers, including Defendants. *Id*. at ¶ 4. Barsky states that "[i]n order to participate in promotions and reward surveys on one of Reward Zone's or APC's websites, users are required to register and agree to the terms and conditions" of the website. Users also have the option of "consenting to receive text messages and telemarketing phone calls to the telephone numbers provided during registration" from the operator of the website or its marketing partners. *Id*. at ¶ 5.

Bhadania, who is a Computer System Engineer at Fluent, states that he "researched the user experience and information stored in [Fluent's] Database" with respect to Berman. [Docket No. 16-1 (Bhadania Decl., Apr. 30, 2018) ¶ 1, 4, 5.] According to Bhadania, on December 24, 2017, an individual registered Berman's phone number on the website http://signup.electronics-sweepstakes.com, which is owned and operated by APC. *Id*. at ¶ 6. The individual accessed the website using an IP address located in Hayward, California and the internet service provider Comcast Cable Communications LLC and entered the following information:

```
Name:              Dunk Loka
Email Address:     Buffola@gmail.com
Telephone Number:  510-326-9945
Mailing address:   Grand Street
                   Alameda, CA 94501
```

*Id*. at ¶¶ 7, 8. Bhadania states that the individual "agreed to the Terms and Conditions of the Site by clicking the 'Enter to Win!' button on the registration page," above which appears a checkbox

4

next to the statement "I AGREE," along with the following statement: "I understand and agree to the Terms & Conditions which includes mandatory arbitration and Privacy Policy." *Id*. at ¶¶ 9-10. A confirmation form displayed after the individual clicked the "I AGREE" checkbox and "Enter to Win!" button includes the user name "Dunk Loka" and a date of birth of "03/04/1974." *Id*. at ¶ 11. The form states that, "[b]y checking the box below I consent to receive phone sales calls and text messages . . . from Verde Energy, CAC and our Marketing Partners on the landline or mobile number I provided even if I am on a federal or State do not call registry. . . ." *Id*. "Freedom Financial" appears on a list of the website's "Marketing Partners." *Id*. at ¶ 12. Bhadania states that the individual who registered Berman's phone number checked the box to consent to receive messages and calls, and that this consent has not been withdrawn. *Id*. at ¶¶ 13, 18.

On the date that Berman's phone number was registered, the APC website's terms and conditions included a mandatory arbitration provision. Barsky Decl. ¶¶ 5, 6, Ex. 1 (APC Terms and Conditions). The terms and conditions state the following:

> These Terms & Conditions contain a mandatory arbitration provision that requires you to arbitrate individually any disputes or claims you may have with us and waives your right to participate in a class action or multi-party arbitration. You may opt-out of the mandatory arbitration provision by providing written notice of your decision within thirty (30) days of the date that you first register on a Site.
> 
> . . .
>
> **ARBITRATION AGREEMENT AND CLASS ACTION WAIVER**
>
> If you have a dispute concerning any aspect of these Terms & Conditions, the Service, the Content or a Site, you should first contact customer support on our Sites. . . . If we provide you with a final written settlement offer and you don't accept it, or we can't otherwise satisfactorily resolve your dispute, you can submit your dispute for resolution by arbitration before the American Arbitration Association ("AAA") in the county where you live by filing a separate Demand for Arbitration online by following the instructions at https://apps.adr.org/webfile/.
>
> If we have a dispute, we will submit our dispute for resolution by arbitration before the AAA in New York, NY. If either party files for arbitration, it will be conducted in accordance with the then current AAA Commercial Arbitration Rules.
>
> . . .

> To the extent permitted by law, you agree that you will not bring, join or participate in any class action lawsuit as to any claim, dispute or controversy that you may have against us and/or our employees, officers, directors, members, representatives and/or assigns. . . .

APC Terms and Conditions. Barsky states that "[Berman] did not opt-out of the Arbitration/Dispute Resolution Provision." Barsky Decl. ¶ 8.

In response, Berman denies having registered his phone number on APC's website. He states that he never visited http://signup.electronics-sweepstakes.com and never authorized anyone to visit it on his behalf. [Docket No. 17-1 (Berman Decl., May 10, 2018) ¶ 6.] He states that he is "not routinely in Hayward," and does not recall being there on December 24, 2017, which is the date his phone number was registered. He also does not "routinely access the internet via Comcast" and does not recall doing so on December 24, 2017. *Id*. at ¶¶ 9, 10. Berman states that he has never: (1) identified himself with the user name "Dunk Loka"; (2) used the email address "Buffola@gmail.com"; (3) lived on, worked on, or received mail at Grand Street in Alameda; or (4) authorized anyone else to identify him using the foregoing information. *Id*. at ¶¶ 11-13. Finally, he denies that his birthdate is March 4, 1974, the birthdate associated with "Dunk Loka." *Id*. at ¶ 14.

"State contract law controls whether the parties have agreed to arbitrate." *Knutson v. Sirius XM Radio Inc.*, 771 F.3d 559, 565 (9th Cir. 2014). "[U]nder California law, the essential elements for a contract are (1) [p]arties capable of contracting; (2) [t]heir consent; (3) [a] lawful object; and (4) [s]ufficient cause or consideration." *Norcia*, 845 F.3d at 1284 (quotation omitted).[1] "There is no contract until there is mutual consent of the parties." *Deleon v. Verizon Wireless, LLC*, 207 Cal. App. 4th 800, 813 (2012). Mutual consent may be manifested through words or conduct, and acceptance of contract terms may be implied through action or inaction. *Knutson*,

---

[1] The parties do not address which state law governs the issue of contract formation, although Defendants appear to suggest that New York law may apply. *See* Mot. at 11 n.3. The terms and conditions at issue here include a choice-of-law provision designating New York law as controlling. However, applying that provision "to resolve the contract formation issue would presume the applicability of a provision before its adoption by the parties has been established." *See Schnabel v. Trilegiant Corp*., 697 F.3d 110, 119 (2d Cir. 2012). The court need not resolve this question, because both California and New York "apply 'substantially similar rules for determining whether the parties have mutually assented to a contract term.'" *Meyer v. Uber Techs., Inc*., 868 F.3d 66, 74 (2d Cir. 2017) (quoting *Schnabel*, 697 F.3d at 119).

771 F.3d at 565 (citations omitted). Mutual consent is a question of fact. *Deleon*, 2017 Cal. App. 4th at 813.

In this case, factual disputes exist as to whether Berman or an individual acting on his behalf consented to the terms and conditions at issue. Although Defendants state that the individual who registered Berman's phone number on the APC website agreed to be bound by the terms and conditions, Berman denies having visited the website or having authorized anyone to do so on his behalf. He also denies using the name, email address, mailing address, or birthdate associated with the individual who registered his phone number, and denies authorizing anyone to use that information on his behalf. In light of Berman's numerous and unequivocal denials, and resolving all reasonable doubts in Berman's favor, Defendants have failed to show the absence of a genuine issue of fact regarding whether Berman agreed to the terms and conditions, including the arbitration provision. As Defendants have not met their burden to show the existence of an agreement to arbitrate by a preponderance of the evidence, the motion to compel arbitration must be denied. *See Three Valleys*, 925 F.2d at 1141 ("Before a party to a lawsuit can be ordered to arbitrate and thus be deprived of a day in court, there should be an express, unequivocal agreement to that effect." (quoting *Par-Knit Mills*, 636 F.2d at 54)).

In their reply, Defendants argue that Berman should be compelled to arbitrate his claims based on equitable estoppel. Without addressing the applicable standards for equitable estoppel, Defendants contend that someone registered Berman's phone number and consented in writing to receive phone calls and text messages at that number. Therefore, they argue, Berman "cannot equitably be allowed to avoid the clear arbitration commitment binding his telephone number to the Terms and Conditions." Reply 4-5. The sole case they cite, *Grigson v. Creative Artists Agency L.L.C.*, 210 F.3d 524, 527-28 (5th Cir. 2000), does not support their position. Under *Grigson*, a non-signatory to an arbitration agreement may compel arbitration under a theory of equitable estoppel under certain circumstances. Such a theory does not apply here, where there are disputed facts about whether the parties actually formed an agreement to arbitrate.[2]

---

[2] Since the court is denying Defendants' motion to compel arbitration on the ground that they failed to demonstrate that a valid arbitration agreement exists, it need not reach Defendants'

7

## IV. CONCLUSION

For the foregoing reasons, Defendants' motion to compel arbitration and to stay the case pending arbitration is denied.

**IT IS SO ORDERED.**

Dated: June 11, 2018



_____
Donna M. Ryu
United States Magistrate Judge

---

arguments about the enforceability of the arbitration provision.