1  SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
     A Limited Liability Partnership
2    Including Professional Corporations
   JAY T. RAMSEY, Cal. Bar No. 273160
3  1901 Avenue of the Stars, Suite 1600
   Los Angeles, California 90067-6055
4  Telephone:    310.228.3700
   Facsimile:    310.228.3701
5  E mail        jramsey@sheppardmullin.com

6  Attorneys for Defendants
   FREEDOM FINANCIAL NETWORK, LLC,
7  FREEDOM DEBT RELIEF, LLC, FLUENT,
   INC., and LEAD SCIENCE, LLC,

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANIEL BERMAN, STEPHANIE HERNANDEZ, and ERICA RUSSELL,<br><br>Plaintiffs,<br><br>v.<br><br>FREEDOM FINANCIAL NETWORK LLC, FREEDOM DEBT RELIEF, LLC, FLUENT, INC., and LEAD SCIENCE, LLC,<br><br>Defendants. | Case No. 4:18-cv-01060-YGR<br><br>**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO COMPEL ARBITRATION OF THE CLAIMS ASSERTED BY STEPHANIE HERNANDEZ AND ERICA RUSSELL** |
| FREEDOM FINANCIAL NETWORK, LLC and FREEDOM DEBT RELIEF, LLC,<br><br>Third Party Plaintiffs,<br><br>v.<br><br>DOES 1 through 5,<br><br>Third Party Defendants. | *Hearing Vacated Per Court Order* |

# TABLE OF CONTENTS

Page

I.   INTRODUCTION ..........................................................................................................1

II.  ARGUMENT ................................................................................................................1

    A.   The Design And Content of Fluent's Websites Are Not Genuinely Disputed ...........1

    B.   The Design And Content Of The Websites Resulted In A Binding Contract ............4

        1.   Nguyen and its progeny support Defendants ................................................5

        2.   Plaintiffs' out-of-circuit caselaw either helps Defendants or is irrelevant ..................................................................................................10

    C.   Plaintiffs' Claims Against Freedom and Lead Science Must Be Arbitrated ............12

III. CONCLUSION ...........................................................................................................15

# TABLE OF AUTHORITIES

Page(s)

**Federal Cases**

*Amisil Holdings Ltd. v. Clarium Capital Mgmt. LLC*
   622 F. Supp. 2d 825 (N.D. Cal. 2007) ...................................................................................14

*Anand v. John C. Heath*
   2019 WL 2716213 (N.D. Ill. June 28, 2019) ..........................................................................10

*Beattie v. TTEC Healthcare Sols., Inc.*
   2019 WL 2189481 (D. Colo. May 21, 2019) ...........................................................................2

*Berkson v. Gogo LLC*
   97 F. Supp. 3d 359 (E.D.N.Y. 2015) ......................................................................................12

*Castro v. ABM Indus., Inc.*
   325 F.R.D. 332 (N.D. Cal. 2018) ............................................................................................15

*Chen v. Premier Fin. Alliance, Inc.*
   2019 WL 280944 (N.D. Cal. Jan. 22, 2019) .............................................................................2

*Crawford v. Beachbody, LLC*
   2014 WL 6606563 (S.D. Cal. Nov. 5, 2014) ............................................................................9

*Cullinane v. Uber Techs., Inc.*
   893 F.3d 53 (1st Cir. 2018) ...............................................................................................11, 12

*Davis v. USA Nutra Labs*
   303 F. Supp. 3d 1183 (D.N.M. 2018) .......................................................................................1

*Garcia v. Enterprise Holdings, Inc.*
   78 F. Supp. 3d 1125 (N.D. Cal. 2015) ..................................................................................7, 8

*Gonzalez-Torres v. Zumper, Inc.*
   2019 U.S. Dist. LEXIS 124549 (N.D. Cal. July 25, 2019) ...................................................2, 4

*Graf v. Match.com, LLC*
   2015 WL 4263957 (C.D. Cal. July 10, 2015) ..........................................................................9

*Harding v. Diamond Resorts Holdings, Ltd. Liab. Co.*
   2017 U.S. Dist. LEXIS 204732 (D. Nev. Dec. 7, 2017) .........................................................15

*Knepper v. Ogletree*
   2019 U.S. Dist. LEXIS 64983 (C.D. Cal. Mar. 26, 2019) ........................................................2

*Lomeli v. Midland Funding, LLC*
   No. 19-CV-01141-LHK, 2019 WL 4695279 (N.D. Cal. Sept. 26, 2019) .................................1

*McCarthy v. Providential Corp.*
  1994 U.S. Dist. LEXIS 10122 (N.D. Cal. July 18, 1994) ........................................................ 4

*Meyer v. Uber Techs., Inc.*
  868 F.3d 66 (2d Cir. 2017) ................................................................................................... 12

*Nevarez v. Forty Niners Football Co., LLC*
  2017 WL 3492110 (N.D. Cal. Aug. 15, 2017) ...................................................................... 8

*Nguyen v. Barnes & Noble Inc.*
  763 F.3d 1171 (9th Cir. 2014) ........................................................................ 5, 6, 7, 8, 10, 11

*Nicosia v. Amazon.com, Inc.*
  384 F. Supp. 3d 254 (E.D.N.Y. 2019) ................................................................................. 11

*PDC Labs., Inc. v. Hach Co.*
  2009 WL 2605270 (C.D. Ill. Aug. 25, 2009) ....................................................................... 10

*Remington v. Mathson*
  2010 U.S. Dist. LEXIS 29187 (N.D. Cal. Mar. 26, 2010) ................................................... 15

*Rodriguez v. Experian Servs. Corp.*
  2015 WL 12656919 (C.D. Cal. Oct. 5, 2015) ........................................................................ 9

*Rojas v. GoSmith, Inc.*
  2020 WL 831585 (N.D. Ind. Feb. 20, 2020) ........................................................................ 12

*Sgouros v. TransUnion Corp.*
  817 F.3d 1029 (7th Cir. 2016) .............................................................................................. 11

*Sharp Corp. v. Hisense USA Corp.*
  2017 U.S. Dist. LEXIS 200102 (N.D. Cal. Dec. 5, 2017) ................................................... 14

*Silverman v. Move Inc.*
  2019 WL 2579343 105365 (N.D. Cal. June 24, 2019) ........................................................ 10

*Simpson v. Pulte Home Corp.*
  2012 U.S. Dist. LEXIS 63889 (N.D. Cal. May 7, 2012) ..................................................... 13

*Specht v. Netscape Commc'ns Corp.*
  306 F.3d 17 (2d Cir. 2002) ................................................................................................... 11

*Stevens v. Corelogic, Inc.*
  899 F.3d 666 (9th Cir. 2018) ................................................................................................. 4

*Tadich Grill, Inc. v. Tadich Grill Dev. Co., LLC*
  2018 U.S. Dist. LEXIS 146437 (N.D. Cal. Aug. 28, 2018) ................................................. 14

*Temple v. Best Rate Holdings LLC*
  360 F. Supp. 3d 1289 (M.D. Fla. 2018) ............................................................................... 13

*Torbit, Inc. v. Datanyze, Inc.*
   2013 U.S. Dist. LEXIS 19584 (N.D. Cal. Feb. 13, 2013)..........................................................13

*West v. Uber Techs.*
   2018 WL 5848903 (C.D. Cal. Sept. 5, 2018)..............................................................................12

**State Cases**

*Hubbert v. Dell Corp.*
   359 Ill.App.3d 976 (2005)..........................................................................................................11

**Statutes, Rules, Regulations, Constitutional Provisions**

9 U.S.C. § 4 ........................................................................................................................................4

Fed. R. Civ. P. 56 ...........................................................................................................................1, 4

Fed. R. Evid. 201 .................................................................................................................................6

## I. INTRODUCTION

There is no genuine dispute that Plaintiffs Hernandez and Russell visited and registered on Fluent's websites and, before they pressed the button to confirm their registrations, they were presented with: "I understand and agree to the Terms & Conditions which includes mandatory arbitration." The arbitration clause requires arbitration of their claims against Fluent, Freedom, and Lead Science. The Court should thus grant the Motion.

## II. ARGUMENT

### A. The Design And Content of Fluent's Websites Are Not Genuinely Disputed

Plaintiffs' main argument is that the parties dispute what Fluent's websites looked like, and so this Court cannot grant the Motion. Not so. On a motion to compel arbitration, the moving party "bears the burden of proving the existence of an agreement to arbitrate by a preponderance of the evidence." *Lomeli v. Midland Funding, LLC*, No. 19-CV-01141-LHK, 2019 WL 4695279, at *4 (N.D. Cal. Sept. 26, 2019). Courts apply a "standard similar to the summary judgment standard of Fed. R. Civ. P. 56." *Id.* Once the moving party submits evidence of a valid agreement, the opposing party can prevail only if it submits admissible evidence establishing a ***genuine*** dispute of ***material*** fact. *Id.* "A fact is 'material' if it 'might affect the outcome of the suit under the governing law,' and a dispute as to a material fact is 'genuine' if there is sufficient evidence for a reasonable trier of fact to decide in favor of the nonmoving party." *Id. citing Anderson v Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "[U]nsupported allegations or denials" are not enough; if the opposing party's evidence "is merely colorable, or is not significantly probative," the motion should be granted. *Id.*

Here, Defendants submitted the declaration of Miten Bhadania, which described Fluent's business records and how they can be accessed to recreate what Plaintiffs would have seen. Plaintiffs did not object to the Bhadania declaration or the attached exhibits. The declaration is admissible and sufficient to satisfy Defendants' initial burden. *Davis v. USA Nutra Labs*, 303 F. Supp. 3d 1183, 1199 (D.N.M. 2018) (business records declaration on website content sufficient);

*Beattie v. TTEC Healthcare Sols., Inc.*, 2019 WL 2189481, *2 (D. Colo. May 21, 2019) (same).[1]

In response, Plaintiffs fail to present sufficient evidence to raise a **genuine** dispute of **material** fact. First, Plaintiffs submit their own declarations, in which they state that they "don't remember any legal terms or conditions or a hyperlink to click to see them" and that they "don't remember seeing anything about arbitration or agreeing to arbitration." (Russel Decl. ¶ 4; Hernandez Decl. ¶ 4.) These declarations do not create a genuine dispute of fact. *See, e.g.*, *Gonzalez-Torres v. Zumper, Inc.*, 2019 U.S. Dist. LEXIS 124549, at *6 (N.D. Cal. July 25, 2019) (plaintiff's declaration that he did not recall an arbitration agreement insufficient to create a dispute of fact); *Knepper v. Ogletree*, 2019 U.S. Dist. LEXIS 64983, at *14-15 (C.D. Cal. Mar. 26, 2019) ("there [was] no genuine dispute of material fact" when the plaintiff could state only that he did "not recall receiving, viewing or opening" the arbitration agreement); *Beattie v. TTEC Healthcare Sols., Inc.*, 2019 WL 2189481, *2 (D. Colo. May 21, 2019) (holding that general statements that a user does not recall visiting a website or agreeing to arbitrate are insufficient).[2] Nor are "Plaintiff[s'] averment[s] that [they do] not recall being presented with or reviewing the agreement containing the arbitration provision . . . sufficient to order discovery." *Gonzalez-Torres*, 2019 U.S. Dist. LEXIS 124549 at *6.

Underscoring the insufficiency of Plaintiffs' declarations, in their Opposition, Plaintiffs falsely suggest that both Hernandez and Russel "recall[] visiting a Fluent website." (Opp. at 4:5

---

[1]   Plaintiffs nonetheless cast stones at Bhadania (but not his declaration) because earlier in the case he updated his declaration about the website flow for Plaintiff Berman. (*See* Opp. at 8.) Berman's flow is not relevant to this Motion, which is about only Plaintiffs Hernandez and Russell. Plaintiffs also argue that Bhadania did not provide the Court with the complete flows. (Opp. at 8:20-21.) This is a red herring. Defendants produced the complete flows in discovery and Plaintiffs do not contend otherwise. With their Motion to Compel, Defendants submitted only those portions relevant to Plaintiffs' agreement to arbitrate.

[2]   Plaintiffs cite *Chen v. Premier Fin. Alliance, Inc.*, 2019 WL 280944 (N.D. Cal. Jan. 22, 2019) for the proposition that a plaintiff's declaration claiming lack of memory can create a genuine dispute of fact. In *Chen*, unlike in this case, "Defendants [did] not offer[] evidence explaining the design and content of the webpage" at all, and so the court lacked enough evidence to even shift the burden to the non-moving party. It was in this context that the court stated: "Given the lack of evidence of how PFA's Associate registration process appears and functions on its website, plaintiff Gonzalez's declaration that he did not see an arbitration agreement, and the reasonable doubts and inferences that must be drawn in his favor under the applicable standard, Gonzalez has raised a genuine issue of fact concerning his notice of, and assent to, the arbitration agreement here." *Id.* at *3.

(Russell); *id.* at 4:15 (Hernandez).)  Neither declaration actually says that.  Russell states that she has "looked online for coupons to save money for myself and my family" (Russell Decl. ¶ 2), and then describes an interaction with one such website (*id.* ¶¶ 4-5), but never says that it was a Fluent website.  Hernandez states:  "A couple of years ago my daughter told me that there are websites on the Internet where I could get free samples of products.  I decided to visit one of these websites." (Hernandez Decl. ¶ 2.)  She then describes an interaction with a website (*id.* ¶¶ 3-4), but never says that it was a Fluent website.

Second, Plaintiffs proffer printouts of screenshots from the WayBack Machine.  These printouts do not create a genuine dispute of material fact.  The screenshots are not from the dates that the Plaintiffs visited the websites.  Plaintiffs' declarant (paralegal Jodi Nuss Schexnaydre) states that the screen captures were "taken shortly before and after the date of interest. . . ." (Nuss Schexnaydre Decl. ¶ 9.)  Screenshots pre-dating and post-dating the dates on which Russell and Hernandez visited (sometimes by months, despite Nuss's claim that they were near in time) cannot create a ***genuine*** dispute of fact as to the design and content of Fluent's websites on the days that Plaintiffs visited.  Moreover, what Fluent's websites look like for any given user on any particular day depends on various factors, including the device and browser they use to access the website and whether they have visited Fluent's websites before.  (*See* Bhadania Decl. ¶¶ 3-5, 8, 13.)  The Wayback Machine cannot duplicate those factors.[3]

More importantly, the screenshots from the WayBack Machine ***are not of the relevant page from the website flow.***  On Fluent's websites, unless users have visited before (in which case the registration process may be truncated), a user typically sees several screens asking for identifying information or other preliminary questions.  It is the last screen in this preliminary process that has the relevant language about the Terms & Conditions and mandatory arbitration.  The flow attached to the Motion for Russell is a good example (Ex. 3-4); the Hernandez flow, by contrast, was truncated because she had visited the website before (Ex. 1).  Because of limitations

---

[3] The WayBack Machine printouts are also inadmissible because Plaintiffs do not properly authenticate them or ask the Court to take judicial notice of them.  *See Handy v. LogMeIn, Inc.*, 2016 WL 323746, *2 (Objection to WayBack Machine screenshot sustained for failure to authenticate document in counsel's declaration).

in how the WayBack Machine operates, the WayBack Machine does not and has not captured the relevant page of Fluent's website flow.  (*See* Declaration of Jay T. Ramsey, ¶¶ 6-9.)  As a result, the WayBack Machine printouts not only do not create a ***genuine*** dispute of fact, they also cannot create a dispute about a ***material*** fact.

Finally, Plaintiffs suggest that they should be permitted to conduct further discovery regarding Fluent's records of its websites.  To establish a right to further discovery, Plaintiffs must, in compliance with the standards of Rule 56, submit an affidavit: (1) setting forth the *specific facts* they hope to elicit from further discovery; (2) stating why they believe those facts exist; and (3) explaining why those facts are essential to oppose the motion.  *Stevens v. Corelogic, Inc.*, 899 F.3d 666, 678 (9th Cir. 2018).  Plaintiffs have not met their burden – there is no declaration at all.  In their Opposition, Plaintiffs make a vague argument about a demonstration provided by Fluent, but do not offer any suggestion that anything learned through the demonstration called into doubt the website flows that Fluent proffered.  Plaintiffs' request for further discovery should thus be denied.  *Gonzalez-Torres*, 2019 U.S. Dist. LEXIS 124549 at *6.

The preponderance of the evidence shows that the exhibits attached to the Bhadania declaration reflect the design and content of Fluent's websites when Plaintiffs visited.  The Court should thus grant the Motion.  If the Court finds that there is a ***genuine*** dispute of ***material*** fact, the Court should stay the action and proceed to trial on the disputed issue.  9 U.S.C. § 4 (Where "the making of the arbitration agreement" is at issue, "the court shall proceed summarily to the trial thereof"); *McCarthy v. Providential Corp.*, No. C 94-0627 FMS, 1994 U.S. Dist. LEXIS 10122, at *6 (N.D. Cal. July 18, 1994).[4]

**B.     The Design And Content Of The Websites Resulted In A Binding Contract**

Plaintiffs agreed to the Terms & Conditions.  On the key pages of the website flows at issue, each website asked Plaintiffs to either enter personal identifying information ("PII") or confirm the PII that she had entered on a prior visit.  To complete their registrations, Plaintiffs had to press a button (for Hernandez, "This is correct, Continue!>>"; for Russell, "Continue>>").

---

[4]    Any disputed issue of fact requiring a mini-trial only reinforces the individual nature of these inquiries – inquiries that would be needed for each member of the putative class.

Those buttons – which were the only buttons that could be pressed to register – appeared beneath the boxes for the PII in a single vertical line.  In the same vertical line, directly beneath the last PII box and above the button, was the sentence:  "I understand and agree to the <u>Terms & Conditions</u> which includes mandatory arbitration and <u>Privacy Policy</u>."  The underlined phrase "<u>Terms & Conditions</u>" was a hyperlink that, if clicked, would have displayed the applicable Terms & Conditions.  Snapshots of the relevant portion of each website are here:

| Hernandez | Russell |
|---|---|
| *screenshot showing "Confirm your ZIP Code Below: 93930", "I understand and agree to the Terms & Conditions which includes mandatory arbitration and Privacy Policy", "I AGREE to receive daily emails from SamplesandSavings and SweepstakesAlerts", and "This is correct, Continue! »" button* | *screenshot showing Telephone, Date of Birth (MM/DD/1923), Select Gender (Male/Female), "I understand and agree to the Terms & Conditions which includes mandatory arbitration and Privacy Policy", and "Continue »" button* |

Under the seminal Ninth Circuit case, *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171 (9th Cir. 2014), and district court cases in the Ninth Circuit following it, Fluent's websites provide users with sufficient notice to result in a binding agreement to the applicable Terms & Conditions.  Citing out-of-circuit cases, Plaintiffs make arguments about the size of the font, the color of the hyperlink, and the location and phrasing of the textual notice.  But these arguments fail.  The Court has the webpages and can review them; based on that review, the Court should conclude that "a reasonably prudent user" of Fluent's websites was on "inquiry notice of the terms of the contract" (*Nguyen*, 763 F.3d at 1177), including that those terms required, as the website explicitly states, "mandatory arbitration."

          1.     **Nguyen *and its progeny support Defendants***

Under *Nguyen*, the test for "[c]ontracts formed on the Internet" is whether the content and design of a webpage "puts a reasonably prudent user on inquiry notice of the terms of the

contract." 763 F.3d at 1175-76, 1177. In *Nguyen*, the Ninth Circuit affirmed the trial court's denial of a motion to compel arbitration where, in stark contrast to Fluent's websites, the link to the "Terms of Use" was at the bottom of the page, below and outside the visual frame of the button that the user needed to press, and without a textual notice calling attention to it. Attached as Exhibit 7 is the full exhibit of the websites in *Nguyen* pulled from the trial court's docket.[5] An example of one of the webpages, with added notation in red, is below:



In *Nguyen*, Barnes & Noble argued that "the placement of the 'Terms of Use' hyperlink . . . and its close proximity to the buttons a user must click on to complete an online purchase, [was] enough to place a reasonably prudent user on constructive notice." *Id.* at 1177. The Ninth Circuit disagreed, finding that something more had to be done to call the user's attention to the terms. It

---

[5]   Attached as Exhibits 7 to 10 to the Ramsey Declaration are exhibits filed in other district court actions and obtained from PACER, as reflected in the Ramsey Declaration. Defendants request that the Court take judicial notice of these Exhibits. Fed. R. Evid. 201.

1  was in this context that the Ninth Circuit noted that "[t]he proximity or conspicuousness of the
2  hyperlink alone is not enough to give rise to constructive notice." *Id.* at 1178.  "Where a website
3  makes its terms of use available via a conspicuous hyperlink on every page of the website but
4  otherwise provides no notice to users nor prompts them to take any affirmative action to
5  demonstrate assent, even close proximity of the hyperlink to relevant buttons users must click
6  on—without more—is insufficient to give rise to constructive notice." *Id.* 1178-79.  As to the
7  additional "notice to user," the Ninth Circuit did not require the use of any particular language,
8  location, color, or font size.  Nor did it require the website to "prompt[]" users "to take any
9  affirmative action to demonstrate assent." *Id.*  Rather, the only test is whether the webpage "puts a
10 reasonably prudent user on inquiry notice of the terms of the contract." *Id.* at 1177.

11          Following *Nguyen*, courts in the Ninth Circuit have held that websites like Fluent's provide
12 adequate notice of the contract's terms.  In *Garcia v. Enterprise Holdings, Inc.*, 78 F. Supp. 3d
13 1125, 1129-31, 1137 (N.D. Cal. 2015), the Northern District of California, citing and applying
14 *Nguyen*, found the following website to provide adequate notice:



26 *Id.* at 1131 (image in reported decision).  In *Garcia*, the plaintiff contended that there was no
27 binding agreement "because [the defendant] failed to disclose that by clicking 'Okay' on the sign-
28 up page during the on-line registration process, he was agreeing to be bound by the terms of the

1  Privacy Policy." *Id.* at 1137.  The court rejected this argument under *Nguyen*: "[T]hat argument is
2  germane to a clickwrap agreement, not a browsewrap agreement . . . .  Where a browsewrap
3  agreement is at issue, the terms of the agreement are binding, even if the user did not actually
4  review the agreement, provided that the user had actual knowledge of the agreement or the website
5  put 'a reasonably prudent user on notice of the terms of the contract.'" *Id. citing Nguyen*, 763 F.3d
6  at 1177.  Fluent's website calls attention to the Terms & Conditions ***and the arbitration clause***
7  ***therein*** and tells users that they are binding:  "I understand and agree to the Terms & Conditions
8  which includes mandatory arbitration and Privacy Policy."  Plaintiffs ignore *Garcia*.

In addition, the chart below cites cases and includes website snapshots from district courts in the Ninth Circuit applying *Nguyen* to find binding agreements:

| *Nevarez v. Forty Niners Football Co., LLC*, No. 16-CV-07013, 2017 WL 3492110, at *2 (N.D. Cal. Aug. 15, 2017) (***images in decision***) | [screenshot of Create Account form with fields for First Name, Last Name, E-mail Address, Retype E-mail Address, Type Password, Retype Password, Country of Residence, and an "Accept and Continue" button; below: "By continuing past this page, you agree to our terms of use. Privacy Policy // © 1999-2017 Ticketmaster  All rights reserved"]<br><br>. . . and on a separate page. . .<br><br>[screenshot of Submit Order buttons with text: "By clicking the 'Submit Order' button, you are agreeing to the Ticketmaster Purchase Policy and Privacy Policy. All orders are subject to credit card approval and billing address verification. Please contact customer service if you have any questions regarding your order." and "Your credit card will be charged" / "Cancel Order"; below: "By continuing past this page, you agree to our terms of use. Privacy Policy // © 1999-2017 Ticketmaster. All rights reserved"] |

| Case | Screenshot |
|---|---|
| *Rodriguez v. Experian Servs. Corp.*, No. CV 15-3553-R, 2015 WL 12656919, at *2 (C.D. Cal. Oct. 5, 2015) (**full exhibit from trial court attached as Exhibit 8 to the Ramsey Declaration**). |  |
| *Graf v. Match.com, LLC*, No. CV 15-3911 PA (MRWX), 2015 WL 4263957, at *4 (C.D. Cal. July 10, 2015) (**full exhibit from trial court attached as Exhibit 9 to the Ramsey Declaration**). | |
| *Crawford v. Beachbody, LLC*, No. 14CV1583-GPC KSC, 2014 WL 6606563, at *3 (S.D. Cal. Nov. 5, 2014) (**full exhibit from trial court attached as Exhibit 10 to the Ramsey Declaration**). | |

The notice on Fluent's webpages is at least as good and in some cases much better than the notices in the cases above. The only distinction that Plaintiffs make to the above cases is that, in each, the textual notice included the introductory phrase: "By clicking this button" or "By continuing." (Opp. at 19-21.) This argument fails because there is no requirement in *Nguyen* that the notice include such an introductory phrase. The only requirement is that the website "put[] a reasonably prudent user on inquiry notice of the terms of the contract." *Nguyen*, 763 F.3d at 1177. Here, it is a leap too far to say that adding "By clicking the button below, I confirm that" to what already appeared on Fluent's website – "I understand and agree to the Terms & Conditions which includes mandatory arbitration" – is needed to satisfy the reasonably prudent user test. A reasonably prudent user of Fluent's website cannot view that sentence and come away with the impression that they are not agreeing to the Terms & Conditions. At a minimum, they are on "inquiry notice" of the Terms & Conditions, especially the arbitration provision, which Fluent's textual notice identifies.[6]

For the same reason, Plaintiffs' reliance on *Anand v. John C. Heath*, No. 19-cv-00016, 2019 WL 2716213 (N.D. Ill. June 28, 2019) is unavailing. As explained in Defendants' Motion at length (Mot. at 9-11), the decision in *Anand* failed to apply the correct test from *Nguyen*. In addition, for the reasons described above, *Anand's* core holding – that an introductory phrase (*e.g.*, "by pressing continue") is required – is both wrong and contrary to the above in-circuit authorities.

### 2. Plaintiffs' out-of-circuit caselaw either helps Defendants or is irrelevant

Other than citing *Nguyen* for background, Plaintiffs cite no caselaw from courts in the

---

[6] In the Motion, Defendants also cited *PDC Labs., Inc. v. Hach Co.*, 2009 WL 2605270 (C.D. Ill. Aug. 25, 2009), which was cited in *Nguyen* as an example of a website with sufficient notice. In *PDC Labs*, the Terms were hyperlinked on three separate pages of the online order process and the final checkout screen read "STEP 4 of 4: *Review terms*, add any comments, and submit order." The phrase "*Review terms*" is far less explicit and conspicuous than "I understand and agree to the Terms & Conditions which includes mandatory arbitration and Privacy Policy." Similarly, Defendants cited *Silverman v. Move Inc.*, Case No. 18-cv-05919-BLF, 2019 WL 2579343 105365, at *6-7 (N.D. Cal. June 24, 2019), in which the court enforced a set of terms and conditions when the plaintiff made a purchase over the phone, during the phone call the defendant's account executive told plaintiff that she "would be receiving written confirmation of her order and that it would contain 'all of the details and important information about [her] purchase and agreement with [defendant],'" and later an email was sent with a hyperlink to the terms and conditions. This case is factually different, but underscores that Plaintiffs' formalistic arguments are not the standard under *Nguyen*.

Ninth Circuit. The out-of-circuit decisions that Plaintiffs cite are alternatively distinguishable, contrary to *Nguyen*, or supportive of Defendants' position.

In *Sgouros v. TransUnion Corp.*, 817 F.3d 1029, 1035 (7th Cir. 2016), "the webpages on which [the plaintiff] completed his purchase contained no clear statement that his purchase was subject to *any* terms and conditions of sale. . . . The hyperlinked version of the Service Agreement was not labeled 'Terms of Use' or 'Purchase' or 'Service Agreement,' but rather just 'Printable Version.'." Fluent's website, by contrast, includes such a notice, and Fluent's notice would have satisfied the Seventh Circuit. In *Sgouros*, the Seventh Circuit cited the website at issue in *Hubbert v. Dell Corp.*, 359 Ill.App.3d 976 (2005) as an example of one that would create a binding contract. In *Hubbert*, "[a]ll five pages required to complete the purchase contained a visible hyperlink labeled 'Terms and Conditions of Sale,'" and "the online forms stated, 'All sales are subject to Dell's Term[s] and Conditions of Sale.'" *Sgouros*, 817 F.3d at 1035. That phrase – "All sales are subject to Dell's Terms" – cited approvingly in *Sgouros*, is not materially different from "I understand and agree to the Terms & Conditions which includes mandatory arbitration."

The Second Circuit's decision in *Specht v. Netscape Commc'ns Corp.*, 306 F.3d 17 (2d Cir. 2002) is irrelevant because it involved even less conspicuous placement of the terms than in *Nguyen*. Its reasoning nonetheless supports Defendants. In *Specht*, then-Judge Sotomayor, writing for the Second Circuit, noted that if a writing appears to be a contract and the terms are called to the attention of the recipient, a contract is formed. *Id.* at 30 *citing Marin Storage Trucking v. Benco Contracting*, 89 Cal.App.4th 1042, 1050 (2001). Fluent's notice satisfies this test. Consistent with this, in *Nicosia v. Amazon.com, Inc.*, 384 F. Supp. 3d 254, 269 (E.D.N.Y. 2019), cited by Plaintiffs, the Eastern District of New York granted a motion to compel arbitration where the textual notice read: "By signing up, you acknowledge that you have read and agree to the Amazon Prime Terms and Conditions." The court cited as important the "explicit use of contract-forming language, *viz.*, 'you . . . agree to the Amazon Prime Terms and Conditions,'" which "le[ft] no doubt as to the legal consequences of proceeding with the transaction" (*id.*); the court **did not** cite or purport to require the introductory phrase "by signing up."

Finally, the First Circuit decision in *Cullinane v. Uber Techs., Inc.*, 893 F.3d 53, 64 (1st

1  Cir. 2018) is inapplicable because it applied Massachusetts law to facts different from those here.
2  Indeed, the Second Circuit, analyzing a very similar website design from Uber (one that is more in
3  line with the facts here), found under California law that a binding agreement was formed. *Meyer*
4  *v. Uber Techs., Inc.*, 868 F.3d 66, 78 (2d Cir. 2017) ("Turning to the interface at issue in this case,
5  we conclude that the design of the screen and language used render the notice provided reasonable
6  as a matter of California law.") Consistent with this, district courts in the Ninth Circuit have
7  treated *Cullinane* as a non-persuasive outlier, criticizing it as a dramatic departure from controlling
8  precedent in the Ninth Circuit. *See West v. Uber Techs.*, 2018 WL 5848903, at *4 (C.D. Cal. Sept.
9  5, 2018) ("[T]he *Cullinane* decision departs dramatically both from what other courts have found
10 regarding Uber's registration process, and from the overall legal landscape regarding assent to
11 online agreements. . . .  As the *Cullinane* decision is not binding and departs from Ninth Circuit
12 reasoning, the Court declines to adopt its position here.").[7]

### C.  Plaintiffs' Claims Against Freedom and Lead Science Must Be Arbitrated

Plaintiffs' argument that their claims against Freedom and Lead Science are not subject to arbitration must be rejected.  In this case, Freedom engaged Fluent to obtain contact information for individuals who might want Freedom's services and to contact those individuals to advertise Freedom's services.  (*See* Mot. at 2.)  Fluent then engaged Lead Science, whose services were used to place the phone calls and text messages.  (*Id.*)  Plaintiffs' claims against **all three** defendants depend on their core allegation that they did not provide TCPA consent on Fluent's websiteRelevant here, the consent provided to Fluent, and the fact that the consent extends to contact from or on behalf of Fluent's marketing partners, is an integral part of the Terms & Conditions, and the issue – whether consent was provided – falls within the scope of the arbitration clause.  Fluent's Terms & Conditions state: "Where you provide 'prior express written

---

[7]  Plaintiffs also cite *Rojas v. GoSmith, Inc.*, 2020 WL 831585, at *4 (N.D. Ind. Feb. 20, 2020) and *Berkson v. Gogo LLC*, 97 F. Supp. 3d 359, 404 (E.D.N.Y. 2015), both of which are against the weight of authority in the Ninth Circuit and, in any event, are distinguishable.  In *Rojas*, there were two buttons that could be pressed to continue on a webpage, and only the one toward the bottom of the page, which was less likely to be used, had any notice or hyperlink to the applicable terms.  And in *Berkson*, the textual notice appeared beneath the key button and so, on the record before it, the court stated it could not make a determination about what the plaintiff may have agreed to.

consent' within the meaning of the Telephone Consumer Protection Act ('TCPA'), you consent to receive [calls and texts] . . . via [an ATDS] . . . from us and the marketing partners." (Miten Decl. Ex. 2 at pg. 8 of 29; Ex. 5 at pg. 24 of 29.) And the Terms & Conditions require arbitration of "any disputes or claims" that Plaintiffs may have. (Ex. 2 at pg. 4 of 29; Ex. 4 at pg. 21 of 29.)

Non-signatories to an arbitration agreement can compel a signatory to arbitrate in two scenarios, both of which the above facts fit within: (1) when Plaintiffs' claims are "intimately founded in and intertwined with" the agreement; and (2) when Plaintiffs allege "substantially interdependent and concerted misconduct by the non-signatory and another signatory and 'the allegations of interdependent misconduct [are] founded in or intimately connected with the obligations of the underlying agreement." (Opp. at 22:13-17 *citing Kramer v. Toyota Motor Corp.*, 705 F.3d 1122, 1128-29 (9th Cir. 2013).) In a nearly identical TCPA case against a lead generator and an advertiser, the court compelled arbitration of the plaintiff's claims against the advertiser (the equivalent of Freedom) based on the terms and conditions of the lead generator (the equivalent of Fluent). *Temple v. Best Rate Holdings LLC*, 360 F. Supp. 3d 1289, 1312 (M.D. Fla. 2018) ("[T]he entire reason for the" agreement with the lead generator was for it "to connect Plaintiff with one or more possible entities within a specified group, potentially including" the non-signatory defendant; "[i]ndeed, Plaintiff acknowledges that [lead generator] and [advertiser] had a business relationship whereby [lead generator] would provide [advertiser] with marketing leads and contact lists."). Courts in the Northern District of California have allowed non-signatories to compel arbitration in similar cases. *Torbit, Inc. v. Datanyze, Inc.*, 2013 U.S. Dist. LEXIS 19584, at *12 (N.D. Cal. Feb. 13, 2013) (granting non-signatory's motion to compel arbitration where the plaintiff's "alleged violations [of law]" against the non-signatory "'touch[ed] matters' covered by the arbitration clause . . . and thus [were] 'intertwined with the contract providing for arbitration"); *Simpson v. Pulte Home Corp.*, 2012 U.S. Dist. LEXIS 63889, at *18 (N.D. Cal. May 7, 2012) (same where "Plaintiffs allege[d] that both" the signatory and non-

signatory defendants "were involved in a joint enterprise designed to defraud Plaintiffs").[8]

Moreover, as to Hernandez, the Terms & Conditions applicable to her require arbitration of claims brought against both Fluent and its "affiliates, advertiser clients and marketing partners (collectively, 'Marketing Partners')," including claims about "a telemarketing call or SMS/text message you received from us or a Marketing Partner." (Miten Decl. Ex. 2 at pgs. 4 and 9 of 29.) The agreement's express language thus requires arbitration against non-signatories Freedom and Lead Science, as even Plaintiffs concede. (Opp. at 23 citing *Spano v. V & J Nat'l Enters., LLC*, 264 F. Supp. 3d 440, 453 (W.D.N.Y. 2017) (non-signatories were "explicitly listed as third-party beneficiaries of the Agreement and have the right to enforce the agreement").)

Even if this Court were to find that Plaintiffs' claims against Freedom and Lead Science are not subject to arbitration, because Plaintiffs' claims against them depend on their prevailing against Fluent on the consent issue, the Court should at the very least stay this action pending resolution of an arbitration against Fluent. It would make no sense for consent to be decided in two separate forums on parallel tracks, and even less sense for consent to be decided anywhere other than in the forum that has jurisdiction over the claims against Fluent, who obtained the consent. *See Sharp Corp. v. Hisense USA Corp.*, 2017 U.S. Dist. LEXIS 200102 (N.D. Cal. Dec. 5, 2017) (granting stay of claims against non-signatory defendants pending arbitration of license agreement where "the claims against the defendants . . . all arise from the identical conduct, and are intertwined"); *Tadich Grill, Inc. v. Tadich Grill Dev. Co., LLC*, 2018 U.S. Dist. LEXIS 146437, at *48 (N.D. Cal. Aug. 28, 2018) (staying claims against non-signatories to allow completion of arbitration when claims against all were intertwined and dependent on findings in arbitration on a primary issue); *Amisil Holdings Ltd. v. Clarium Capital Mgmt. LLC*, 622 F. Supp. 2d 825, 842 (N.D. Cal. 2007) (same: "[t]he claims against Clarium and those against the

---

[8] In addition, because Lead Science was operating under a contract with Fluent, Lead Science can also enforce the Fluent arbitration agreement against Plaintiffs under a principal-agency theory. *See Amisil Holdings Ltd. v. Clarium Capital Mgmt. LLC*, 622 F. Supp. 2d 825, 830 (N.D. Cal. 2007) ("[A]gents of a signatory can compel the other signatory to arbitrate so long as (1) the wrongful acts of the agents for which they are sued relate to their behavior as agents or in their capacities of agents . . . and (2) the claims against the agents arise out of or relate to the contract containing the arbitration clause.").

individual defendants are based upon the same facts -- indeed, all but two of the claims against Clarium and the individual defendants are identical. Given these circumstances, a stay would be appropriate. Not only would a failure to stay prejudice Clarium's right to arbitration but also [c]onsiderations of economy and efficiency counsel in favor of a stay.").

Finally, Plaintiffs' contention that defendants Freedom and Lead Science waived their right to compel arbitration lacks merit. All three Defendants moved to compel arbitration and the factual predicates to respond to Plaintiffs' counterarguments on the estoppel and beneficiary issues were in the moving papers. Defendants had no obligation to address those issues at length in the moving papers, particularly because it wasn't clear that Plaintiffs would claim that Freedom and Lead Science could not invoke the arbitration provision.[9] *Remington v. Mathson*, No. CV 09-4547 NJV, 2010 U.S. Dist. LEXIS 29187, at *5-6 n.3 (N.D. Cal. Mar. 26, 2010) ("Typically, the failure to raise an argument in an opening brief constitutes waiver of the argument where the movant raises a new argument for the first time in his or her reply. Here, though Defendants did not raise their argument for abstention under Colorado River in their opening brief, the argument has not been waived because Defendants raised it in their reply in response to Plaintiff's opposition. Plaintiff, therefore, had the opportunity to address the Colorado River abstention argument."); *Harding v. Diamond Resorts Holdings, Ltd. Liab. Co.*, No. 2:17-cv-00248-RFB-VCF, 2017 U.S. Dist. LEXIS 204732, at *18 (D. Nev. Dec. 7, 2017) (finding no waiver where "the Reply contained responses to the points raised in the Opposition").

### III. CONCLUSION

For these reasons, Defendants request that the Court grant the Motion and compel arbitration of the claims asserted in the TAC by Plaintiffs Stephanie Hernandez and Erica Russell.

Dated: March 30, 2020            SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

                                 By       */s/ Jay T. Ramsey*
                                          JAY T. RAMSEY
                                          Attorneys for Defendants

---

[9]   In *Castro v. ABM Indus., Inc.*, 325 F.R.D. 332, 335 (N.D. Cal. 2018), which Plaintiffs cite, the court held that an affirmative argument was waived, not a response to a counterargument.