E. Terrell, SBN #178181
Email: bterrell@terrellmarshall.com
Jennifer Rust Murray, *Admitted Pro Hac Vice*
Email:  jmurray@terrellmarshall.com
TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103
Telephone: (206) 816-6603
Facsimile: (206) 319-5450

[Additional counsel appear on signature page]

*Attorneys for Plaintiffs and Proposed Classes*

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
OAKLAND DIVISION

| | |
|---|---|
| DANIEL BERMAN, STEPHANIE HERNANDEZ, and ERICA RUSSELL,<br><br>Plaintiffs,<br><br>v.<br><br>FREEDOM FINANCIAL NETWORK, LLC, FREEDOM DEBT RELIEF, LLC, FLUENT, INC., and LEAD SCIENCE, LLC,<br><br>Defendants. | NO. 4:18-cv-01060-YGR<br><br>**REPLY IN SUPPORT OF PLAINTIFFS' RENEWED MOTION FOR CLASS CERTIFICATION**<br><br>JURY TRIAL DEMAND<br><br>Honorable Yvonne Gonzalez Rogers<br><br>DATE:        September 8, 2020<br>TIME:        2:00 p.m.<br>LOCATION:  Oakland Courthouse<br>                      Courtroom 1 - 4th Floor |

# TABLE OF CONTENTS

**Page No.**

I.     INTRODUCTION ........................................................................................ 1

II.    AUTHORITY AND ARGUMENT ............................................................... 1

       A.    The Non-Visitor Classes satisfy the Rule 23 requirements ................................. 1

       B.    The Visitor Class satisfies the Rule 23 requirements ........................................... 6

             1.    Defendants have not shown that there are individualized issues
                   of consent ................................................................................................... 7

             2.    Defendants' arbitration defense does not preclude certification............. 11

       C.    Defendants do not dispute that Class members were called and texted
             with a dialer that satisfies the Ninth Circuit's definition of an ATDS................ 15

III.   CONCLUSION............................................................................................... 15

# TABLE OF AUTHORITIES

**Page No.**

## FEDERAL CASES

*Amgen Inc. v. Conn. Retirement Plans & Trust Funds*,
  568 U.S. 455 (2013).................................................................................................... 6

*Avilez v. Pinkerton Gov't Servs., Inc.*,
  596 F. App'x 579 (9th Cir. 2015) .............................................................................. 12

*Briseno v. ConAgra Foods, Inc.*,
  844 F.3d 1121 (9th Cir. 2017) ................................................................................. 3, 5

*CE Design Ltd. v. King Architectural Metals, Inc.*,
  637 F.3d 721 (7th Cir. 2011) ..................................................................................... 14

*Davis v. AT&T Corp.*,
  No. 15-cv-2342-DMS, 2017 WL 1155350 (S.D. Cal. Mar. 28, 2017) ........................... 9

*Facebook, Inc. v. Duguid*,
  2020 WL 3865252 (S. Ct. July 9, 2020) .................................................................... 15

*Fober v. Mgmt. & Tech. Consultants, LLC*,
  No. SACV 15-01673-CJC (DFMx), 2016 WL 7626431 (C.D. Cal.
  July 29, 2016), *aff'd*, 886 F.3d 789 (9th Cir. 2018) ..................................................... 8

*Gordon v. Caribbean Cruise Line, Inc.*,
  No. 14 C 5848, 2019 WL 498937 (N.D. Ill. Feb. 8, 2019) ........................................... 10

*In re Yahoo Mail Litig.*,
  308 F.R.D. 577 (N.D. Cal. 2015) ................................................................................. 2

*Johnson v. Comodo Group, Inc.*,
  No. 16-4469 (SDW), 2020 WL 525898 (D.N.J. Jan. 31, 2020) ..................................... 3

*Johnson v. Yahoo! Inc.*,
  No. 14 CV 2028, 2018 WL 835339 (N.D. Ill. Feb. 13, 2018) ......................................... 9

*Ikuseghan v. Multicare Health Sys.*,
  No. C14-5539 BHS, 2015 WL 4600818 (W.D. Wash. July 29, 2015) ........................... 7

*Karpilovsky v. All Web Leads, Inc.*,
  No. 17 C 1307, 2018 WL 3108884 (N.D. Ill. June 25, 2018) ......................................... 8

*Knapper v. Cox Communc'ns, Inc.*,
  329 F.R.D. 238 (D. Ariz. 2019) ............................................................................ 3, 4, 6

*Krakauer v. Dish Network, LLC*,
  No. 1:14-cv-333, 2015 WL 5227693 (M.D.N.C. Sept. 8, 2015) ...................................... 3

*Krakauer Dish Network, LLC*,
  311 F.R.D. 384 (M.D.N.C. 2015),
  *aff'd*, 925 F.3d 643 (4th Cir. 2019),
  *cert. denied*, 140 S. Ct. 676 (2019) ................................................................ 5, 6

*Legg v. PTZ Ins. Agency, Ltd.*,
  321 F.R.D. 572 (N.D. Ill. 2017) ............................................................................ 9

*Lim v. Helio, LLC*,
  No. CV 11-9183 PSG (ACRx), 2012 WL 12884439 (C.D. Cal. Apr. 18, 2012) ........... 13

*Lundbom v. Schwan's Home Serv., Inc.*,
  No. 3:18-cv-02187-IM, 2020 WL 2736419 (D. Ore. May 26, 2020) ............................. 7

*Marks v. Crunch San Diego, LLC*,
  904 F.3d 1041 (9th Cir. 2018) ............................................................................ 15

*McMillion v. Rash Curtis & Assocs.*,
  No. 16-CV-03396-YGR, 2017 WL 3895764 (N.D. Cal. Sept. 6, 2017) ......................... 7

*Meyer v. Bebe Stores, Inc.*,
  No. 14-cv-00267-YGR, 2017 WL 558017 (N.D. Cal. Feb. 10, 2017) ......................... 15

*Morgan v. Adventist Health Sys./Sunbelt, Inc.*,
  No. 6:18-cv-1342-Orl-78DCI, 2020 WL 1674307 (M.D. Fla. Jan. 15, 2020) ............. 4, 5

*Morris v. Modernize, Inc.*,
  No. AU-17-CA-00963-SS, 2018 WL 7076744 (W.D. Tex. Sept. 27, 2018) ............... 7, 8

*Nitsch v. Dreamworks Animation SKG Inc.*,
  315 F.R.D. 270 (N.D. Cal. 2016) ......................................................................... 14

*O'Connor v. Uber Technologies, Inc.*,
  904 F.3d 1087 (9th Cir. 2018) ............................................................................ 12

*Oliver v. TTC-Ameridial, LLC*,
  No. 16 C 5177, 2018 WL 1255017 (N.D. Ill. Mar. 12, 2018) ...................................... 8

*Pablo v. ServiceMaster Global Holdings, Inc.*,
  No. C 08-03894 SI, 2011 WL 3476473 (N.D. Cal. Aug. 9, 2011) ................................ 12

*Satterfield v. Simon & Schuster, Inc.*,
　　569 F.3d 946 (9th Cir. 2009) ....................................................................... 8

*Siles v. ILGWU Nat. Retirement Fund*,
　　783 F.2d 923 (9th Cir. 1986) ....................................................................... 3

*True Health Chiropractic v. McKesson Corp.*,
　　896 F.3d 923 (9th Cir. 2018) ....................................................................... 8

*Tschudy v. J.C. Penney Corp., Inc.*,
　　No. 11-cv-1011 JM (KSC), 2015 WL 8484530 (S.D. Cal. Dec. 9, 2015).............. 12, 13

*Vega v. T-Mobile USA, Inc.*,
　　564 F.3d 1256 (11th Cir. 2009) ................................................................... 3

*West v. Cal. Servs. Bureau, Inc.*,
　　323 F.R.D. 295 (N.D. Cal. 2017).................................................................. 2

*Wilson v. Babcock Home Furniture*,
　　329 F.R.D. 454 (M.D. Fla. 2018)................................................................. 4

*Wolin v. Jaguar Land Rover N. Am., LLC*,
　　617 F.3d 1168 (9th Cir. 2010) ..................................................................... 6

*Yucesoy v. Uber Techs., Inc.*,
　　No. C-15-0262 EMC, 2015 WL 4571547 (N.D. Cal. July 28, 2015)........................... 14

## FEDERAL REGULATIONS

47 C.F.R § 64.1200(f)(3) ................................................................................. 8

47 C.F.R. § 64.1200(f)(8) ............................................................................... 7

## OTHER AUTHORITIES

William B. Rubenstein, 1 Newberg on Class Actions § 3:68 (5th ed. June 2020 update) ......... 14

# I.  INTRODUCTION

Plaintiffs filed a renewed motion for class certification requesting that the Court certify three Classes of individuals who received calls and texts from Fluent and Drips marketing Freedom's debt relief services. Plaintiffs showed that all three Classes satisfy the Rule 23(a) and (b)(3) requirements, warranting certification. Defendants' opposition *supports* Plaintiffs' motion because it raises common issues and confirms that aggregate data can be used to confirm membership in the Classes. Despite filling their allotted pages and cramming substantive arguments into footnotes, Defendants have not identified any individualized issues that preclude certification. Plaintiffs request that the Court grant their motion.

# II.  AUTHORITY AND ARGUMENT

A.  **The Non-Visitor Classes satisfy the Rule 23 requirements.**

Plaintiffs request certification of two classes of persons who did *not* visit any of Fluent's websites but nonetheless received calls or texts from Defendants marketing Freedom's products:

> **Cellular Telephone Non-Visitor Class:** Every person in the United States (1) to whom Defendants placed a call or sent a text message, (2) to a cellular telephone number listed in LEADSCIENCE_677, (3) using an ATDS and/or an artificial or prerecorded voice, (4) in order to sell Freedom's products, (5) between May 17, 2017, and April 17, 2018, (6) but who hadn't entered the phone number on a Fluent website.

> **DNC Non-Visitor Class:** Every person in the United States (1) to whom Defendants placed a call or sent a text message, (2) in order to market Freedom's products, (3) between May 17, 2017, and April 17, 2018 (4) to a residential telephone number listed in LEADSCIENCE_677, (5) which telephone number was listed on the NDNCR for at least 31 days before at least two of such communications in a 12-month period, (6) but who hadn't entered the phone number on a Fluent website.

Defendants contend that the Non-Visitor Classes fail to satisfy numerosity, predominance, and superiority because it is not possible to identify any members other than Mr. Berman. Defendants are wrong.

REPLY IN SUPPORT OF PLAINTIFFS' RENEWED MOTION FOR CLASS
CERTIFICATION - 1
CASE NO. 4:18-CV-01060-YGR

*Numerosity*. "A class or subclass with more than 40 members raises a presumption" of numerosity "based on numbers alone." *West v. Cal. Servs. Bureau, Inc.*, 323 F.R.D. 295, 303 (N.D. Cal. 2017). A court "may consider reasonable inferences drawn from the facts before it" in finding numerosity is met. *In re Yahoo Mail Litig.*, 308 F.R.D. 577, 589-90 (N.D. Cal. 2015) (citing *Gay v. Waiters' & Dairy Lunchmen's Union*, 549 F.2d 1330, 1332 n.5 (9th Cir. 1977)).

Plaintiffs' expert, Anya Verkhovskaya, identified 4,492,433 calls and text messages that were made to 691,157 unique telephone numbers that were wireless at the time of the call. Ex. 28 (Second Suppl. Verkhovskaya Report) ¶ 10.[1] Ms. Verkhovskaya compared this list of cell phone numbers to Defendants' "lead" records and found that hundreds of thousands of the telephone numbers were associated with purported "registration information" that was either missing name and address data altogether or filled with facially invalid entries. *See* Ex. 10 (Verkhovsksya Report) ¶ 56 & Exs. D, E; *see also* Ex. 28 (Second Suppl. Verkhovskaya Report) ¶ 15. Defendants' expert, David Kalat, maintains that Ms. Verkhovskaya inflated the number of invalid leads, yet concedes that 73,975 leads were sourced from registrations that Ms. Verkhovskaya identified as invalid. *See* Dkt. No. 260-7 (Second Suppl. Kalat Report) ¶ 14. And although Mr. Kalat speculates that some of the leads may actually have been valid, he continues to offer no explanation as to why many of the erroneous entries, such as "blah blah" or "Ddmdkdmdkdmdk" were considered valid registrations of the associated telephone numbers. There is no evidence that a person named "Blah Blah" and "Ddmdkdmdkdmdk" registered to receive robocalls on Fluent's website and there is no evidence that a real person associated with these nonsense leads visited the website and lied. Given the sheer number of plainly fictitious entries (*see g*enerally Ex. 10 (Verkhovskaya Report)), the Court can reasonably infer that the

---

[1] Exhibits 1-29 are attached to Dkt. No. 256 (Terrell Decl.) and exhibits 30-33 are attached to the Supplemental Terrell Declaration.

Non-Visitor Class will number in the thousands. *See* Dkt. No. 198 at 16 (noting a "technical glitch" did not explain many of the nonsense entries in Defendants' consent data). [2]

***Predominance and superiority***. Defendants assert that a class action is not superior because "public and private databases do not accurately set forth who uses a particular cell phone number at any given time" and Non-Visitor Class members therefore cannot be "manageably identified." Opp. at 23, 19-20. But "the vendors that Ms. Verkhovskaya plans to use, such as LexisNexis, have been reliably used in past TCPA litigations to identify telephone number uses/subscribers and their addresses." *Johnson v. Comodo Group, Inc.*, No. 16-4469 (SDW), 2020 WL 525898, at *9 (D.N.J. Jan. 31, 2020) (citing cases in support); *see also Krakauer v. Dish Network, LLC*, No. 1:14-cv-333, 2015 WL 5227693, at *8-10 (M.D.N.C. Sept. 8, 2015) (holding that Ms. Verkhovskaya's use of LexisNexis to identify TCPA class members is a reliable methodology). Ms. Verkhovskya's methodology has been called the "the industry standard." *Knapper v. Cox Commc'ns, Inc.*, 329 F.R.D. 238, 244-45 (D. Ariz. 2019) (finding the "major data aggregators can be used, in connection with other methods like subpoenaing wireless carriers and cross-referencing addresses, to reasonably identify the most likely subscriber of the phone number on the relevant call date").

Furthermore, the Ninth Circuit has rejected the idea that a plaintiff must propose an administratively feasible way to identify all class members at the class certification stage. *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1133 (9th Cir. 2017). Instead, courts use a

---

[2] The non-TCPA cases on which Defendants rely involve situations where the plaintiffs presented no evidence of numerosity and thus are distinguishable from this one. *See Siles v. ILGWU Nat. Retirement Fund*, 783 F.2d 923, 930 (9th Cir. 1986) (district court's finding that plaintiffs had not established numerosity in ERISA case not an abuse of discretion where plaintiffs provided no evidence of class size); *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1267 (11th Cir. 2009) (numerosity not established in wage case where there was no evidence of class size).

variety of tools to manage this process at a later date, relying on "claim administrators, various auditing processes, sampling for fraud detection, follow-up notices to explain the claims process, and other techniques tailored by the parties and the court." *Id.* at 1130. Because a reverse append process can be reasonably used to determine if the telephone number called was associated with the name listed in Fluent's registration data, "it seems unlikely that the issue of consent beyond the notice stage in this litigation would be a predominant issue." *Knapper*, 329 F.R.D. at 245.

Defendants point to a lead associated with "Kelsey Forsch" to highlight the purported unreliability of the reverse append process to identify the Non-Visitor Class. *See* Opp. at 23. Data from data processors show that the number belongs to Robert Hayes. *See* Declaration of Anya Verkhovskaya in Support of Plaintiffs' Class Certification Reply. When Plaintiffs' counsel called the telephone number, Levi Hayes answered the phone and confirmed that his father was Robert Hayes, that he had used the telephone number since 2016, that he did not know a person named Kelsey Forsch, and that, to his knowledge, he had never visited a Fluent website.

The fact that Defendants' expert associated Mr. Berman's telephone number with his father, Ronald Berman, also does not undermine the reliability of the reverse append process. Subscribers of a group calling plan "can, or easily could, generally identify the names and addresses of the users on their own group calling plan." *Knapper*, 329 F.R.D. at 246 ("self-identifying affidavits and notice to the subscriber … can be used to identify the correct putative class member"). And data processor data often identifies the users of phone numbers within a family plan. *See, e.g.,* Verkhovskaya Reply Declaration. The two non-binding cases on which Defendants rely are inapposite. Both were decided by district courts within the Eleventh Circuit, which requires class members to be identified in an "administratively feasible" way. *See Wilson v. Babcock Home Furniture*, 329 F.R.D. 454, 457 (M.D. Fla. 2018); *Morgan v. Adventist Health*

REPLY IN SUPPORT OF PLAINTIFFS' RENEWED MOTION FOR CLASS CERTIFICATION - 4
CASE NO. 4:18-CV-01060-YGR

1 | *Sys./Sunbelt, Inc.*, No. 6:18-cv-1342-Orl-78DCI, 2020 WL 1674307, at *3 (M.D. Fla. Jan. 15,

2 | 2020). The Ninth Circuit imposes no such requirement. *See Briseno*, 844 F.3d at 1126.

3 |    Defendants argue that even if the reverse append process is reliable the identified person

4 | still may have visited Fluent's website and identifies a handful of purported examples. But in

5 | making this argument Defendants' expert proves that this issue is manageable through analysis

6 | of aggregated data. Defendants retain data showing each time a person registered on the website.

7 | This data can be sorted and analyzed. *See* Dkt. No. 260-7 (Suppl. Kalat Report) ¶¶ 72-80. At

8 | trial, Plaintiffs' expert will present her list of telephone numbers allegedly called without consent

9 | and Defendants may challenge numbers on the list based on its data. The jury will weigh all the

10 | evidence and decide the total number of TCPA violations.[3] Of course, even if Defendants

11 | successfully prove that a person visited the Fluent website, that does not mean the person

12 | provided valid TCPA consented. The person simply becomes a member of the Visitor Class.

13 |    The Court also has discretion to require the parties to resolve before trial as many of the

14 | disputes as possible. In *Krakauer*, for example, the district court explained that "[t]he fact that a

15 | class list contains members whose claims may fail on the merits does not mean that the class

16 | cannot be certified." *Krakauer Dish Network, LLC*, 311 F.R.D. 384, 396 (M.D.N.C. 2015), *aff'd*,

17 | 925 F.3d 643 (4th Cir. 2019), *cert. denied*, 140 S. Ct. 676 (2019). Before trial, the parties

18 | conferred about various issues with the data and the plaintiffs agreed that many of the telephone

19 | numbers did not have valid claims and could be excluded from damages calculations. During the

20 | pre-trial conference, the court agreed to the parties' proposal to divide the remaining phone

21 | numbers at issue into "buckets" based on objective criteria, allowing the jury to hear the expert's

22 | methodology as to each bucket and decide whether and how to discount it. Terrell Reply Decl.

23 |

24 | ───────────────
[3] Defendants have produced to Plaintiffs only a sample of their data relating to 100 numbers.

REPLY IN SUPPORT OF PLAINTIFFS' RENEWED MOTION FOR CLASS
CERTIFICATION - 5
CASE NO. 4:18-CV-01060-YGR

1    ¶ 2 and Exs.30-31. In affirming the district court's certification of the case and judgment, the

2    Fourth Circuit praised the district court's management of the action: "Through each stage of the

3    proceedings below, the record reflects substantial diligence and care by the district court in

4    managing the class. When new evidence became available, the court modified the class

5    appropriately. *Krakauer*, 925 F.3d at 652. There is no reason why a similar process, which would

6    be "far more efficient" than thousands of overlapping individual suits, could not be used here.

7    *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1176 (9th Cir. 2010).

8        Finally, Defendants' assertion that purported agency issues defeat class certification

9    should be rejected out of hand. Defendants fail to present evidence that a single class member

10   authorized another person to consent to robocalls on the class member's behalf and Defendants'

11   speculation cannot defeat class certification. *See Knapper*, 329 F.R.D. at 246 n. 2 (declining to

12   find individualized agency issues predominate where defendant had "not provided any evidence

13   that agency issues are real and not simply skeptical").

14   **B.    The Visitor Class satisfies the Rule 23 requirements.**

15       Plaintiffs request certification of a Class of persons who visited Fluent's websites:

16       **Cellular Telephone Visitor Class:** Every person in the United States (1) to
     whom Defendants placed a call or sent a text message, (2) to a cellular
17       telephone number listed in LEADSCIENCE_677, (3) using an ATDS
     and/or an artificial or prerecorded voice, (4) in order to sell Freedom's
18       products, (5) between May 17, 2017, and April 17, 2018, (6) after the
     person had entered the phone number on a Fluent website.

19   Defendants argue that the Visitor Class cannot be certified because all Class members consented

20   to receive calls and texts and all Class members agreed to arbitrate their claims. These arguments

21   merely highlight the appropriateness of certification because they raise issues common to all

22   Visitor Class members. *See Amgen Inc. v. Conn. Retirement Plans & Trust Funds*, 568 U.S. 455,

23   459 (2013) (plaintiffs need only show that there are common questions capable of classwide

24   resolution, not that "those questions will be answered, on the merits, in favor of the class").

REPLY IN SUPPORT OF PLAINTIFFS' RENEWED MOTION FOR CLASS
CERTIFICATION - 6
CASE NO. 4:18-CV-01060-YGR

1    1. <u>Defendants have not shown that there are individualized issues of consent.</u>

2    Defendants contend that *all* members of the Visitor Class consented to receive

3 telemarketing calls and texts made by or on behalf of Freedom. Plaintiffs disagree because the

4 formatting and language of the webpage that Defendants claim they used to obtain Class member

5 consent does not provide the "clear and conspicuous disclosure" required by the TCPA (47

6 C.F.R. § 64.1200(f)(8))[4] and does not comply with the E-SIGN Act. Defendants' consent defense

7 therefore presents a common issue that can be resolved on behalf of all Visitor Class members at

8 once and supports class certification. *See McMillion v. Rash Curtis & Assocs.*, No. 16-CV-

9 03396-YGR, 2017 WL 3895764, at *5 (N.D. Cal. Sept. 6, 2017) (where the "Defendant engaged

10 in the same practice with respect to all class members, … whether that practice was performed

11 without prior express consent is common to the classes"); *see also Ikuseghan v. Multicare Health*

12 *Sys.*, No. C14-5539 BHS, 2015 WL 4600818, at *7 (W.D. Wash. July 29, 2015) (finding that the

13 issue of whether filling out the defendant's standardized forms constituted express consent was a

14 common issue supporting certification).

15    Defendants urge the Court to find that Visitor Class members consented as a matter of

16 law but this is not the appropriate vehicle for the Court to do so. In ruling on Plaintiffs' prior

17 certification motion, the Court recognized that "[t]he declarations and documents defendants

18 offer to establish that putative class members registered on the website and provided consent are

19 relative to the merits of the defenses, not whether there are class-wide or individualized issues."

20 Dkt. No. 198 at 10. Indeed, in most of the cases Defendants cite, courts resolved the disputed

21 issue of consent on summary judgment, not class certification. *See Lundbom v. Schwan's Home*

22 *Serv., Inc.*, No. 3:18-cv-02187-IM, 2020 WL 2736419, at *9 (D. Or. May 26, 2020); *Morris v.*

23

24 ──────────────
[4] Defendants' argument that application of the TCPA's prior express written consent requirement violates the First Amendment is simply another common merits issue.

REPLY IN SUPPORT OF PLAINTIFFS' RENEWED MOTION FOR CLASS CERTIFICATION - 7
CASE NO. 4:18-CV-01060-YGR

*Modernize, Inc.*, No. AU-17-CA-00963-SS, 2018 WL 7076744, at *3 (W.D. Tex. Sept. 27, 2018); *Oliver v. TTC-Ameridial, LLC*, No. 16 C 5177, 2018 WL 1255017, at *2 (N.D. Ill. Mar. 12, 2018); *Fober v. Mgmt. & Tech. Consultants, LLC*, No. SACV 15-01673-CJC (DFMx), 2016 WL 7626431, at *4 (C.D. Cal. July 29, 2016), *aff'd*, 886 F.3d 789 (9th Cir. 2018).

Defendants halfheartedly argue in the alternative that proving consent will require individualized inquiries but offer no evidence of what those purported individualized inquiries might be. *True Health Chiropractic v. McKesson Corp.*, 896 F.3d 923, 931-32 (9th Cir. 2018) ("A defendant can produce evidence of a predominance-defeating consent defense in a variety of ways. … But we do not consider the consent defenses that McKesson might advance or for which it has presented no evidence."). Defendants do not argue that the "consent form" webpage on which they contend Visitor Class members provided consent varied in any way. *See id.* at 932 (finding predominance satisfied where "the record shows … little or no variation" in the forms used to obtain consent). And there is no need to inquire into whether each Class member found the "consent form" webpage to be confusing because "[t]he term clear and conspicuous means a notice that would be apparent to the *reasonable consumer*, separate and distinguishable from the advertising copy or other disclosures." 47 C.F.R § 64.1200(f)(3). This "reasonable consumer" standard is, of course, an objective standard that does not turn on a particular Class member's subjective understanding of the disclosure. *See Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 954-55 (9th Cir. 2009) (examining the "plain and ordinary meaning" of the terms of the contract the defendant claimed constituted express consent).

Because this standard "is not a user-dependent inquiry," Defendants' "fact-intensive speculations miss the mark entirely." *Karpilovsky v. All Web Leads, Inc.*, No. 17 C 1307, 2018 WL 3108884, at *5 (N.D. Ill. June 25, 2018). That Plaintiffs' expert agreed that the only way to

1    determine what each Class member understood about the "consent form" is to ask them has no

2    bearing on the objective reasonable consumer standard. *See id.* (rejecting challenges to the

3    plaintiff's expert's opinions about the typical user's experience that focused on individual users'

4    experiences). Defendants' claim that two Visitor Class members "confirmed their consent" is

5    also of little persuasive value—particularly because they did no such thing. Opp. at 21. Neither

6    declarant actually said he recalls visiting one of Fluent's websites, seeing and understanding the

7    "consent form," or checking the unchecked box to consent to receive calls and texts; instead,

8    both say they were told by Fluent's lawyer that they did these things and "have no reason to

9    believe that Fluent, LLC's and Freedom's records are incorrect …." Dkt. No. 260-7 (Ramsey

10   Decl.) Exs. 14 & 15.

11           Determining consent in this case is therefore not like the cases Defendants cite, where the

12   defendants did not claim to have used a common form to obtain consent and the circumstances of

13   each class member had to be examined. *See Johnson v. Yahoo! Inc.*, No. 14 CV 2028, 2018 WL

14   835339, at *3-4 (N.D. Ill. Feb. 13, 2018) (defendant's evidence showed that "the facts

15   surrounding each person associated with a matching number would have to explored" to

16   determine whether each class member accepted the user agreement and provided consent, and

17   "may be dependent on class member testimony"); *Davis v. AT&T Corp.*, No. 15-cv-2342-DMS,

18   2017 WL 1155350, at *5-6 (S.D. Cal. Mar. 28, 2017) (parties would have to conduct

19   individualized inquiries into whether class members with "wrong number" notations were the

20   AT&T customers because AT&T "has come forward with evidence that a call with a 'wrong

21   number' notation proves nothing because many customers tell callers they have reached the

22   wrong number … as a 'procrastination tool' to avoid speaking on the phone"); *Legg v. PTZ Ins.*

23   *Agency, Ltd.*, 321 F.R.D. 572, 577-78 (N.D. Ill. 2017) (defendants showed that consent was

24

obtained through oral communications between shelter employees and class members who

adopted pets and provided affidavits from class members saying "they agreed to and expected to

receive calls on their cellular phones from defendants about the offered pet insurance). *Gordon v.*

*Caribbean Cruise Line, Inc.*, is also distinguishable because the plaintiff did not dispute that the

defendant obtained TCPA-compliant consent through its webpage—as Plaintiffs do here—and

instead relied on individualized evidence that some class members never visited the webpage,

which led the court to conclude that individualized inquiries would be required. No. 14 C 5848,

2019 WL 498937, at *10 (N.D. Ill. Feb. 8, 2019).

Defendants argue that Ms. Russell and Ms. Hernandez are atypical and inadequate

representatives because they "understood the consent form" (Opp. at 19) but their testimony

actually supports Plaintiffs' position that the webpages are confusing and misleading to a

reasonable consumer. Both testified they did not realize they consented to receive telemarketing

texts and calls and would not have agreed to do so had they known. Ex. 24 (Russell Dep.) at

47:2-12 (Q: If you saw a website like this one or if you saw this website, would you check the 'I

confirm' box? A: No. [objection omitted] No. Because I do not give out my personal information

as far as phone number. I don't want to be called. I don't want to be texted. I don't want to be

repeatedly called by what looks like an auto dialer and prerecorded messages. I wouldn't

confirm.); Ex. 32 (Hernandez Dep.) at 69:23-70:2 (Q: Have you seen boxes like this online

before? A: I have. Q: And what do you understand it to be? Is that a box that you can check? A:

It's a box I won't check.). Ms. Hernandez testified that she "exited out" without checking the

box and "still got all the phone calls … and you guys still wouldn't stop calling me …. It didn't

stop. … And I didn't even check no box." Ex. 32 (Hernandez Dep.) at 70:11-22; *see also id.* at

REPLY IN SUPPORT OF PLAINTIFFS' RENEWED MOTION FOR CLASS
CERTIFICATION - 10
CASE NO. 4:18-CV-01060-YGR

71:8 ("I didn't check no box."); 71:15 ("I did not check no box."); 73:1-74:22 ("I closed out of the website when they started asking me medical questions.").

Whether Fluent's "consent form" webpage complies with the TCPA and E-SIGN Act is a common question for all Visitor Class members and supports class certification.

2. <u>Defendants' arbitration defense does not preclude certification.</u>

In opposing Plaintiffs' prior motion for class certification, Defendants argued that Mr. Berman could not represent class members who were subject to their arbitration defense because Mr. Berman had not visited one of Fluent's websites. Ms. Russell and Ms. Hernandez *are* able to represent other members of the Visitor Class who Defendants contend agreed to arbitrate. In fact, the parties have already briefed Defendants' motion to compel arbitration of Ms. Russell's and Ms. Hernandez's claims.

Defendants contend that all Visitor Class members agreed to arbitrate as a matter of law, while Plaintiffs contend they did not because Fluent's websites are uniformly confusing and misleading with disclosures that are buried and do not comply with industry standards and best practices. *See generally* Ex. 21 (Second Supp. Beecher Report). If the Court grants Defendants' motion to compel arbitration and finds that Ms. Russell and Ms. Hernandez agreed to arbitrate with *all* Defendants, there will be no reason to certify the Visitor Class. In opposing class certification, Defendants repeat many of the arguments they made in their motion to compel arbitration. Plaintiffs see no reason to reiterate arguments made in that fully-briefed motion here.

Certification of the Visitor Class is appropriate if the Court denies Defendants' motion to compel arbitration or finds that Ms. Russell and Ms. Hernandez agreed to arbitrate only with Fluent and not with Freedom and Drips.[5] The cases Defendants cite do not hold to the contrary.

---

[5] Defendants contend that determining whether Visitor Class members agreed to arbitrate with Freedom and Lead Science invokes differences in state laws but Defendants did not make this

In *O'Connor v. Uber Technologies, Inc.*, the Ninth Circuit reversed the class certification order because the district court had improperly determined that the arbitration agreements and class action waivers the class members signed were unenforceable—a question delegated to the arbitrator—and based its Rule 23 findings on that determination. *O'Connor*, 904 F.3d 1087, 194-95 (9th Cir. 2018). In this case, by contrast, the Court will decide whether the arbitration agreements are enforceable. In *Pablo v. ServiceMaster Global Holdings, Inc.*, the court issued a short decision citing the "unique circumstances of this litigation" where "plaintiffs' legal claims are already complex, defendants have presented significant evidence of numerous enforceable arbitration agreements, intervening Supreme Court case law has complicated the issue of waiver and enforcement, and this case was filed approximately three years ago" as the reason for denying class certification. No. C 08-03894 SI, 2011 WL 3476473, at *2-3 (N.D. Cal. Aug. 9, 2011). The court recognized that "ruling on the merits of the class certification [motion] and reserving the right to create subclasses or exclude members from the class at a later juncture" might be the appropriate procedure to follow in other cases. *Id.* at *3 (citation omitted).

Defendants also rely on several cases in which the named plaintiffs were found to be atypical because, unlike the proposed class members, they did not sign arbitration agreements or class action waivers; in other words, the decisions are similar to this Court's prior ruling that Mr. Berman could not represent persons who Defendants contend are subject to arbitration agreements and class action waivers. *See Avilez v. Pinkerton Gov't Servs., Inc.*, 596 F. App'x 579, 579 (9th Cir. 2015) (district court abused its discretion in certifying classes and subclasses including employees who signed class action waivers because the class representative did not

---

argument in their motion to compel arbitration even though Ms. Hernandez and Ms. Russell live in different states, have not identified any relevant differences in state laws, and have not explained how the choice-of-law provision in the Terms and Conditions impacts the analysis.

REPLY IN SUPPORT OF PLAINTIFFS' RENEWED MOTION FOR CLASS CERTIFICATION - 12
CASE NO. 4:18-CV-01060-YGR

1 and was therefore an atypical and inadequate representative); *Tschudy v. J.C. Penney Corp., Inc.*,

2 No. 11-cv-1011 JM (KSC), 2015 WL 8484530, at *3-4 (S.D. Cal. Dec. 9, 2015) (named

3 plaintiffs who were not subject to an arbitration agreement were atypical of class members who

4 were); *Lim v. Helio, LLC*, No. CV 11-9183 PSG (ACRx), 2012 WL 12884439, at *1-3 (C.D.

5 Cal. Apr. 18, 2012) (plaintiff was atypical because she claimed to not have received the part of

6 the defendant's customer agreement containing the arbitration provision the defendant

7 demonstrated other class members received and signed).

8       Defendants' argument that Ms. Russell and Ms. Hernandez are atypical and inadequate

9 representatives because of their deposition testimony is a ploy to shoehorn new evidence into the

10 motion to compel arbitration. It was Defendants' choice to file the motion before deposing Ms.

11 Russell and Ms. Hernandez. But even if the Court considers the deposition testimony, it is

12 evident that Ms. Russell and Ms. Hernandez did *not* have actual notice of the arbitration

13 provision. Ms. Russell testified that she did not recall seeing a reference to mandatory

14 arbitration, would have read the terms and conditions if she had seen the link to them, and

15 probably would not have clicked "continue" if she knew she was agreeing to mandatory

16 arbitration. Ex. 33 (Russell Dep.) at 37:15-41:6; Ex. 24 (Russell Dep.) at 59:3-61:20. In fact, Ms.

17 Russell testified that her reading of the text next to the "I agree" checkbox on Fluent's webpage

18 is that she would be agreeing to receive email samples and savings and sweepstakes alerts,

19 nothing more. Ex. 24 (Russell Dep.) at 97:5-20. Ms. Hernandez also testified that she would have

20 read the terms and conditions on Fluent's website because it is not a well-established business

21 that is familiar to her, like Costco, Walmart, or Lowe's. Ex. 32 (Hernandez Dep.) at 81:7-83:15.

22       Defendants accuse Ms. Russell of "credibility and memory issues" (Opp. at 10 n.13) and

23 claim that Ms. Hernandez gave "inconsistent testimony" (Opp. at 11 n.15) because they do not

24

have perfect recall about websites they visited more than two years ago. If anything, the two

Visitor Class member declarations Defendants filed show that Plaintiffs' experiences are typical

since neither declarant says he recalls visiting one of Fluent's websites. Dkt. No. 260-7, Exs. 14

& 15. Moreover, courts generally entertain arguments about a proposed class representative's

credibility only if she engaged in unethical conduct related to the claims in the case. *See, e.g.,*

*Yucesoy v. Uber Techs., Inc.*, No. C-15-0262 EMC, 2015 WL 4571547, at *3 (N.D. Cal. July 28,

2015) (citing this "general rule"). Even then, "such challenges are rarely upheld." William B.

Rubenstein, 1 Newberg on Class Actions § 3:68 (5th ed. June 2020 update); *see also CE Design*

*Ltd. v. King Architectural Metals, Inc.*, 637 F.3d 721, 728 (7th Cir. 2011) ("Serious challenges to

typicality and adequacy must be distinguished from petty issues manufactured by defendants to

distract the judge from his or her proper focus under Rule 23(a)(3) and (4) on the interests of the

class ….").

Defendants also argue that the webpages that Visitor Class members would have seen

varied. Opp. at 13. But Defendants have not provided any evidence of variations beyond the

vague, conclusory assertions Mr. Bhadania makes in a single paragraph in his declaration. Dkt.

No. 260-3 (Bhadania Decl.) ¶ 5. The only webpages Defendants submitted are those visited by

Ms. Russell and Ms. Hernandez and the one Defendants previously claimed Mr. Berman visited.

Even if there were individualized issues as to whether a particular Visitor Class member agreed

to arbitrate with Fluent (as Defendants suggest in their fallback position) or with Freedom and

Drips, "those damages allocation issues may be resolved during individualized damages

proceedings at a later phase." *Nitsch v. Dreamworks Animation SKG Inc.*, 315 F.R.D. 270, 314-

15 (N.D. Cal. 2016) (certifying class where, as here, individualized issues might arise as to

whether class members agreed to arbitrate with one or more but not all defendants). As the Court

recognized in its prior class certification order, courts in the Ninth Circuit frequently find that "class certification is not precluded by the existence of an arbitration defense as to some putative class members." Dkt. No. 198 at 27 (citing cases).

**C.    Defendants do not dispute that Class members were called and texted with a dialer that satisfies the Ninth Circuit's definition of an ATDS.**

In a final argument that supports certification, Defendants contend that the Ytel dialer Defendants used to contact members of all three proposed Classes is not an autodialer. They do not dispute that the Ytel dialer satisfies the definition of an ATDS provided by the Ninth Circuit in *Marks v. Crunch San Diego, LLC*, 904 F.3d 1041, 1051-53 (9th Cir. 2018), but note that the Supreme Court granted certiorari in *Facebook, Inc. v. Duguid*, 2020 WL 3865252 (S. Ct. July 9, 2020). Whether the Ytel dialer is an ATDS is a central overarching common question that satisfies commonality and predominance for all three Classes. *See Meyer v. Bebe Stores, Inc.*, No. 14-cv-00267-YGR, 2017 WL 558017, at *4-5 (N.D. Cal. Feb. 10, 2017).

### III.   CONCLUSION

Plaintiffs request that the Court grant their motion for class certification.

RESPECTFULLY SUBMITTED AND DATED this 21st day of August, 2020.

TERRELL MARSHALL LAW GROUP PLLC

By: /s/ Beth E. Terrell, SBN #178181
Beth E. Terrell, SBN #178181
Email: bterrell@terrellmarshall.com
Jennifer Rust Murray, *Admitted Pro Hac Vice*
Email:  jmurray@terrellmarshall.com
936 North 34th Street, Suite 300
Seattle, Washington 98103
Telephone: (206) 816-6603
Facsimile: (206) 319-5450

1

2

3

4

Anthony I. Paronich, *Admitted Pro Hac Vice*
Email: anthony@paronichlaw.com
PARONICH LAW, P.C.
350 Lincoln Street, Suite 2400
Hingham, Massachusetts 02043
Telephone: (617) 738-7080
Facsimile: (617) 830-0327

5

6

7

8

Edward A. Broderick, *Admitted Pro Hac Vice*
Email: ted@broderick-law.com
BRODERICK LAW,  P.C.
99 High Street, Suite 304
Boston, Massachusetts 02110
Telephone: (617) 738-7080
Facsimile: (617) 830-0327

9

10

11

12

Matthew P. McCue, *Admitted Pro Hac Vice*
Email: mmccue@massattorneys.net
THE LAW OFFICE OF MATTHEW P. McCUE
1 South Avenue, Suite 3
Natick, Massachusetts 01760
Telephone: (508) 655-1415
Facsimile: (508) 319-3077

13

*Attorneys for Plaintiffs and Proposed Classes*

14

15

16

17

18

19

20

21

22

23

24

REPLY IN SUPPORT OF PLAINTIFFS' RENEWED MOTION FOR CLASS
CERTIFICATION - 16
Case No. 4:18-cv-01060-YGR

CERTIFICATE OF SERVICE

I, Beth E. Terrell, hereby certify that on August 21, 2020, I electronically filed the

foregoing with the Clerk of the Court using the CM/ECF system which will send notification of

such filing to the following:

> Jay T. Ramsey, SBN #273160
> Email: jramsey@sheppardmullin.com
> SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
> 1901 Avenue of the Stars, Suite 1600
> Los Angeles, California 90067-6055
> Telephone: (310) 228-3700
> Facsimile: (310) 228-3701
>
> Neil Asnen
> Email: nasnen@kleinmoynihan.com
> Evan King
> Email: eking@kleinmoynihan.com
> KLEIN MOYNIHAN TURCO LLP
> 450 Seventh Avenue
> New York, New York 10123
> Telephone: (646) 350-1736
> Facsimile: (212) 216-9559
>
> *Attorneys for Defendants Freedom Financial Network, LLC, Freedom Debt
> Relief, LLC, Fluent, Inc., and Lead Science, LLC*

DATED this 21st day of August, 2020.

> TERRELL MARSHALL LAW GROUP PLLC
>
>
> By: /s/ Beth E. Terrell, SBN #178181
> Beth E. Terrell, SBN #178181
> Email: bterrell@terrellmarshall.com
> 936 North 34th Street, Suite 300
> Seattle, Washington 98103
> Telephone: (206) 816-6603
> Facsimile: (206) 319-5450
>
> *Attorneys for Plaintiffs*