1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

DANIEL BERMAN,

      Plaintiff,

    vs.

FREEDOM FINANCIAL NETWORK, LLC, ET AL.,

      Defendants.

CASE NO. 18-cv-01060-YGR

ORDER DENYING MOTION TO COMPEL ARBITRATION

Re: Dkt. No. 224

In this action, plaintiffs Daniel Berman, Stephanie Hernandez, and Erica Russell on behalf of himself and a putative class, allege violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. section 227 *et seq.* by means of autodialed text messages and prerecorded voice calls as part of a telemarketing campaign by Lead Science, LLC (also known as "Drips") and Fluent, Inc. ("Fluent") promoting the services of Freedom Financial Network, LLC and Freedom Debt Relief, LLC (collectively "Freedom"). Fluent obtained leads for the text message campaign via its consumer-facing websites which offer users the possibility of rewards, discounts, product samples or entry into sweepstakes, which collect the users' data for use in Fluent's clients' marketing campaigns. The instant motion seeks to compel arbitration of the claims asserted by plaintiffs Stephanie Hernandez and Erica Russell. (Dkt. No. 224.)

Having carefully considered the papers submitted, the admissible evidence, and the pleadings in this action, and for the reasons set forth below, the Court **DENIES** the motion to compel arbitration.

United States District Court
Northern District of California

1       The Federal Arbitration Act (the "FAA") requires a district court to stay judicial

2    proceedings and compel arbitration of claims covered by a written and enforceable arbitration

3    agreement.  9 U.S.C. § 3.  A party may bring a motion in the district court to compel arbitration.

4    9 U.S.C. § 4.   The FAA reflects "both a 'liberal federal policy favoring arbitration' and the

5    'fundamental principle that arbitration is a matter of contract.'"  *AT&T Mobility LLC v.*

6    *Concepcion*, 563 U.S. 333, 339 (2011); *Mortensen v. Bresnan Commuc'ns, LLC*, 722 F.3d 1151,

7    1157 (9th Cir. 2013) ("The [FAA] . . . has been interpreted to embody "'a liberal federal policy

8    favoring arbitration.'").  The FAA broadly provides that an arbitration clause in a contract

9    involving a commercial transaction "shall be valid, irrevocable, and enforceable."  9 U.S.C. § 2.

10   Once a court is satisfied the parties agreed to arbitrate, it must promptly compel arbitration.  9

11   U.S.C. § 4.

12       In ruling on the motion, the Court's role is typically limited to determining whether: (i)

13   an agreement exists between the parties to arbitrate; (ii) the claims at issue fall within the scope

14   of the agreement; and (iii) the agreement is valid and enforceable.  *Lifescan, Inc. v. Premier*

15   *Diabetic Servs., Inc.*, 363 F.3d 1010, 1012 (9th Cir. 2004).  The party seeking to compel

16   arbitration bears the burden to establish these conditions.  "[I]f there is a genuine dispute of

17   material fact as to any of these queries, a [d]istrict [c]ourt should apply a 'standard similar to the

18   summary judgment standard of Fed.R.Civ.P. 56.'"  *Ackerberg v. Citicorp USA, Inc.*, 898 F.

19   Supp. 2d 1172, 1175 (N.D. Cal. 2012) (quoting *Concat LP v. Unilever, PLC,* 350 F.Supp.2d

20   796, 804 (N.D. Cal. 2004)); *see also Starke v. SquareTrade, Inc.*, No. 17-2474-CV, 2019 WL

21   149628, at *1 (2d Cir. Jan. 10, 2019) (same).  "If the parties contest the *existence* of an

22   arbitration agreement, the presumption in favor of arbitrability does not apply."  *Goldman,*

23   *Sachs & Co. v. City of Reno*, 747 F.3d 733, 742 (9th Cir. 2014).

24       The Ninth Circuit in *Nguyen* described contracts formed through internet websites as

25   generally taking on one of two forms: (1) "browsewrap" agreements whereby the website's

26   terms and conditions of use are provided via a hyperlink at the bottom of a webpage and assent

27   to the terms is assumed by continued use of the website; and (2) "clickwrap" agreements in

28   which users are presented with the terms of the agreement in question and must click on a

1    button or box to indicate they agree before proceeding.  *Nguyen v. Barnes & Noble Inc.*, 763

2    F.3d 1171, 1175–77 (9th Cir. 2014).

3          Often websites present some hybrid of the two, such as putting a link to the terms of the

4    agreement on the page, sometimes near a button the user must click to continue.  For instance, in

5    *Nguyen* the "Terms of Use" hyperlink was near the buttons a user would need to click to complete

6    an online purchase.  *Id*. at 1177.  In considering the conspicuousness of the notice there, the Court

7    noted details of the layout of the website in question:

8          • "the 'Terms of Use' link appears either directly below the relevant button a
             user must click on to proceed in the checkout process or just a few inches
9             away"
           • "the content of the webpage is compact enough that a user can view the link
10            without scrolling. . . [or] is close enough to the 'Proceed with Checkout'
              button that a user would have to bring the link within his field of vision in
11            order to complete his order;"  and
           • "checkout screens here contained "Terms of Use" hyperlinks in underlined,
12            color-contrasting text."

13   *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1178 (9th Cir. 2014).  Despite these elements

14   supporting conspicuousness, the Ninth Circuit nevertheless held that the website was insufficient

15   to bind the consumer because it contained no admonition to "review terms" or otherwise prompt

16   the user to take affirmative action to demonstrate assent to the terms at issue, including the

17   arbitration clause.  *Id*. at 1178-79 ("where a website makes its terms of use available via a

18   conspicuous hyperlink on every page of the website but otherwise provides no notice to users nor

19   prompts them to take any affirmative action to demonstrate assent, even close proximity of the

20   hyperlink to relevant buttons users must click on—without more—is insufficient to give rise to

21   constructive notice.")  *Id*.; *see also Sgouros v. TransUnion Corp.*, 817 F.3d 1029, 1033-34 (7th

22   Cir. 2016) (courts enforce contracts accepted by an electronic "click" on a website only if "the

23   layout and language of the site give the user reasonable notice that a click will manifest assent to

24   an agreement."); *Cullinane v. Uber Techs., Inc.*, 893 F.3d 53, 63–64 (1st Cir. 2018) (affirming

25   denial of motion to compel arbitration where "[e]ven though the hyperlink did possess some of the

26   characteristics that make a term conspicuous, the presence of other terms on the same screen with

27   a similar or larger size, typeface, and with more noticeable attributes diminished the hyperlink's

28

United States District Court
Northern District of California

3

1    capability to grab the user's attention.")[1]

2         In essence, "the onus [is] on website owners to put users on notice of the terms to which

3    they wish to bind consumers." *Nguyen*, 763 F.3d at 1178–79.  "Given the breadth of the range of

4    technological savvy of online purchasers, consumers cannot be expected to ferret out hyperlinks to

5    terms and conditions to which they have no reason to suspect they will be bound."  *Id*. at 1179.

6         Here, defendants have failed to meet their burden to establish that plaintiffs Hernandez and

7    Russell entered into an agreement for mandatory arbitration.  As a preliminary matter, an

8    evidentiary dispute exists as to whether the webpage screenshots offered by defendants in support

9    of their motion evidenced an agreement with either plaintiff.  Defendants based their motion on a

10   declaration of Mitenkumar Bhadania, a computer system engineer for Fluent, submitted January

11   22, 2020.  (Dkt. No. 224-1.)  Bhadania very generally explains how he "recreated" the set of

12   multiple webpages each plaintiff would have seen when they visited the websites based on a

13   unique visitor ID generated for each session, and "regenerated images" of the webpages.[2]  The

14   exhibits submitted by Bhadania are the equivalent of blank form contracts, with no clear indication

15   that these plaintiffs agreed to them.  (*Id*. at Exh. 1, 4.)  Fluent elected to omit other pages from the

16   multiple page "flow" for these website visits which might have demonstrated that these particular

17   users interacted with these particular pages.  (*Compare id. with* Bhadania Decl. submitted July 31,

18   2020, Dkt. No. 260-4, Exh. 1, 3 [including images of checked boxes, additional identifying

19   information, and a system timestamp image].)  Given that plaintiffs each submit declarations

20   disputing seeing elements of these pages, and defendants failed to provide complete information to

21

22        [1] Defendants cite to authorities that are neither binding nor on point here.  In *Garcia v. Enter. Holdings, Inc.*, 78 F. Supp. 3d 1125, 1131 (N.D. Cal. 2015), plaintiff alleged privacy
23   violations and the hyperlink to the "Privacy Policy" at issue was in the same text box as the "Okay" button for completing registration through Facebook, putting plaintiff on notice of the
24   Privacy Policy terms.  Likewise distinguishable is *Silverman v. Move Inc.*, No. 18-CV-05919-BLF, 2019 WL 2579343, at *11 (N.D. Cal. June 24, 2019), *appeal dismissed,* No. 19-16468, 2019
25   WL 5431367 (9th Cir. Oct. 18, 2019) in which the court found the *Nguyen* analysis an "ill fit" since the contract there was formed when plaintiff telephoned defendant to sign up for the
26   contract, spoke to an account executive about entering into a contract, thereafter receiving the terms of the contract in an emailed response.

27        [2]  Bhadania avers that Hernandez registered through a website called "getsamplesonlinenow.com" and Russell visited a website called "retailproductzone.com."
28   (Bhadania Decl. ¶¶ 8, 13.)

United States District Court
Northern District of California

4

1    authenticate the exhibits, the Court finds that there are material facts in dispute.[3]

2    Even if there were no dispute that the proffered webpages caused these plaintiffs' phone

3    numbers to be recorded as leads for Fluent, the webpages do not conspicuously indicate to users

4    that they are agreeing to the Terms and Conditions, including an agreement to mandatory

5    arbitration.  The webpages at Exhibits 1 and 3 to the Bhadania declaration do not include a

6    specific affirmative means of indicating consent to the Terms & Conditions or arbitration clause.[4]

7    (*See* Appendix A to this Order.)  Similar to the website at issue in *Nguyen*, while there is text

8    including a hyperlink to the terms of the agreement located near a button the user must click to

9    continue, there is no text that notifies users that they will be deemed to have agreed to these terms

10   "nor prompts them to take any affirmative action to demonstrate assent."  *Nguyen*, 763 F.3d at

11   1179.  *Nguyen*, 763 F.3d at 1178-79.  There is no tickbox or "I agree" button for the Terms &

12   Conditions.  As in *Nguyen*, the hyperlink to them is only located in proximity to button with which

13   the user must interact to continue.  The "This is correct, Continue!" and "Continue" buttons

14   plainly refer to the entry of other information on the page, not assent to the Terms & Conditions.

15   (*See* Appendix A ["Confirm your ZIP Code Below" and "Complete your shipping information to

16   continue towards your reward"].)  Although the user must interact with the page and click a button

17   to continue using it, that click is completely divorced from an expression of assent to the Terms &

18   Conditions or to mandatory arbitration.  Further, the phrase "I understand and agree to the <u>Terms

19   & Conditions</u> which includes mandatory arbitration and <u>Privacy Policy</u>" is formatted in black font

20   against a white background which is exceedingly small compared to the larger, more colorful and

21

22   _____

     [3] Plaintiffs object that these recreations differ from those websites' archives webpages,

23   submitted the declaration of Jodi Nuss Schexnaydre and screenshots of archived pages at or near
     the time when plaintiffs would have visited them.  However, those archived pages are inconclusive

24   on the question here since all parties acknowledge that website users who engage with the survey
     questions or registration steps see multiple webpages in the "flow" of their interaction with the

25   advertising campaigns, all of which are not replicated in the archive.

     [4] The Terms & Conditions include a choice-of-law provision stating that New York law

26   controls.  (*See* Bhadania Decl., Exh. 5 at Fluent_004063.)  "[W]hether the choice of law provision
     applies depends on whether the parties agreed to be bound by [the terms of use] in the first place."

27   *Nguyen*, 763 F.3d at 1175.  However, as in *Nguyen*, "we need not engage in this circular inquiry
     because both California and New York law dictate the same outcome" on this issue of contract

28   formation. *Id.*

United States District Court
Northern District of California

1    high-contrast fonts on the rest of the page, making it difficult to read on a large, high-resolution

2    monitor, much less a mobile device.  (*Id.*)  That the very small text providing the hyperlink to the

3    Terms & Conditions also uses the words "which includes mandatory arbitration" does not change

4    the analysis since the website does not prompt affirmative assent to this statement.[5]

5         For the foregoing reasons, the Court finds that defendants have failed to meet their burden

6    to establish assent to the mandatory arbitration agreement in their Terms & Conditions as to

7    plaintiffs Hernandez and Russell.  The motion to compel arbitration is **DENIED** on those grounds.

8         **IT IS SO ORDERED.**

9         This terminates Docket No. 224.

10   Dated: September 1, 2020

 **YVONNE GONZALEZ ROGERS**
 **UNITED STATES DISTRICT COURT JUDGE**

---

[5] The Court notes that at least one other court has denied a motion to compel arbitration by defendant Fluent, finding that a similarly designed Fluent website (also for retailproductzone.com) did not provide sufficient notice of or assent to the Terms & Conditions, including mandatory arbitration, to create an enforceable agreement.  *See Anand v. Heath*, 19-cv-0016-JJT, 2019 WL 2716213 (N.D. Ill. 2019).

**APPENDIX A**



1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California



8