Michael F. Ram, CSB #104805
Email: mram@forthepeople.com
MORGAN & MORGAN
101 Montgomery Street, Suite 1800
San Francisco, California 94104
Telephone: (415) 358-6913

Beth E. Terrell, CSB #178181
Email: bterrell@terrellmarshall.com
Jennifer Rust Murray, *Admitted Pro Hac Vice*
Email:  jmurray@terrellmarshall.com
TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103
Telephone: (206) 816-6603

[Additional counsel appear on signature page]

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
OAKLAND DIVISION

| | |
|---|---|
| DANIEL BERMAN, STEPHANIE HERNANDEZ, and ERICA RUSSELL,<br><br>Plaintiffs,<br><br>v.<br><br>FREEDOM FINANCIAL NETWORK, LLC, FREEDOM DEBT RELIEF, LLC, FLUENT, INC., and LEAD SCIENCE, LLC,<br><br>Defendants. | Case No. 4:18-cv-01060-YGR<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR AN AWARD OF ATTORNEYS' FEES, COSTS, AND SERVICE AWARD**<br><br><u>JURY TRIAL DEMAND</u><br><br>Honorable Yvonne Gonzalez Rogers<br><br>Date:     February 20, 2024<br>Time:     2:00 p.m.<br>Location:  Oakland Courthouse<br>           Courtroom 1 - 4th Floor |

1

## NOTICE OF MOTION AND MOTION

2 TO: CLERK OF THE COURT: and

3 TO: ALL PARTIES AND THEIR COUNSEL OF RECORD:

4

5      PLEASE TAKE NOTICE THAT on February 20, 2024, at 2:00 p.m., in Courtroom 1, 4th

6 Floor, of the Oakland Courthouse for the U.S. District Court for the Northern District of

7 California, 1301 Clay Street, Oakland, California, 94612, Plaintiffs will move for an award of

8 attorneys' fees and costs in the amount of $2,812,500. That amount is 25% of the $11,250,000

9 estimated value of the Settlement, including monetary relief in the amount of $9,750,000 and

10 injunctive relief with an estimated value of $1,500,000. The $2,812,500 fee request is 28.8% of

11 the $9,750,000 Settlement Fund. Plaintiffs also seek reimbursement of $200,108.85 in litigation

12 costs and $5,000 service awards to each of the named Plaintiffs.

13      This motion will be based on: this Notice of Motion, the Memorandum of Points and

14 Authorities, the Declarations of Beth Terrell, Edward Broderick, Matthew P. McCue, Anthony

15 Paronich, Jon Fougner, Matthew Wessler, the records and file in this action, and on such other

16 matter as may be presented before or at the hearing of the motion.

17

18

19

20

21

22

23

24

25

26

27

PLAINTIFFS' NOTICE OF MOTION AND
MOTION FOR AN AWARD OF ATTORNEYS'
FEES, COSTS, AND SERVICE AWARD
Case No. 4:18-cv-01060-YGR

# TABLE OF CONTENTS

**PAGE**

I. INTRODUCTION ........................................................................................... 1

II. ISSUE TO BE DECIDED ............................................................................. 3

III. STATEMENT OF FACTS ............................................................................ 3

    A. Defendants' aggressive litigation strategy required Plaintiffs and Class Counsel to vigorously litigate this case .................................................. 3

    B. Plaintiffs and Class Counsel negotiated a Settlement that provides significant monetary relief ...................................................................... 4

    C. Plaintiffs and Class Counsel negotiated a Settlement that provides real prospective relief that will protect Settlement Class members from receiving future calls ............................................................................... 5

IV. AUTHORITY AND ARGUMENT .................................................................. 6

    A. The percentage-of-the-fund method is the appropriate method for determining a reasonable attorneys' fee in this case ............................... 6

        1. A fee award of 25% of the total Settlement value will fairly compensate Class Counsel for their work on behalf of the Settlement Class ........................................................................... 9

            a. Class Counsel achieved an excellent Settlement for the class ...................................................................................... 10

            b. Class Counsel assumed a significant risk of no recovery ............. 11

            c. Class Counsel's skill and quality of work delivered valuable prospective relief in addition to the cash Settlement Fund ............................................................... 12

            d. Awards in similar cases show that the requested fee is reasonable ................................................................... 13

2.  A lodestar crosscheck confirms that the requested fee is reasonable .................................................................. 14

a.  Class Counsel's rates are consistent with rates in the community for similar work performed by attorneys of comparable skill, experience, and reputation............................... 15

b.  Class Counsel expended a reasonable number of hours litigating the case ......................................................... 16

c.  A multiplier is reasonable and appropriate. .................................. 17

B.  Class Counsel's litigation costs were necessarily and reasonably incurred ............................................................................. 19

C.  Plaintiffs request service awards of $5,000 ......................................... 19

V.  CONCLUSION.................................................................................. 21

# TABLE OF AUTHORITIES

**PAGE(S)**

## CASES

*700 Valencia St. LLC v. Farina Focaccia & Cucina Italiana, LLC*,
No. 15-CV-04931-JCS, 2018 WL 783930 (N.D. Cal. Feb. 8, 2018) ..........................15

*Adams v. AllianceOne Receivables Mgt., Inc.*,
No. 3:08-cv-00248 (S.D. Cal. 2012)...........................................................................10

*Beaver v. Tarsadia Hotels*,
No. 11-cv-01842-GPC-KSC, 2017 WL 4310707
(S.D. Cal. Sept. 28, 2017) ...............................................................................10, 18, 21

*Bebchick v. Wash. Metro. Area Transit Comm'n*,
805 F.2d 396 (D.C. Cir. 1986) ....................................................................................13

*Boeing Co. v. Van Gemert*,
444 U.S. 472 (1980)........................................................................................................6

*Boyd v. Bank of Am. Corp.*,
No. SACV 13-0561-DOC (JPRx), 2014 WL 6473804
(C.D. Cal. Nov. 18, 2014) ........................................................................................9, 14

*Chinitz v. Intero Real Estate Servs.*,
No. 18-cv-05623-BLF, 2022 WL 16528137 (N.D. Cal. Oct. 28, 2022).....................2, 8

*Contreras v. Performance Food Grp., Inc.*,
No. 4:14-CV-03380-PJH, 2016 WL 9138157 (N.D. Cal. May 4, 2016).......................21

*Couser v. Comenity Bank*,
125 F. Supp. 3d 1034 (S.D. Cal. 2015)..................................................................11, 18

*del Toro Lopez v. Uber Techs., Inc.*,
No. 17-cv-06255-YGR, 2018 WL 5982506 (N.D. Cal. Nov. 14, 2018) ...............20, 21

*Destefano v. Zynga, Inc.*,
No. 12-cv-04007-JSC, 2016 WL 537946 (N.D. Cal. Feb. 11, 2016) ....................11, 13

*Dickey v. Advanced Micro Devices, Inc.*,
No. 15-cv-04922-HSG, 2020 WL 870928 (N.D. Cal. Feb. 21, 2020) .........................15

*Edmonds v. United States*,
658 F. Supp. 1126 (D.S.C. 1987).................................................................................12

*Gergetz v. Telenav, Inc.*,
No. 16-cv-04261-BLF, 2018 WL 4691169 (N.D. Cal. Sep. 27, 2018) ...................9, 14

*Glass v. UBS Fin. Servs., Inc.*,
331 F. App'x 452 (9th Cir. 2009) .................................................................6, 14

*Gonzalez v. City of Maywood*,
729 F.3d 1196 (9th Cir. 2013) ...................................................................15

*Hanlon v. Chrysler Corp.*,
150 F.3d 1011 (9th Cir. 1998) ....................................................................8

*Hefler v. Wells Fargo & Co.*,
No. 16-cv-05479-JST, 2018 WL 6619983 (N.D. Cal. Dec. 18, 2018) .................14, 15

*Hopkins v. Stryker Sales Corp.*,
No. 11-CV-02786-LHK, 2013 WL 496358 (N.D. Cal. Feb. 6, 2013).........................17

*In re Apple Inc. Device Performance Litig.*,
No. 5:18-md-02827-EJD, 2021 WL 1022866 (N.D. Cal. Mar. 17, 2021)...................14

*In re Bluetooth Headset Prods. Liab. Litig.*,
654 F.3d 935 (9th Cir. 2011) .........................................................7, 8, 9, 14

*In re Coordinated Pretrial Proceedings in Petroleum Prods. Antitrust Litig.*,
109 F.3d 602 (9th Cir. 1997) ......................................................................7

*In re Heritage Bond Litig.*,
No. 02-ML-1475 DT, et al., 2005 WL 1594403 (C.D. Cal. June 10, 2005)...............11

*In re Immune Response Sec. Litig.*,
497 F. Supp. 2d 1166 (S.D. Cal. 2007).........................................................19

*In re Mego Fin. Corp. Sec. Litig.*,
213 F.3d 454 (9th Cir. 2000) ......................................................................9

*In re Nat'l Collegiate Athletic Ass'n*,
No. 4:14-md-2541-CW, 2017 WL 6040065 (N.D. Cal. Dec. 6, 2017) .......................21

*In re Omnivision Techs., Inc.*,
559 F. Supp. 2d 1036 (N.D. Cal. 2008) ..............................................7, 9, 12

*In re Online DVD-Rental Antitrust Litig.*,
779 F.3d 934 (9th Cir. 2015) ...............................................................11, 20

*In re Pacific Enters. Sec. Litig.*,
47 F.3d 373 (9th Cir. 1995) ..................................................................9, 13

*In re Portfolio Recovery Assocs., LLC, Tel. Consumer Prot. Act Litig.*,
   No. 11MD02295 JAH - BGS (S.D. Cal. 2017) ............................................................10

*In re Wash. Pub. Power Supply Sys. Sec. Litig.*,
   19 F.3d 1291 (9th Cir. 1994) ......................................................................................6, 11

*In re Yahoo! Inc. Customer Data Sec. Breach Litig.*,
   No. 16-MD-02752-LHK, 2020 WL 4212811 (N.D. Cal. July 22, 2020) ....................15

*In re Yahoo Mail Litig.*,
   No. 13-CV-4980-LHK, 2016 WL 4474612 (N.D. Cal. Aug. 25, 2016)......................20

*Jenson v. First Tr. Corp.*,
   No. CV 05-3124 ABC, 2008 WL 11338161 (C.D. Cal. June 9, 2008) ......................11

*Kerr v. Screen Extras Guild, Inc.*,
   526 F.2d 67 (9th Cir. 1975) ...................................................................................18, 19

*Knight v. Red Door Salons, Inc.*,
   No. 08-01520, 2009 WL 248367 (N.D. Cal. Feb. 2, 2009) .......................................13

*Kramer v. Autobytel, Inc., et al.*,
   No. 10-cv-2722 (N.D. Cal. 2012) ..............................................................................11

*Lofton v. Verizon Wireless (VAW) LLC*,
   No. C 13-05665 YGR, 2016 WL 7985253 (N.D. Cal. May 27, 2016)............12, 13, 21

*Malta v. Fed. Home Loan Mortg. Corp.*,
   10–CV–1290–BEN (S.D. Cal.)....................................................................................10

*Marshall v. Northrop Grumman Corp.*,
   No. 16-CV-6794 AB (JCx), 2020 WL 5668935 (C.D. Cal. Sep. 18, 2020).............9, 14

*McCauley v. Ford Motor Co.*,
   264 F.3d 952 (9th Cir. 2001) .....................................................................................2, 8

*Moreno v. City of Sacramento*,
   534 F.3d 1106 (9th Cir. 2008) ....................................................................................14

*Nitsch v. DreamWorks Animation SKG Inc.*,
   No. 14-CV-04062-LHK, 2017 WL 2423161 (N.D. Cal. June 5, 2017) .....................15

*Pan v. Qualcomm Inc.*,
   No. 16-CV-01885-JLS-DHB, 2017 WL 3252212 (S.D. Cal. July 31, 2017).............18

*Rodriguez v. W. Publishing*,
   563 F.3d 948 (9th Cir. 2009) ......................................................................................20

*Rose v. Bank of Am. Corp.*,
    No. 5:11–CV–02390–EJD; 5:12–CV–04009–EJD,
    2014 WL 4273358 (N.D. Cal. Aug. 29, 2014) ............................................................ 11

*Smith v. CRST Van Expedited, Inc.*,
    No. 10-CV-1116- IEG WMC, 2013 WL 163293
    (S.D. Cal. Jan. 14, 2013) ...................................................................................... 18, 20

*Staton v. Boeing Co.*,
    327 F.3d 938 (9th Cir. 2003) ............................................................. 6, 19, 20

*Steiner v. Am. Broad Co., Inc.*,
    248 F. App'x 780 (9th Cir. 2007) ...................................................................... 18

*Steinfeld v. Discover Fin. Servs.*,
    No. 3:12-cv-01118-JSW, 2014 WL 1309352 (N.D. Cal. Mar. 10, 2014) ................... 10

*Superior Consulting Servs., Inc. v. Steeves-Kiss*,
    No. 17-cv-06059-EMC, 2018 WL 2183295 (N.D. Cal. May 11, 2018) ..................... 15

*Van Vranken v. Atl. Richfield Co.*,
    901 F. Supp. 294 (N.D. Cal. 1995) .......................................................... 18

*Vincent v. Hughes Air W.*,
    557 F.2d 759 (9th Cir. 1977) ............................................................ 19

*Vizcaino v. Microsoft Corp.*,
    290 F.3d 1043 (9th Cir. 2002) .................................................................. *passim*

*Welch v. Metro. Life Ins. Co.*,
    480 F.3d 942 (9th Cir. 2007) ....................................................................... 16

*Zamora v. Lyft, Inc.*,
    No. 3:16-cv-02558-VC, 2018 WL 4657308 (N.D. Cal. Sept. 26, 2018) .............. 13, 15

**STATUTES**

47 U.S.C. § 227 ............................................................................................................. 1

**RULES**

Fed. R. Civ. P. 12(b)(1) .............................................................................................. 3

## OTHER AUTHORITIES

John Leubsdorf, *The Contingency Factor in Attorney Fee Awards*,
    90 Yale L.J. 473, 480 (1981) ........................................................................... 17

Richard A. Posner, Economic Analysis of Law 783 (8th ed. 2011) ........................................ 17

William B. Rubenstein, 5 Newberg on Class Actions § 15:91
    (5th ed. Nov. 2018 update) ............................................................................. 17

William B. Rubenstein, *Why the Percentage Method?*,
    2 Class Action Attorney Fee Digest 93 (March 2008) .................................................. 7

# I.   INTRODUCTION

This TCPA class action arose because Fluent, Inc. and Lead Science, LLC made prerecorded telephone calls to the cell phones of Plaintiffs and approximately 675,377 class members in order to sell Freedom Financial Network, LLC and Freedom Debt Relief LLC's "debt relief" services and did so without first obtaining call recipients' prior express written consent to place those calls. Plaintiffs allege that Defendants' calls violated the Telephone Consumer Protection Act (47 U.S.C. § 227) ("TCPA").

The case settled after nearly five years of fierce litigation. Defendants lodged a vigorous defense, requiring Plaintiffs and Class Counsel to aggressively prosecute their claims. Defendants resisted producing the information Plaintiffs needed, requiring Plaintiffs to (1) brief, argue, or otherwise resolve twelve discovery motions, (2) review the over 10,000 pages of documents that Defendants eventually produced, (3) file four amended complaints, (4) oppose two motions to dismiss and a motion for summary judgment, (5) file three class certification motions, and (6) oppose two motions to compel arbitration. Defendants appealed the Court's Order denying Defendants' second motion to compel arbitration, which Class Counsel successfully opposed before the Ninth Circuit.

Class Counsel have dedicated over 3,865 hours of attorney and paralegal time over the course of five years on a contingency basis with no guarantee of payment. Class Counsel also have paid over $200,108 out-of-pocket for expenses that include, among other things, the retention of three experts. At all times, the Class Representatives have remained informed and involved in the matter, providing valuable insight into the facts and circumstances that gave rise to their claims.

The Settlement provides significant monetary and injunctive relief for Settlement Class Members. Defendants must pay $9,750,000 into a non-reversionary common fund and Fluent must make real changes to its business practices. Fluent has agreed it will not initiate, cause others to initiate, or assist others in initiating any outbound telephone call that plays or delivers a prerecorded message. Fluent has also agreed to not rely on records that it purports represent

Settlement Class Members' consent to initiate future calls. Perhaps even more significantly, Fluent has agreed it will implement procedures designed to identify numbers associated with invalid names or addresses and processes to ensure that those invalid leads are not called. Fluent has represented it will cost the company $1.5 million to implement these procedures. ECF No. 350 ¶ 3 (Terrell Decl.). This prospective relief provides value to Plaintiffs and every Settlement Class member.

Class Counsel request a fee award of $2,812,500, which is 25% of the Settlement's $11,250,000 estimated value, including $9,750,000 in monetary relief and $1,500,000 in prospective relief. To address a concern the Court raised at preliminary approval, Class Counsel's requested $2,812,500 in fees is less than the $3,250,000 they originally informed the Court they might seek. That is because Class Counsel modified their approach to monetizing the prospective relief so that it is based on the amount it will cost Fluent to implement the practice changes ($1,500,000) rather than on the formula adopted by Judge Labson Freeman in *Chinitz v. Intero Real Estate Servs.*, No. 18-cv-05623-BLF, 2022 WL 16528137 (N.D. Cal. Oct. 28, 2022). Plaintiff's revised methodology has been approved by the Ninth Circuit as a proper measure for valuing prospective relief. *See McCauley v. Ford Motor Co.*, 264 F.3d 952, 958 (9th Cir. 2001). And a lodestar crosscheck confirms the reasonableness of Class Counsel's revised request: $2,812,500 reflects a very modest 1.07 multiplier on their $2,632,824.50 lodestar, which is well in line with other decisions in this Circuit. That multiplier will decrease because Class Counsel must dedicate additional resources to seeing the settlement through to final judgment.

Class Counsel also respectfully request reimbursement of $200,108.85 in litigation costs, and request that the Court approve service awards to each Plaintiff in the amount of $5,000 for their work on behalf of the Settlement Class. Plaintiffs have actively participated in this action. All responded to written discovery requests, sat for a deposition, and assisted in counsel's investigation and settlement discussions. Service awards of $5,000 each for their efforts are reasonable and consistent with Ninth Circuit precedent.

For all these reasons, Plaintiffs' motion should be granted.

## II.      ISSUE TO BE DECIDED

Whether the requested attorneys' fees, costs, and service awards are reasonable and should be awarded.

## III.      STATEMENT OF FACTS

**A.      Defendants' aggressive litigation strategy required Plaintiffs and Class Counsel to vigorously litigate this case.**

Plaintiff Daniel Berman filed this case over five-and-one-half years ago on February 19, 2018. Defendants aggressively defended the suit, requiring Plaintiffs and their counsel to dedicate substantial time and resources to the matter. Plaintiffs successfully opposed a motion to compel Plaintiff Berman to arbitrate his claim, filed four amended complaints, and successfully opposed a motion to dismiss by all Defendants pursuant to Fed. R. Civ. P. 12(b)(1) and/or to strike class allegations as well as a separate motion to dismiss filed by Lead Science, LLC. ECFs 29, 30, 90-4, 94. 220, 292. Plaintiffs additionally briefed and argued or otherwise resolved twelve discovery motions. ECF Nos. 73, 79, 118, 124, 127, 133, 136, 158, 190, 225, 231, 237, 295, 307.

Defendants ultimately produced thousands of documents that Class Counsel reviewed and analyzed. Terrell Decl. ¶ 4. Class Counsel also retained three expert witnesses to opine on the design and use of Defendants' websites, where Defendants purportedly obtained consent, and to analyze Defendants' voluminous calling and texting records, and files they alleged were evidence of consent. Terrell Decl. ¶ 5. Plaintiffs took seven depositions of Defendants' managers and Defendants deposed the three Plaintiffs. Terrell Decl. ¶ 4.

Plaintiffs successfully opposed Defendants' motion for summary judgment and filed three motions for class certification. ECF Nos. 139, 198, 255, 298. Plaintiffs Hernandez and Russell also defeated a second motion to compel arbitration by Defendants. ECF No. 266. Defendants appealed this Court's Order denying that motion to compel arbitration, which Class Counsel successfully opposed before the Ninth Circuit. ECF No. 286.

1    The parties had completed briefing on Plaintiffs' second renewed motion for class

2    certification when they started settlement negotiations. Terrell Decl. ¶ 10. The parties mediated

3    with experienced JAMS mediator Robert A. Meyer in Los Angeles on December 13, 2022. *Id.*

4    Although the matter did not settle during that mediation, the parties continued to negotiate over

5    the course of the next month. *Id.* The parties reached agreement on material settlement terms on

6    February 3, 2023, just days before oral argument on Plaintiffs' motion for class certification was

7    scheduled to take place. *Id.*

8    **B.      Plaintiffs and Class Counsel negotiated a Settlement that provides significant**
9    **monetary relief.**

10   The Settlement requires Defendants to pay $9,750,000 into a "Settlement Fund." ECF

11   No. 350-1 (Settlement Agreement) §§ 1.32; 2.1. Every Settlement Class member who submits a

12   claim will receive a cash payment after settlement expenses are deducted. *Id.* § 2.3. All

13   Settlement Class members received a prerecorded call from Lead Science and Fluent selling

14   Freedom's services and will receive at least one share of the settlement. Some Settlement Class

15   members also received two or more calls within a twelve-month period after their telephone

16   number was on the National Do-Not-Call Registry. *Id.* § 2.3.b. Those Settlement Class members

17   will receive two settlement shares because they arguably could obtain a larger statutory damages

18   award at trial. *Id.* Class Counsel conservatively estimates that each claimant will receive between

19   $60 and $170 depending on the number of claims that are submitted. ECF No. 355-2.

20   The Settlement Fund is non-reversionary. If any amounts remain in the Settlement Fund

21   after the deadline for cashing checks, the Settlement Administrator will make a second

22   distribution of funds if it is administratively feasible to do so. *Id.* (Settlement Agreement) §

23   2.3(d). If any amounts remain in the Settlement Fund after distribution is complete, including

24   any second distribution, the parties request that the Court direct those funds to be disbursed *cy*

25   *pres* to the Public Justice Foundation (Public Justice). *Id.* Public Justice is a non-profit

26   organization dedicated to protecting consumers, including consumers harassed by unlawful

27   telemarketing calls. Terrell Decl. ¶ 12.

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR AN AWARD OF ATTORNEYS'
FEES, COSTS, AND SERVICE AWARD - 4
Case No. 4:18-cv-01060-YGR

**C.     Plaintiffs and Class Counsel negotiated a Settlement that provides real prospective relief that will protect Settlement Class members from receiving future calls.**

The Settlement requires Fluent to make substantial practice changes that will have real value to Settlement Class members going forward. Those practice changes include the following:

Record retention. Defendants' central defense to this case was that Fluent obtained prior express written consent from Plaintiffs and Settlement Class members to send them prerecorded voice calls selling Freedom Financial debt consolidation services. ECF No. 260 at 16-18. But Fluent did not retain server logs that would substantiate this consent, instead asserting that it could "recreate" the consent after the fact. ECF No. 152-3 at 2-4. The parties disputed whether these "recreations" were reliable. ECF No. 171 No. at 9-10. As part of the Settlement, Fluent has agreed to retain evidence of telemarketing consent, including data collected from server logs with information sufficient to identify the date, time, and name of the person consenting. *See* ECF 352 (Settlement Agreement) § 2.4.1. Fluent also will require affiliated entities to maintain and provide Fluent with evidence of consent and with any call records. *Id.* § 2.4.1, 2.4.2.

Consent authentication. Plaintiffs' expert analyzed consent records that Fluent produced during the litigation and determined that Fluent relied on consent data that was littered with nonsensical names and invalid street addresses like "Ddmdkdmdkdkdmdk." ECF No. 298 at 4-7. Plaintiff Berman's purported consent record was associated with the fictitious name "Dunk loka." *Id.* at 5. As part of the Settlement, Fluent has agreed to implement procedures designed to identify numbers associated with invalid names or addresses and process to ensure that those numbers are not called." *See id.* (Settlement Agreement) § 2.4.4. This is valuable relief that will protect consumers from receiving calls based on consent information that they never provided.

Bar on prerecorded calls. Plaintiffs and Settlement Class members received prerecorded calls from Fluent. Plaintiffs allege that these calls violate the TCPA. Fluent has agreed that it "will not initiate, cause others to initiate, or assist others in initiating any outbound telephone call that plays or delivers a prerecorded message." *Id.* (Settlement Agreement) § 2.4.5. Again, Fluent's agreement will prevent calls to Plaintiffs and Settlement Class members in the future.

1    Notice and confirmatory opt in. Plaintiffs have alleged that Fluent used consent forms

2    that seek consent for telemarketing calls selling a large number of businesses' services. Fluent

3    has agreed that not only will it not send prerecorded messages or texts to Plaintiffs and

4    Settlement Class members about Freedom Financial's services, but Fluent also will not send text

5    messages or prerecorded messages selling any services based on that consent. *Id.* (Settlement

6    Agreement) § 2.4.6. This provision should prevent any prerecorded messages and text messages

7    to Plaintiffs and Settlement Class members in the future.

8    Compliance. Fluent has agreed to review its consent language and ensure it complies with

9    the TCPA, including by consulting with internal and external counsel. This agreement provides

10   further insurance that Fluent will comply with the law. *Id.* (Settlement Agreement) § 2.4.7.

## IV.    AUTHORITY AND ARGUMENT

11

12   **A.    The percentage-of-the-fund method is the appropriate method for determining a
     reasonable attorneys' fee in this case.**

13

14   The common fund doctrine is an equitable exception to the American rule that litigants

15   must bear their own attorneys' fees. *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). It is

16   well settled that "a lawyer who recovers a common fund for the benefit of persons other than

17   himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Id.* The

18   "common fund" doctrine "rests on the perception that persons who obtain the benefit of a lawsuit

19   without contributing to its cost are unjustly enriched at the successful litigant's expense." *Id.* A

20   court with jurisdiction over the fund can "prevent this inequity by assessing attorney's fees

21   against the entire fund, thus spreading fees proportionately among those benefited by the suit."

22   *Id.* "Ninth Circuit jurisprudence … permits the application of common fund principles where—

23   as in the present case—the class of beneficiaries is identifiable and the benefits can be traced in

24   order to allocate the fees to the class." *Glass v. UBS Fin. Servs., Inc.*, 331 F. App'x 452, 457 (9th

25   Cir. 2009). In such cases, "the common fund doctrine ensures that each member of the winning

26   party contributes proportionately to the payment of attorneys' fees." *Staton v. Boeing Co.*, 327

27   F.3d 938, 967 (9th Cir. 2003); *see also In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d

1291, 1300 (9th Cir. 1994) ("those who benefit in the creation of a fund should share the wealth with the lawyers whose skill and effort helped create it").

Courts in the Ninth Circuit have discretion to award attorneys' fees using either the percentage of the fund method or the lodestar method when settlement of a class action creates a common fund. *Vizcaino v. Microsoft Corp.,* 290 F.3d 1043, 1047 (9th Cir. 2002). The method a district court chooses to use, and its application of that method, must achieve a reasonable result. *See In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011) ("Though courts have discretion to choose which calculation method they use, their discretion must be exercised so as to achieve a reasonable result."). As the Ninth Circuit has instructed, "[r]easonableness is the goal, and mechanical or formulaic application of either method, where it yields an unreasonable result, can be an abuse of discretion." *In re Coordinated Pretrial Proceedings in Petroleum Prods. Antitrust Litig.*, 109 F.3d 602, 607 (9th Cir. 1997).

The Ninth Circuit and district courts in this Circuit have recognized that the percentage-of-the-fund method is the appropriate method for calculating fees when counsel's effort has created a common fund. *See, e.g., In re Bluetooth*, 654 F.3d at 942 ("Because the benefit to the class is easily quantified in common-fund settlements, we have allowed courts to award attorneys a percentage of the common fund in lieu of the often more time-consuming task of calculating the lodestar."); *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1046 (N.D. Cal. 2008) (observing that "use of the percentage method in common fund cases appears to be dominant" and discussing its advantages over the lodestar method); *see also* William B. Rubenstein, *Why the Percentage Method?*, 2 Class Action Attorney Fee Digest 93 (March 2008) ("[U]nder the percentage method, counsel has an interest in generating as large a recovery for the class as possible, as her fee increases with the class's take, while keeping her hours to the minimum necessary to do the job effectively.").[1]

---

[1] Available at http://www.billrubenstein.com/Downloads/Rubenstein%20_Mar08_column.pdf

1    The lodestar method, by contrast, is typically used when the value of the class's recovery

2  is difficult to determine. *See In re Bluetooth*, 654 F.3d at 941 (courts use the lodestar method

3  when the relief is not easily monetized); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir.

4  1998) (noting that courts use the lodestar method when "there is no way to gauge the net value of

5  the settlement or any percentage thereof"). Courts also use the lodestar method to determine a

6  reasonable fee in cases involving a fee-shifting statute ("such as federal civil rights, securities,

7  antitrust, copyright, and patent acts"). *In re Bluetooth*, 654 F.3d at 941. The lodestar method has

8  been criticized as encouraging lawyers to prolong the litigation and discourage early settlements

9  that would benefit the class. *See Vizcaino*, 290 F.3d at 1050 n.5 ("[I]t is widely recognized that

10  the lodestar method creates incentives for counsel to expend more hours than may be necessary

11  on litigating a case so as to recover a reasonable fee, since the lodestar method does not reward

12  early settlement").

13    Both methods support settlement here. The percentage-of-the-fund method is an

14  appropriate method for determining a reasonable fee in this case because the benefit to the

15  Settlement Class can be quantified. When calculating the total value of a settlement, courts in the

16  Ninth Circuit consider not only the "total amount defendants were willing to spend to settle the

17  case" but also the "total benefits being made available to class members," including injunctive

18  relief. *Chinitz*, 2022 WL 16528137, at *6. Here, Class Counsel's efforts resulted in settlement

19  relief of approximately $11,250,000, comprised of a non-reversionary $9,750,000 Settlement

20  Fund and prospective relief valued at $1,500,000. ECF No. 350 (Terrell Decl.) ¶ 3. Class

21  Counsel initially valued Fluent's changed business practices at twice this amount but have

22  included the lower value so that it is based on the amount it will cost Fluent to implement the

23  practice changes ($1,500,000), a methodology that has been approved by the Ninth Circuit as a

24  proper measure for valuing prospective relief. *See McCauley*, 264 F.3d at 958.

25    In addition, all of the cash in the Settlement Fund will be distributed to Settlement Class

26  Members who submitted claims for cash after settlement expenses, including administration

27  expenses, Court-approved fees and costs, and Court-approved service awards, are deducted.

1    Using the percentage method in this case will recognize Class Counsel's efficiency and their

2    efforts to achieve the highest possible recovery for the Settlement Class.

3        The lodestar method also establishes the reasonableness of Class Counsel's requested fee

4    because the requested $2,812,500 reflects a very modest 1.07 multiplier on Class Counsel's

5    $2,632,824.50 lodestar.

6        1.      A fee award of 25% of the total Settlement value will fairly compensate Class

7                Counsel for their work on behalf of the Settlement Class.

8        The Ninth Circuit has held that 25% of the gross settlement amount is the benchmark for

9    attorneys' fees awarded under the percentage-of-the-fund method. *Vizcaino*, 290 F.3d at 1047;

10   *see also In re Bluetooth*, 654 F.3d at 942 ("[C]ourts typically calculate 25% of the fund as the

11   'benchmark' for a reasonable fee award, providing adequate explanation in the record of any

12   'special circumstances' justifying a departure."). While the 25% benchmark is the starting point

13   for the analysis, "in most common fund cases, the award exceeds [the] benchmark." *In re*

14   *Omnivision Tech., Inc*., 559 F. Supp. 2d at 1047 (citations omitted).

15       District courts in this circuit have adjusted the 25% benchmark upward in circumstances

16   such as this where an excellent result was achieved and based on counsel's expertise and

17   significant investment of time and resources. *See In re Mego Fin. Corp. Sec. Litig*., 213 F.3d

18   454, 460 (9th Cir. 2000) (affirming an award of one-third of total recovery); *In re Pacific Enters.*

19   *Sec. Litig*., 47 F.3d 373, 379 (9th Cir. 1995) (noting 33% award "for attorneys' fees is justified

20   because of the complexity of the issues and the risks"); *Marshall v. Northrop Grumman Corp.*,

21   No. 16-CV-6794 AB (JCx), 2020 WL 5668935, at *1 (C.D. Cal. Sep. 18, 2020) (awarding class

22   counsel an attorney fee of one third the settlement fund where an "exceptional result" was

23   achieved); *Boyd v. Bank of Am. Corp.*, No. SACV 13-0561-DOC (JPRx), 2014 WL 6473804, at

24   *10  (C.D. Cal. Nov. 18, 2014) ("skill and work of counsel merits an upward adjustment from

25   the [25%] benchmark"); *Gergetz v. Telenav, Inc.*, No. 16-cv-04261-BLF, 2018 WL 4691169, at

26   *7 (N.D. Cal. Sep. 27, 2018) (approving fees of 30% of the settlement fund in a TCPA case

27   which settled after briefing of and prior to ruling on defendant's motion to dismiss and motion to

stay); *Beaver v. Tarsadia Hotels*, No. 11-cv-01842-GPC-KSC, 2017 WL 4310707, at *17 (S.D. Cal. Sept. 28, 2017) (approving 33% fee award).

The percentage may be adjusted up or down based on the court's consideration of "all of the circumstances of the case" including whether the Settlement provides injunctive relief. *Vizcaino*, 290 F.3d at 1048-1049. The relevant circumstances include (1) the results achieved for the class, (2) the risk counsel assumed, (3) the skill required and the quality of the work, (4) the contingent nature of the fee, (5) whether the fee is above or below the market rate, and (6) awards in similar cases. *Id.* at 1048-50. Consideration of the relevant circumstances supports a fee award of $2,812,500, which is 25% of the total Settlement value, including monetary and injunctive relief.

    a.    *Class Counsel achieved an excellent Settlement for the class.*

The $11,250,000 Settlement value amount reflects the risks Plaintiffs faced in establishing that Defendants are liable under the TCPA, and overcoming Defendants' contention that they had consent to call Settlement Class Members, an impediment to class certification. A loss on either issue could have prevented the Settlement Class from recovering anything. Under the Settlement, Settlement Class Members will receive a cash payment that is estimated to be between $60 and $170. ECF 355-4 at 1. Just as importantly, Plaintiffs and Settlement Class members are the recipients of real prospective relief that are designed to prevent Fluent and its associates from sending them telemarketing robocalls ever again.

The Settlement's cash component alone is in line with many other TCPA settlements in this Circuit, including cases approved by district courts in California. *See Steinfeld v. Discover Fin. Servs.*, No. C 12-01118, ECF No. 96 at ¶ 6 (N.D. Cal. Mar. 10, 2014) (claimants received $46.98); *In re Portfolio Recovery Assocs., LLC, Tel. Consumer Prot. Act Litig.*, No. 11MD02295 JAH - BGS, ECF 494 & ECF 426-1 at 24 (S.D. Cal. 2017) (approving $30-per-claimant settlement); *Adams v. AllianceOne Receivables Mgt., Inc.*, No. 3:08-cv-00248, ECF Nos. 137, 116 at 7, & 109 at 10–11 (S.D. Cal. 2012) (approving $40-per-claimant settlement); *Malta v. Fed. Home Loan Mortg. Corp.*, 10–CV–1290–BEN (S.D. Cal.) (after final approval, each of the

120,547 claimants that made a timely and valid claim as well as the 103 claimants that made a late claim received the sum of $84.82); *Kramer v. Autobytel, Inc., et al.*, No. 10-cv-2722, ECF No. 148 (N.D. Cal. 2012) (approving TCPA settlement providing for a cash payment of $100 to each class member); *Couser v. Comenity Bank,* 125 F. Supp. 3d 1034, 1043 (S.D. Cal. 2015) (approximately $13.75 per claimant); *Rose v. Bank of Am. Corp.*, No. 5:11–CV–02390–EJD; 5:12–CV–04009–EJD, 2014 WL 4273358, at *10 (N.D. Cal. Aug. 29, 2014) (approving $20.00 to $40.00 per claimant). This factor weighs in favor of Class Counsel's fee request.

         *b.*     *Class Counsel assumed a significant risk of no recovery.*

Class Counsel's fee request also reflects that the case was risky and handled on a contingency basis. *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 954-55 (9th Cir. 2015); *Vizcaino*, 290 F.3d at 1048; *see also Jenson v. First Tr. Corp.*, No. CV 05-3124 ABC, 2008 WL 11338161, at *12 (C.D. Cal. June 9, 2008) ("Uncertainty that *any* recovery ultimately would be obtained is a highly relevant consideration. Indeed, the risks assumed by Counsel, particularly the risk of non-payment or reimbursement of expenses, is important to determining a proper fee award." (internal citation omitted)).

Class Counsel represented Plaintiffs and the Settlement Class entirely on a contingent basis. *see also* Terrell Decl. ¶ 31; Broderick Decl. ¶ 3; McCue Decl. ¶ 5; Paronich Decl. ¶ 4; Wessler Decl. ¶ 12. Courts recognize that "[w]ith respect to the contingent nature of the litigation … courts tend to find above-market-value fee awards more appropriate in this context given the need to encourage counsel to take on contingency-fee cases for plaintiffs who otherwise could not afford to pay hourly fees." *Destefano v. Zynga, Inc.,* No. 12-cv-04007-JSC, 2016 WL 537946, at *18 (N.D. Cal. Feb. 11, 2016) (citing *In re Wash. Public Power*, 19 F.3d at 1299). "This is especially true where, as here, class counsel has significant experience in the particular type of litigation at issue; indeed, in such contexts, courts have awarded an even higher 33 percent fee award." *Id.* (citing *In re Heritage Bond Litig.*, No. 02-ML-1475 DT, et al., 2005 WL 1594403, at *19 (C.D. Cal. June 10, 2005)).

1    Moreover, Class Counsel faced the very real risk they would not recover any fees and

2    costs. *Lofton v. Verizon Wireless (VAW) LLC*, No. C 13-05665 YGR, 2016 WL 7985253, at *1

3    (N.D. Cal. May 27, 2016) (awarding fees above the benchmark where, absent settlement, "there

4    would remain a significant risk that the Settlement Class may have recovered less or

5    nothing…"). "The risk that further litigation might result in Plaintiffs not recovering at all,

6    particularly a case involving complicated legal issues, is a significant factor in the award of

7    fees." *In re Omnivision Techs., Inc*., 559 F. Supp. 2d at 1046–47. While Plaintiffs believed they

8    have a case for liability, success on this score was not guaranteed. Defendants deny that they can

9    be held liable for the calls it made to Settlement Class Members because, they contend,

10   Settlement Class Members consented to be contacted on their cell phones by providing their

11   numbers to Fluent via Fluent operated websites. ECF No. 260 at 16-18. Although consent is an

12   affirmative defense for which Defendants carry the burden of proof, if the trier of fact disagreed

13   with Plaintiffs on this issue, the Settlement Class would receive nothing. Evidence of consent

14   could also defeat Plaintiffs' motion to certify under Rule 23(b)(3).

15   These risks weigh in favor of Class Counsel's fee request.

16            c.     *Class Counsel's skill and quality of work delivered valuable prospective

17   relief in addition to the cash Settlement Fund.*

18   "The 'prosecution and management of a complex national class action requires unique

19   legal skills and abilities.'" *Omnivision*, 559 F. Supp. 2d at 1047 (quoting *Edmonds v. United

20   States*, 658 F. Supp. 1126, 1137 (D.S.C. 1987)). Class Counsel were able to litigate this case

21   efficiently because of their experience in litigating TCPA claims in class action cases. Class

22   Counsel have litigated dozens of TCPA cases, achieving a successful resolution in many. *See

23   Terrell Decl. ¶¶ 14-16; Broderick Decl. ¶¶ 1, 12; McCue Decl. ¶¶ 1, 13; Paronich Decl. ¶¶ 1, 10;

24   Fougner Decl. ¶¶ 16-18. Class Counsel relied on their depth of experience with TCPA claims

25   and class action litigation to conduct vigorous discovery, brief class certification and summary

26   judgment issues, and negotiate a settlement that capitalized on the claims' strengths while taking

27   into account the risks of continued litigation. *Id*. Class Counsel also retained experienced

1    appellate counsel—Matthew Wessler—who successfully handled the Ninth Circuit oral

2    argument, providing a essential work for the class. Wessler Decl. ¶¶ 2-10.

3         Class Counsel's skill delivered not only a substantial cash component to the Settlement,

4    but also significant practice changes by Fluent, including forgoing the use of prerecorded

5    messages, forgoing further calls and texts to Settlement Class Members relying on the purported

6    consent in this case, changes to Fluent's consent practices, including authenticating such consent,

7    and changes to Fluent's record retention policies. *See* ECF No. 355-1 at § 2.4. That prospective

8    relief benefits the public and is the type of non-monetary benefit courts find relevant in analyzing

9    the reasonableness of a fee request. *Vizcaino*, 290 F.3d at 1049 (prospective practice changes are

10   the sort of "nonmonetary benefits conferred by the litigation" that support a requested fee); *In re*

11   *Pacific Enters. Sec. Litig.,* 47 F.3d at 379 (considering "nonmonetary benefits" in determining a

12   reasonable fee); *Bebchick v. Wash. Metro. Area Transit Comm'n*, 805 F.2d 396, 408 (D.C. Cir.

13   1986) (allowing upward adjustment to lodestar to reflect benefits to public from litigation).

14        Class Counsel achieved this relief despite the fact that they were up against high qualify

15   counsel for the defense. Class Counsel's ability to negotiate a favorable settlement despite the

16   vigorous opposition of Defendants' counsel supports their fee request. *See, e.g.*, *Destefano*, 2016

17   WL 537946, at *17 ("The quality of opposing counsel is also relevant to the quality and skill that

18   class counsel provided."); *Lofton*, 2016 WL 7985253, at *1 (the "risks of class litigation against

19   an able defendant well able to defend itself vigorously" support an upward adjustment in the fee

20   award); *Knight v. Red Door Salons, Inc.*, No. 08-01520, 2009 WL 248367, at *6 (N.D. Cal. Feb.

21   2, 2009) (where defense counsel "understood the legal uncertainties in this case[] and were in a

22   position to mount a vigorous defense," the favorable settlement was a "testament to Plaintiffs'

23   counsel's skill").

24              *d.      Awards in similar cases show that the requested fee is reasonable.*

25        This Court has recognized that "fee awards of approximately 33⅓% are typical for

26   settlements up to $10 million." *Zamora v. Lyft, Inc*., No. 3:16-cv-02558-VC, 2018 WL 4657308,

27

at *3 (N.D. Cal. Sept. 26, 2018). The benchmark of 25% has been adjusted upward in circumstances such as this where an exceptional result was achieved and based on counsel's expertise and significant investment of time and resources. *See, e.g., Marshall,* 2020 WL 5668935, at *1 ; *Boyd,* 2014 WL 6473804, at *10 ; *Gergetz*, 2018 WL 4691169, at *7. Counsel's request for $2,812,500 in attorneys' fees, which amounts to 25% of the total $11,250,000 million value of the Settlement, and 28.8% of the $9,750,000 cash Settlement Fund, is reasonable.

2.      <u>A lodestar crosscheck confirms that the requested fee is reasonable.</u>

In the Ninth Circuit, courts may use a rough calculation of the lodestar as a crosscheck to assess the reasonableness of an award based on the percentage method. *Vizcaino*, 290 F.3d at 1050 ("[W]hile the primary basis of the fee award remains the percentage method, the lodestar may provide a useful perspective on the reasonableness of a given percentage award."); *see also Glass*, 331 F. App'x at 456-57 (affirming a fee award of 25% of a settlement fund with an "informal" lodestar crosscheck and despite "the relatively low time-commitment by plaintiff's counsel" because "the district court did not abuse its discretion in giving weight to other factors, such as the results achieved for the class and the favorable timing of the settlement").

Courts use a two-step process in applying the lodestar method. First, the court calculates the "lodestar figure" by multiplying the number of hours reasonably expended by a reasonable rate. *Moreno v. City of Sacramento*, 534 F.3d 1106, 1111 (9th Cir. 2008). Once the lodestar is determined, the amount may be adjusted to account for several factors, such as the benefit obtained for the class, the risk of nonpayment, the complexity and novelty of the issues presented, and awards in similar cases. *See In re Bluetooth*, 654 F.3d at 942. "The aim is to 'do rough justice, not to achieve auditing perfection.'" *In re Apple Inc. Device Performance Litig.*, No. 5:18-md-02827-EJD, 2021 WL 1022866, at *7 (N.D. Cal. Mar. 17, 2021) (quoting *Hefler v. Wells Fargo & Co.*, No. 16-cv-05479-JST, 2018 WL 6619983, at *14 (N.D. Cal. Dec. 18, 2018). "Foremost among the considerations is the benefit obtained for the class." *In re Bluetooth*, 654 F.3d at 942.

*a.      Class Counsel's rates are consistent with rates in the community for similar work performed by attorneys of comparable skill, experience, and reputation.*

In determining a reasonable hourly rate, courts look at the prevailing market rates in the relevant community, which is the forum in which the district court sits. *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1205 (9th Cir. 2013). In this district, courts have approved hourly rates up to $1,000. *See Dickey v. Advanced Micro Devices, Inc.*, No. 15-cv-04922-HSG, 2020 WL 870928, at *8 (N.D. Cal. Feb. 21, 2020) (finding rates between $275 and $1,000 for attorneys reasonable); *In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, No. 16-MD-02752-LHK, 2020 WL 4212811, at *26 (N.D. Cal. July 22, 2020) (approving rates of $450 to $900 for partners, $160 to $850 for non-partner attorneys, and $50 to $380 for staff members); *Zamora*, 2018 WL 4657308, at *3 (finding rates of $280 to $850 for attorneys and $240 to $260 for staff to be reasonable); *Superior Consulting Servs., Inc. v. Steeves-Kiss*, No. 17-cv-06059-EMC, 2018 WL 2183295, at *5 (N.D. Cal. May 11, 2018) ("[D]istrict courts in Northern California have found that rates of $475 to $975 per hour for partners and $300 to $490 per hour for associates are reasonable."); *see also Hefler*, 2018 WL 6619983, at *14 (finding rates of $245 to $350 reasonable for paralegals); *700 Valencia St. LLC v. Farina Focaccia & Cucina Italiana, LLC*, No. 15-CV-04931-JCS, 2018 WL 783930, at *4 (N.D. Cal. Feb. 8, 2018) (finding rate of $335 reasonable for paralegal with 10 years of experience); *Nitsch v. DreamWorks Animation SKG Inc.*, No. 14-CV-04062-LHK, 2017 WL 2423161, at *9 (N.D. Cal. June 5, 2017) (finding rate of $290 per hour for paralegal reasonable).

Class Counsel have provided the Court with declarations describing the basis for their hourly rates, including their education, legal experience, and reputation in the legal community. Counsel set their rates for attorneys and staff members based on a variety of factors, including, among others: the experience, skill and sophistication required for the types of legal services typically performed; the rates customarily charged in the markets where legal services are typically performed; and the experience, reputation and ability of the attorneys and staff members. *See* Terrell Decl. ¶¶ 36-37; Broderick Decl. ¶¶ 5-12; McCue Decl. ¶¶ 6-13; Paronich

Decl. ¶¶ 5-10; Fougner Decl. ¶¶ 5-33; Wessler Decl. ¶¶ 2-13. Across firms, the rates Class

Counsel charged for attorneys and staff members working on this matter ranged from $125 to

$1,000 (only for appellate counsel Matthew Wessler). *Id*. Courts have found these rates to be

reasonable in numerous class action cases. *Id*. Because counsel's hourly rates are in line with

rates approved in similar cases in this district, counsel's hourly rates are reasonable and

appropriate for calculating the lodestar. *See Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 947 (9th

Cir. 2007) (affidavits by plaintiffs' counsel and fee awards in other cases are sufficient evidence

of prevailing market rates).

> *b.      Class Counsel expended a reasonable number of hours litigating the case.*

The number of hours that Class Counsel devoted to investigation, discovery, motion

practice, and achieving a favorable settlement is reasonable. Since the inception of this case more

than five years ago, Class Counsel have worked diligently to prosecute this consolidated action

on behalf of the Settlement Class.

Class Counsel briefed, argued, or otherwise resolved twelve discovery motions, reviewed

the over 10,000 pages of documents that Defendants eventually produced, filed four amended

complaints, opposed two motions to dismiss and a motion for summary judgment, filed three

class certification motions, and opposed two motions to compel arbitration. Defendants appealed

the Court's Order denying Defendants' second motion to compel arbitration, which Class

Counsel successfully opposed before the Ninth Circuit.

In all, Class Counsel dedicated over 3,865  hours to the investigation, development,

litigation, and resolution of this case. *See* Terrell Decl. ¶¶ 34, 38; Broderick Decl. ¶ 5; McCue

Decl. ¶ 6; Paronich Decl. ¶ 5; Fougner Decl. ¶¶ 29-33; Wessler Decl. ¶ 13. This total excludes

time that Class Counsel removed as administrative, that did not benefit the Settlement Class, or

that was arguably excessive. *Id.* As in every case, counsel will spend additional hours to see this

case through to final resolution, including the work necessary to prepare the motion for final

approval, attend the hearing on final approval, and ensure the claims process is properly carried

out. Class Counsel's total lodestar through October 16, 2023 is $2,632,824.50. *Id.*

1

*c.      A multiplier is reasonable and appropriate.*

2        After determining the lodestar, courts consider the appropriate multiplier to apply. The

3   multiplier can be determined by dividing the total fees sought by the lodestar. *See Hopkins v.*

4   *Stryker Sales Corp.*, No. 11-CV-02786-LHK, 2013 WL 496358, at *4 (N.D. Cal. Feb. 6, 2013).

5   "The purpose of this multiplier is to account for the risk Class Counsel assumes when they take

6   on a contingent-fee cases." *Id.* (citation omitted). Multipliers are commonplace in attorneys' fee

7   awards in class actions, particularly when the lodestar method is used to cross-check a

8   percentage-of-the-fund fee. *See* Richard A. Posner, Economic Analysis of Law 783 (8th ed.

9   2011) ("A contingent fee must be higher than a fee for the same legal services paid as or after

10  they are performed. The contingent fee compensates the lawyer not only for the legal services he

11  renders but for the loan of those services. The implicit interest rate on such a loan is high because

12  the risk of default (the loss of the case, which cancels the client's debt to the lawyer) is much

13  higher than in the case of conventional loans, and the total amount of interest is large not only

14  because the interest rate is high but because the loan may be outstanding for years—and with no

15  periodic part payment, a device for reducing the risk borne by the ordinary lender."); *see also*

16  John Leubsdorf, *The Contingency Factor in Attorney Fee Awards*, 90 Yale L.J. 473, 480

17  (1981) ("A lawyer who both bears the risk of not being paid and provides legal services is not

18  receiving the fair market value of his work if he is paid only for the second of these functions. If

19  he is paid no more, competent counsel will be reluctant to accept fee award cases.").

20       Courts approach multipliers differently when the lodestar method is used as a crosscheck

21  than when using the lodestar in fee-shifting cases. In fee-shifting cases, "the question of whether

22  a multiplier is permitted is a question of statutory interpretation" and "courts are somewhat

23  hesitant to make the shift broader than is necessary" since the adversary pays the fee. William B.

24  Rubenstein, 5 Newberg on Class Actions § 15:91 (5th ed. Nov. 2018 update). "[I]n common

25  fund cases, courts that employ a pure lodestar method are not bound by the Supreme Court's

26  rulings that limit multiplied lodestars in the fee-shifting context." *Id.*; *see also Vizcaino*, 290 F.3d

27  at 1051 ("The bar against risk multipliers in statutory fee cases does not apply to common fund

cases" and "'courts have routinely enhanced the lodestar to reflect the risk of non-payment in common fund cases.'" (citation omitted)).

In the Ninth Circuit, multipliers "ranging from one to four are frequently awarded." *Vizcaino*, 290 F.3d at 1051 n.6. The Ninth Circuit collected dozens of class action lodestars and found that in 83% of the cases the lodestar was between 1.0 and 4.0. *Id.* Courts find higher multipliers appropriate when using the lodestar method as a crosscheck for an award based on the percentage method. *See, e.g., Steiner v. Am. Broad Co., Inc.*, 248 F. App'x 780, 783 (9th Cir. 2007) (finding a multiplier of approximately 6.85 to be "well within the range of multipliers that courts have allowed" when crosschecking a fee based on a percentage of the fund); *Beaver,* 2017 WL 4310707, at *13 ("The one-third fee Class Counsel seeks reflects a multiplier of 2.89 on the lodestar which is reasonable for a complex class action case"); *Couser*, 125 F.Supp.3d at 1049 (finding a 2.80 multiplier reasonable in a TCPA case); *Smith v. CRST Van Expedited, Inc.*, No. 10-CV-1116-IEG WMC, 2013 WL 163293, at *5 (1.5 lodestar multiplier on crosscheck of fee award equal to 33 1/3% of cash payment but only 7.5% of total settlement value); *Pan v. Qualcomm Inc.*, No. 16-CV-01885-JLS-DHB, 2017 WL 3252212, at *13 (S.D. Cal. July 31, 2017) (finding a multiplier of 3.5 to be reasonable for a fee equal to 24.6% of the settlement value); *Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 298-99 (N.D. Cal. 1995) (finding a multiplier of 3.6 was "well within the acceptable range").

Courts may consider the following factors when assessing the reasonableness of a multiplier: "(1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the 'undesirability' of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases." *Kerr v. Screen Extras Guild, Inc.*,

526 F.2d 67, 70 (9th Cir. 1975); *see also Vizcaino*, 290 F.3d at 1051 (noting that the district court found a 3.65 multiplier to be reasonable after considering the factors in *Kerr*).

Application of these factors confirms that the modest multiplier of 1.07 sought here is reasonable and appropriate. Class Counsel took the case on a contingent basis and to the preclusion of other work. They were able to achieve a favorable settlement for the Settlement Class that is comparable to other similar settlements (and superior to many) despite the challenges presented by this litigation. Class Counsel have substantial experience in litigating TCPA class actions and have earned reputations for skilled representation of victims of TCPA violations. Class Counsel will continue to respond to Settlement Class Members' calls and work with the settlement administrator through final approval and distribution of the settlement funds.

**B.      Class Counsel's litigation costs were necessarily and reasonably incurred.**

Rule 23(h) allows courts to award costs authorized by law or the parties' agreement. Attorneys who create a common fund are entitled to reimbursement of their out-of-pocket expenses so long as they are reasonable, necessary and directly related to the work performed on behalf of the class. *Vincent v. Hughes Air W.*, 557 F.2d 759, 769 (9th Cir. 1977); *see also In re Immune Response Sec. Litig.,* 497 F. Supp. 2d 1166, 1177 (S.D. Cal. 2007) (approving "reimbursements for 1) meals, hotels, and transportation; 2) photocopies; 3) postage, telephone, and fax; 4) filing fees; 5) messenger and overnight delivery; 6) online legal research; 7) class action notices; 8) experts, consultants, and investigators; and 9) mediation fees").

Class Counsel have provided the Court with billing records that itemize their litigation costs or group them by category. These costs, including $114,975.50 incurred retaining experts to perform the analyses essential to proving Defendants' liability and damages, total $200,108.85. Terrell Decl. ¶¶ 39-40; Broderick Decl. ¶ 5; McCue Decl. ¶ 6; Paronich Decl. ¶ 5; Fougner Decl. ¶¶ 31-33.

**C.      Plaintiffs request service awards of $5,000.**

Class representatives are eligible for reasonable service awards. *Staton*, 327 F.3d at 977. The Ninth Circuit has explained that service awards that are "intended to compensate class

1   representatives for work undertaken on behalf of a class 'are fairly typical in class action cases.'"

2   *In re Online DVD*, 779 F.3d at 943 (quoting *Rodriguez v. W. Publishing*, 563 F.3d 948, 958-59

3   (9th Cir. 2009)). The awards recognize the effort class representatives expend and the financial

4   or reputational risk they undertake in bringing the case, and to recognize their willingness to act

5   as private attorneys general. *W. Publishing*, 563 F.3d at 958-59. The factors courts consider

6   include the class representative's actions to protect the interests of the class, the degree to which

7   the class has benefitted from those actions, the time and effort the class representative expended

8   in pursuing the litigation, and any risk the class representative assumed. *Staton*, 327 F.3d at 977;

9   *see also Smith,* 2013 WL 163293, at *6 (addressing incentive award criteria).

10        Unlike unnamed Settlement Class Members, who are passive beneficiaries of the

11   representatives' efforts on their behalf, named class representatives agree to be the subject of

12   discovery, including making themselves available as witnesses at deposition and trial, and

13   subject themselves to other obligations of named parties. Service payments, which serve as

14   premiums in addition to any claims-based recovery from the settlement, promote the public

15   policy of encouraging individuals to undertake the responsibility of representative lawsuits. In

16   this case, Plaintiffs together protected the interests of the Settlement Class for more than five

17   years. Plaintiffs devoted significant time to assisting Class Counsel with this case for the benefit

18   of all Class members, including developing the claims, responding to voluminous written

19   discovery, and being deposed. *See* Declarations of Daniel Berman, Stephanie Hernandez and

20   Erica Russell. ECF Nos. 334, 335 and 336.

21        Service awards of $5,000 are appropriate in this case and in line the Ninth Circuit

22   benchmark of $5,000. *In re Yahoo Mail Litig.*, No. 13-CV-4980-LHK, 2016 WL 4474612, at *11

23   (N.D. Cal. Aug. 25, 2016); *see also In re Online DVD*, 779 F.3d at 942 (rejecting argument that

24   $5,000 service award created a conflict where settlement provided for $12 individual awards).

25   Indeed, the requests are well below awards approved by federal courts in California. *See, e.g.,*

26   *Beaver*, 2017 WL 4310707, at *8 (approving $50,000 service awards); *Smith*, 2013 WL 163293,

27   at *6 (approving $15,000 incentive awards to each of three class representatives); *del Toro Lopez*

1    *v. Uber Techs., Inc.*, No. 17-cv-06255-YGR, 2018 WL 5982506, at *3, 18 (N.D. Cal. Nov. 14,

2    2018) (approving service awards ranging from $30,000 to $50,000); *In re Nat'l Collegiate*

3    *Athletic Ass'n*, No. 4:14-md-2541-CW, 2017 WL 6040065, at *11 (N.D. Cal. Dec. 6, 2017)

4    (awarding $20,000 incentive awards to each of four class representatives and collecting cases

5    approving similar awards); *Lofton*, 2016 WL 7985253, at *2 (awarding $15,000 incentive fee in

6    TCPA class action); *Contreras v. Performance Food Grp., Inc.*, No. 4:14-CV-03380-PJH, 2016

7    WL 9138157, at *1 (N.D. Cal. May 4, 2016) (approving service award "in the amount of

8    $10,000.00, for the initiation of this action, the substantial benefit conferred upon the Class, and

9    the risks taken by stepping forward and prosecuting this action"). Thus, $5,000 service awards

10   are reasonable here.

## V.    CONCLUSION

12         Class Counsel request that the Court approve a fee award of $2,812,500, which represents

13   25% of the total Settlement value, and reimbursement of $200,108.85 in litigation costs.

14   Plaintiffs request service awards of $5,000 each in recognition of their representation of the

15   Settlement Class in this case.

## SIGNATURE ATTESTATION

17         The CM/ECF user filing this paper attests that concurrence in its filing has been obtained

18   from its other signatories.

19

20         RESPECTFULLY SUBMITTED AND DATED this 20th day of October, 2023.

21                            TERRELL MARSHALL LAW GROUP PLLC

22                            By: /s/ Beth E. Terrell, CSB #178181

23                               Beth E. Terrell, CSB #178181
                                 Email: bterrell@terrellmarshall.com

24                               Jennifer Rust Murray, *Admitted Pro Hac Vice*
                                 Email: jmurray@terrellmarshall.com

25                               936 North 34th Street, Suite 300
                                 Seattle, Washington 98103

26                               Telephone: (206) 816-6603
                                 Facsimile: (206) 319-5450

27

1

2

3

4

5

Michael F. Ram, CSB #104805
Email: mram@forthepeople.com
MORGAN & MORGAN
101 Montgomery Street, Suite 1800
San Francisco, California 94104
Telephone: (415) 358-6913
Facsimile: (415) 358-6923

6

7

8

9

Anthony I. Paronich, *Admitted Pro Hac Vice*
Email: anthony@paronichlaw.com
PARONICH LAW, P.C.
350 Lincoln Street, Suite 2400
Hingham, Massachusetts 02043
Telephone: (617) 738-7080
Facsimile: (617) 830-0327

10

11

12

13

14

Edward A. Broderick, *Admitted Pro Hac Vice*
Email: ted@broderick-law.com
BRODERICK LAW, P.C.
99 High Street, Suite 304
Boston, Massachusetts 02110
Telephone: (617) 738-7080
Facsimile: (617) 830-0327

15

16

17

18

19

Matthew P. McCue, *Admitted Pro Hac Vice*
Email: mmccue@massattorneys.net
THE LAW OFFICE OF MATTHEW P. McCUE
1 South Avenue, Suite 3
Natick, Massachusetts 01760
Telephone: (508) 655-1415
Facsimile: (508) 319-3077

20

*Attorneys for Plaintiffs*

21

22

23

24

25

26

27