1  Michael F. Ram, CSB #104805
   Email: mram@forthepeople.com
2  MORGAN & MORGAN
3  101 Montgomery Street, Suite 1800
   San Francisco, California 94104
4  Telephone: (415) 358-6913

5  Beth E. Terrell, CSB #178181
   Email: bterrell@terrellmarshall.com
6  Jennifer Rust Murray, *Admitted Pro Hac Vice*
7  Email: jmurray@terrellmarshall.com
   TERRELL MARSHALL LAW GROUP PLLC
8  936 North 34th Street, Suite 300
   Seattle, Washington 98103
9  Telephone: (206) 816-6603

10 [Additional counsel appear on signature page]

11 *Attorneys for Plaintiffs*

12                    UNITED STATES DISTRICT COURT
13            FOR THE NORTHERN DISTRICT OF CALIFORNIA
                          OAKLAND DIVISION
14

15 DANIEL BERMAN, STEPHANIE
   HERNANDEZ, and ERICA RUSSELL,        Case No. 4:18-cv-01060-YGR
16
                 Plaintiffs,            **NOTICE OF MOTION AND**
17                                      **MEMORANDUM IN SUPPORT OF**
         v.                             **PLAINTIFFS' MOTION FOR FINAL**
18                                      **APPROVAL OF SETTLEMENT**
   FREEDOM FINANCIAL NETWORK, LLC,
19 FREEDOM DEBT RELIEF, LLC, FLUENT,
   INC., and LEAD SCIENCE, LLC,         JURY TRIAL DEMAND
20
                 Defendants.            Honorable Yvonne Gonzalez Rogers
21

22

23

24

25

26

27

28
   NOTICE OF MOTION AND MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION
                 FOR FINAL APPROVAL OF SETTLEMENT
                     Case No. 4:18-cv-01060-YGR

1  TO:   THE CLERK OF THE COURT; and

2  TO:   DEFENDANTS FREEDOM FINANCIAL NETWORK, LLC, FREEDOM DEBT
3        RELIEF, LLC, FLUENT, INC., AND LEAD SCIENCE, LLC:

4        PLEASE TAKE NOTICE that on February 20, 2024, at 2:00 p.m., in Courtroom 1, 4th

5  Floor, of the Oakland Courthouse for the U.S. District Court for the Northern District of

6  California, 1301 Clay Street, Oakland, California, 94612, Plaintiffs will move for final approval

7  of a class action settlement.

8        This motion will be based on: this Notice of Motion, the Memorandum of Points and

9  Authorities, the Declaration of Jennifer Rust Murray, the Declaration of Markeita Reid

10 Regarding Notice and Claims Administration, the records and file in this action, and on such

11 other matter as may be presented before or at the hearing of the motion.

12       Plaintiffs have separately filed a motion for approval of attorneys' fees, litigation costs,

13 and service awards. *See* ECF Nos. 356-362. That motion has been noted for consideration on the

14 same day as this motion and Plaintiffs rely on the facts and authorities described in the

15 memorandum submitted in support of it.

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

## **TABLE OF CONTENTS**

3                                                                                                                                                 **PAGE**

4    I.    INTRODUCTION ................................................................................................. 1

5    II.   BACKGROUND ................................................................................................. 2

6    III.  ISSUES TO BE DECIDED ................................................................................. 3

7    IV.   ARGUMENT AND AUTHORITY ..................................................................... 3

8          A.    The Settlement Class received the best practicable notice ..................... 3

9          B.    The Settlement Class's reaction has been overwhelmingly positive—
                 there are no objections, only two exclusions, and over 39,000 valid
10               claims ...................................................................................................... 5

11         C.    The Court's concerns regarding the scope of the release and the
                 methodology for valuing the injunctive relief have been addressed....................... 7

12         D.    The Settlement remains fair, reasonable, and adequate ......................... 8

13               1.    The relief provided by the settlement taking into account the
                       strength of Plaintiffs' case and the risk, cost, and delay of trial
14                     and appeal favors approval .......................................................... 9

15               2.    The risk of maintaining class action status throughout the trial .............. 11

16               3.    The amount offered in settlement ............................................... 12

17               4.    The extent of discovery completed and the stage of the
                       proceedings ................................................................................ 13

18               5.    The experience and views of counsel ......................................... 14

19               6.    The presence of a governmental participant ............................... 14

20               7.    The Rule 23(e)(2) considerations favor approval ...................... 14

21         E.    The Settlement Class should be finally certified for settlement purposes ........... 15

22    V.   CONCLUSION ................................................................................................. 16

23

24

25

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## <u>TABLE OF AUTHORITIES</u>

**PAGE(S)**

### CASES

*Abante Rooter and Plumbing, Inc., et al v. Alarm.com, Inc.*,
   No. 4:15-cv-06314-YGR, (N.D. Cal. Aug. 15, 2019) ........................................................13

*Abdeljalil v. Gen. Elec. Capital Corp.*,
   306 F.R.D. 303 (S.D. Cal. 2015) ......................................................................................11

*Adams v. AllianceOne Receivables Mgmt., Inc.*,
   No. 3:08-cv-00248-JAH-WVG (S.D. Cal. Sept. 28, 2012) ...............................................13

*Almanzar v. Home Depot U.S.A., Inc.*,
   2024 WL 36175 (E.D. Cal. Jan. 3, 2024) ..........................................................................10

*Blair v. CBE Grp., Inc.*,
   309 F.R.D. 621 (S.D. Cal. 2015) ......................................................................................11

*Cabiness v. Educ. Fin. Sols., LLC*,
   2019 WL 1369929 (N.D. Cal. Mar. 26, 2019)...................................................................13

*Carter v. Vivendi Ticketing US LLC*,
   2023 WL 8153712 (C.D. Cal. Oct. 30, 2023).......................................................................6

*Chinitz v. Intero Real Estate Servs.*,
   2022 WL 16528137 (N.D. Cal. Oct. 28, 2022).....................................................................8

*Desai v. ADT Sec. Servs., Inc.*,
   Case No. 1:11-cv-01925 (N.D. Ill. Feb. 14, 2013) ...........................................................13

*Estrada v. iYogi, Inc.*,
   2015 WL 5895942 (E.D. Cal. Oct. 6, 2015).......................................................................13

*Gordon v. Caribbean Cruise Line, Inc.*,
   2019 WL 498937 (N.D. Ill. Feb. 8, 2019) .........................................................................11

*In re Anthem, Inc. Data Breach Litig.*,
   327 F.R.D. 299 (N.D. Cal. 2018).........................................................................................5

*In re Bluetooth Headset Prods. Liab. Litig.*,
   654 F.3d 935 (9th Cir. 2011) ....................................................................................2, 9, 14

*In re Capital One Tel. Consumer Prot. Act Litig. (In re Capital One)*,
 80 F. Supp. 3d 781 (N.D. Ill. 2015) ..................................................................13

*In re ConAgra Foods, Inc.*,
 2023 WL 8937622 (C.D. Cal. Sept. 18, 2023) .............................................5, 6

*In re Mercury Interactive Corp.*,
 618 F.3d 988 (9th Cir. 2010) .....................................................................5, 15

*In re Online DVD Rental Antitrust Litig.*,
 779 F.3d 934 (9th Cir. 2015) ...........................................................................6

*In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*,
 895 F.3d 597 (9th Cir. 2018) ...........................................................................9

*Kramer v. Autobytel, Inc., et al.*,
 No. 10-cv-2722 (N.D. Cal. 2012) ...................................................................13

*Legg v. PTZ Ins. Agency, Ltd.*,
 321 F.R.D. 572 (N.D. Ill. 2017)......................................................................12

*McCauley v. Ford Motor Co.*,
 264 F.3d 952 (9th Cir. 2001) ...........................................................................8

*Moore v. Verizon Commc'n Inc.*,
 2013 WL 4610764 (N.D. Cal. Aug. 28, 2013) .................................................6

*Mullane v. Central Hanover Bank & Trust Co.*,
 339 U.S. 306 (1950).........................................................................................4

*Nat'l Rural Telecommc'ns Coop. v. DIRECTV, Inc.*,
 221 F.R.D. 523 (C.D. Cal. 2004)....................................................................10

*Rinky Dinky v. Elec. Merchant Sys.*,
 No. C13-1347-JCC (W.D. Wash. Apr. 19, 2016)............................................13

*Rose v. Bank of Am. Corp.*,
 2014 WL 4273358 (N.D. Cal., 2014) ..............................................................13

*Steinfeld v. Discover Fin. Servs.*,
 No. C 12-01118 (N.D. Cal. Mar. 10, 2014).....................................................13

*Tuttle v. Audiophile Music Direct, Inc.*,
 2023 WL 8891575 (W.D. Wash. Dec. 26, 2023) ..............................................6

*Williams v. PillPack LLC,*
    343 F.R.D. 201 (W.D. Wash. 2022) ..................................................................................11

**STATUTES AND RULES**

28 U.S.C. § 1715 .......................................................................................................................14

Fed. R. Civ. P. 23 ................................................................................................................4, 8, 9

**OTHER AUTHORITIES**

*Consumers and Class Actions: A Retrospective and Analysis of Settlement Campaigns,*
    *an FTC Staff Report, Sept. 2019* ...........................................................................................7

*Federal Judicial Center, Judges' Class Action Notice and Claims Process Checklist and Plain*
    *Language Guide* (2010) .........................................................................................................5

## I.    INTRODUCTION

Plaintiffs Daniel Berman, Stephanie Hernandez, and Erica Russell request that the Court grant final approval of the class action Settlement they reached with Defendants Freedom Financial Network, LLC and Freedom Debt Relief, LLC (together, "Freedom"), Fluent, Inc., and Lead Science, LLC. The Settlement, reached after five years of contested litigation, and following extensive arm's-length negotiations, resolves this class action under the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq*.

Defendants have agreed to pay $9,750,000 to establish a non-reversionary Settlement Fund for the benefit of Settlement Class Members who filed valid claims. The settlement also requires Fluent to make significant changes to its practices that will benefit all members of the Settlement Class regardless of whether they submit a claim. Among other things, Fluent will not initiate, cause others to initiate, or assist in initiating any outbound telephone call that plays or delivers a prerecorded message. Fluent also will maintain evidence of the consent it receives to conduct telemarketing and require its affiliated companies to provide it, upon request, with calling records and evidence of telemarketing consent.

Settlement Administrator, A.B. Data, implemented the Court-approved notice plan, and successfully delivered postcard and email notices to over 86% of Settlement Class Members. A.B. Data supplemented this direct notice with a robust media program that was delivered across digital networks and social media for 30 days. As of January 29, 2024, 39,178 Settlement Class Members submitted valid claims, representing 5.4% of the Settlement Class Members. If the Court approves payment of administration costs, attorneys' fees, litigation expenses, and service payments to each Plaintiff, each participating Settlement Class Member will receive approximately $116.98 or $233.96, with the higher amount allocated to Settlement Class Members with claims under the TCPA's National Do-Not-Call regulations in addition to claims for unwanted robocalls.

None of the Settlement Class Members objected to the Settlement. Only two Settlement Class Members opted out. The Settlement is fair, reasonable, and adequate in all respects.

NOTICE OF MOTION AND MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION
FOR FINAL APPROVAL OF SETTLEMENT - 1
Case No. 4:18-cv-01060-YGR

1    Plaintiff requests the Court grant final approval of the Settlement by: (1) approving the

2    Settlement Agreement; (2) determining that adequate notice was provided to the Settlement

3    Class; (3) finally certifying the Settlement Class; (4) granting Class Counsel $2,812,500 in

4    attorneys' fees and $200,109 in costs; (5) approving $5,000 service payments to each Plaintiff;

5    and (6) approving administration costs of $580,000.

6                                **II.    BACKGROUND**

7            Plaintiffs described the protracted, hard-fought litigation that led to the class settlement in

8    their separate motion for an award of attorneys' fees, costs, and service awards (ECF No. 356).

9    In accordance with the Northern District of California's Procedural Guidance for Class Action

10   Settlements, Plaintiff will not repeat those facts here. Throughout nearly five years of litigation,

11   Plaintiffs doggedly pursued their claims in the face of Defendants' capable opposition. Plaintiffs

12   briefed, argued, or otherwise resolved twelve discovery motions, reviewed thousands of pages of

13   documents eventually produced by Defendants, filed four amended complaints, successfully

14   opposed two motions to dismiss and a motion for summary judgment, filed three motions for

15   class certification, and successfully opposed two motions to compel arbitration. *See* ECF No. 356

16   (Plfs' Mtn for Fees) at 3-4. Defendants appealed the Court's order denying Defendants' second

17   motion to compel arbitration, which was affirmed by the Ninth Circuit. *Id.* The parties had fully

18   briefed Plaintiffs' third motion for class certification when they reached an agreement on the

19   Settlement's material terms.

20           Plaintiffs filed their motion for preliminary approval (ECF Nos. 332-40) on March 17,

21   2023. During the hearing, the Court raised several concerns about the Settlement and ordered

22   Plaintiffs to submit supplemental briefing to address all of the factors for settlement approval

23   described in *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935 (9th Cir. 2011); to provide

24   a comparison of the proposed Settlement to settlements reached in similar litigation; to explain

25   why the Settlement treats all Settlement Class Members the same when Plaintiffs previously

26   requested that the Court certify several subclasses; to address several questions regarding the

27   injunctive relief provisions of the settlement; to explain the basis for Plaintiffs' estimated claims

28

rate; and to explain why the class period is shorter than the class period alleged in the original complaint. *See* ECF No. 349 (Plfs' Supp. Brief in Support of Prelim. Approval). The Court also ordered the parties to revise the Settlement Agreement to clarify that Settlement Class Members are only releasing claims based on the allegations in the complaint and to eliminate references to text messages in the class definition. *Id.* The parties resumed negotiations, exchanging several drafts of an amended agreement. Declaration of Jennifer Rust Murray in Support of Plaintiffs' Motion for Final Approval ("Murray Decl.") ¶ 2. Plaintiffs filed their supplemental brief on May 31, 2023 (ECF No. 349) and an Amended Settlement Agreement a few days later (ECF No. 352).

After a second hearing, the Court preliminarily approved the Amended Settlement Agreement. ECF No. 355. In its preliminary approval order, the Court identified two issues that it would specifically evaluate in connection with final approval. First, it would scrutinize the Settlement Agreement "to ensure individuals who have Do Not Call claims solely by virtue of having received a telemarketing text message from or on behalf of defendant Freedom, but who are not members of the Settlement Class, do not waive claims under the Agreement." *Id.* at 7. Second, the Court will "revisit plaintiffs' approach to monetizing the Settlement Agreement's injunctive relief." *Id.*

### III.    ISSUES TO BE DECIDED

1.    Did A.B. Data implement the notice program, satisfying due process?

2.    Does the reaction of Settlement Class Members favor Settlement Approval?

3.    Is the Release limited to individuals who can recover under the Settlement and is Plaintiffs' approach to monetizing injunctive relief fair?

4.    Is the Settlement fair, reasonable, and adequate, justifying approval?

5.    Should the Settlement Class be finally certified?

### IV.    ARGUMENT AND AUTHORITY

**A.    The Settlement Class received the best practicable notice.**

Rule 23(e)(1) requires the Court to "direct notice in a reasonable manner to all class members who would be bound by" a proposed settlement. Fed. R. Civ. P. 23(e)(1). Class

1  members are entitled to the "best notice that is practicable under the circumstances" of any

2  proposed settlement before it is finally approved by the Court. Fed. R. Civ. P. 23(c)(2)(B). To

3  satisfy due process notice must be "reasonably calculated, under all the circumstances to apprise

4  interested parties of the pendency of the action and afford them an opportunity to present their

5  objections." *See also Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).

6       The notice program here required A.B. Data to access credit bureau and other publicly-

7  available databases to match the telephone numbers to which the allegedly unlawful text

8  messages were sent to names, postal addresses, and email addresses of the individuals who

9  received the messages. Declaration of Markeita Reid Regarding Notice and Claims

10 Administration ("Reid Decl.") ¶ 4. Through this "reverse lookup" process, A.B. Data identified

11 names and contact information for 672,263 Settlement Class Members. *Id.* The remaining 54,482

12 telephone numbers did not return an email or mailing address. *Id.* A.B. Data updated postal

13 addresses through the National Change of Address Database. *Id.*

14      A.B. Data timely sent the Court-approved Email Notice to 452,312 potential Settlement

15 Class Members for whom an email address could be located through reverse lookups. *Id.* ¶ 5.

16 A.B. Data also sent Postcard Notices to 220,490 potential Settlement Class Members for whom

17 mailing addresses but no email addresses were located. *Id.* A total of 149,970 emails were

18 returned undeliverable, requiring A.B. Data to mail a Postcard Notice to those Settlement Class

19 Members. *Id.* ¶ 6. Some of the Postcard Notices were returned to A.B. Data as undeliverable.

20 A.B. Data was able to locate updated address information for 10,038 of those initially-

21 undeliverable notices and resent notice to that group. *Id.* ¶ 8. 43,698 Postcard Notices remain

22 undeliverable. *Id.* A.B. Data also sent email reminder notices. Of these reminder notices, 396,386

23 were delivered. *Id.* ¶ 7. In all, A.B. Data successfully sent individual direct notice to 618,527

24 Settlement Class Members, accounting for approximately 86.5% of the Settlement Class

25 Members. *Id.* ¶ 8. The notice program also included a robust media notice campaign, that

26 included a digital and social media advertising campaign that appeared on Google Display

27

28

1  Networks, Google AdWords, Facebook, YouTube, and Instagram. The digital and social media

2  campaign ran for 30 days. *Id.* ¶¶ 9-10.

3       Settlement Class Members with questions about the Settlement had several options. A.B.

4  Data established a website to provide Settlement Class Members with information about the

5  settlement, which has received 670,052 visits. *See id.* ¶ 11. A.B. Data also maintained a toll-free

6  phone number dedicated to answering telephone inquiries from Class Members. *Id.* ¶ 12.

7  Settlement Class Members also could call Class Counsel and many of them did. Terrell Marshall

8  received over 100 calls from Settlement Class Members seeking information about the

9  Settlement and the process for filing a claim. Murray Decl. ¶ 3.

10      In total, notice was successfully delivered to more than 86% of the class, well exceeding

11  the 70% benchmark set by the Federal Judiciary Center for a successful notice program. *See*

12  *Federal Judicial Center, Judges' Class Action Notice and Claims Process Checklist and Plain*

13  *Language Guide* at 3 (2010).[1] *See also* Reid Decl. ¶ 22.

14  **B.     The Settlement Class's reaction has been overwhelmingly positive—there are no**
15  **         objections, only two exclusions, and over 39,000 valid claims.**

16      A court may appropriately infer that a class settlement is fair, reasonable, and adequate

17  when few (or no) class members object to it. *In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D.

18  299, 320-21 (N.D. Cal. 2018) (finding that low rates of objections and opt-outs are "indicia of

19  the approval of the class" (citation omitted)); *In re ConAgra Foods, Inc.,* 2023 WL 8937622, at

20  *10 (C.D. Cal. Sept. 18, 2023) (noting that lack of objections "indicates very strong overall

21  support for the [settlement] and supports final approval"). Settlement Class members must be

22  provided sufficient opportunity to object to the Settlement, including Plaintiffs' request for

23  attorneys' fees, costs, and service awards. *See In re Mercury Interactive Corp.*, 618 F.3d 988,

24  994 (9th Cir. 2010).

25

26

---

27  [1] Available at https://www.fjc.gov/sites/default/files/2012/NotCheck.pdf (Last visited on January
    26, 2023).

28

Here, the deadline for Settlement Class Members to file written objections or request exclusion from the Settlement was November 25, 2023. Reid Decl. ¶ 13. On October 20, 2023, Class Counsel filed their motion for attorneys' fees and costs. ECF No. 356 (Plfs' Mtn for Attorneys' Fees). A.B. Data posted Class Counsel's motion for attorneys' fees and costs to the settlement website the following day. Reed Decl. ¶ 11. Not a single Settlement Class Member objected to the Settlement or Class Counsel's fee request and only two opted out. *Id.* ¶¶ 13, 14.

Settlement Class Members instead chose to participate in the settlement, filing 39,178 valid claims. Reid Decl. ¶ 18. That 5.4% of Settlement Class Members chose to participate supports approval. *See, e.g., In re Online DVD Rental Antitrust Litig.*, 779 F.3d 934, 944-45 (9th Cir. 2015) (affirming approval of settlement where 1,183,444 of 35 million class members—less than 3.4%—filed claims); *Moore v. Verizon Commc'n Inc.,* 2013 WL 4610764, at *8 (N.D. Cal. Aug. 28, 2013) (granting final approval of settlement with 3% claims rate).

Although the actual claims rate is below the 10% rate Plaintiffs estimated for purposes of preliminary approval, that should not weigh against approval. Claims rates are notoriously difficult to predict. Plaintiffs specifically chose a conservative claims rate for purposes of estimating the payment amounts claimants could expect to receive, because using a lower claims rate could have caused Plaintiffs to estimate a higher payment amount than claimants ultimately received. Murray Decl. ¶ 4. The claims rate in this action is higher than several recently-approved class action settlements in the Ninth Circuit. *See In re ConAgra Foods, Inc.,* 2023 WL 8937622, at *6 (approving settlement with 4% claims rate, not including over 1.7 million claims that were duplicates or had "indicia of fraud"); *Carter v. Vivendi Ticketing US LLC*, 2023 WL 8153712, at *9 (C.D. Cal. Oct. 30, 2023) (approving settlement in data breach class action with 1.6% claims rate); *Tuttle v. Audiophile Music Direct, Inc.*, 2023 WL 8891575, at *12 (W.D. Wash. Dec. 26, 2023) (approving settlement with overall 2.4% claims rate and 3.8% claims rate among class members who received direct notice). And it is well in line with the average claims rate for similar settlements. *See also* Murray Decl., Ex. 1 at 11 (*Consumers and Class Actions: A Retrospective and Analysis of Settlement Campaigns*, an FTC Staff Report, Sept. 2019).

NOTICE OF MOTION AND MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION
FOR FINAL APPROVAL OF SETTLEMENT - 6
Case No. 4:18-cv-01060-YGR

The Settlement Agreement built in time for A.B. Data to carefully review all the submitted claims for any indication that they were fraudulently submitted. A.B. Data took this charge very seriously. A.B. Data received 286,324 total claim forms and reviewed every one. Reid Decl. ¶ 16. Approximately 62,637 claims were denied outright because they did not contain information sufficient to reflect inclusion in the Class, were duplicative, or were otherwise defective. *Id.*

Thousands of other claims appeared on their face to be fraudulent. For example, thousands of claims were filed from the same IP address or were filed from IP addresses originating outside of the United States. Reid Decl. ¶ 16. Some claims had suspicious patterns in the form and substance of information provided (such as European date formats, failed capitalization in names and addresses, and uncommon email addresses). *Id.* Some of the claims were completed faster than a human could typically complete a claim form. Others included suspicious email addresses. *Id.* In total, A.B. Data identified 184,383 claims as likely fraudulent and marked them as deficient. *Id.* ¶ 16.

A.B. Data sent 184,383 deficiency notices to the 184,383 deficient claims and 62,637 denial notices to the 62,637 denied claims, providing those claimants with the opportunity to provide additional information and cure their claims. Reid Decl. ¶ 17, Exs. G & H. The deadline for claimants to respond to a deficiency or denial notice was January 27, 2024. *Id.*, Exs. G & H. A.B. Data has received and reviewed responses to the deficiency and denial letters. This process yielded an additional 115 valid claims.

All in all, the support from the Settlement Class favors approval.

**C.    The Court's concerns regarding the scope of the release and the methodology for valuing the injunctive relief have been addressed.**

The Court identified two concerns in its preliminary approval order (ECF No. 355 at 7:7-19) to be addressed at final approval—the scope of the release and valuation of the injunctive relief. Both have been addressed and neither warrant denying settlement approval.

On the release, the Amended Settlement Agreement limits the Settlement Class to those

1    individuals to whom Defendants placed a call using an artificial or prerecorded voice. *See* ECF

2    No. 352 (Amended Settlement Agreement) § 1.29. And under the Amended Settlement

3    Agreement only Plaintiffs and Settlement Class Members release their claims. *Id.* § 1.22. Any

4    person who received telemarketing text messages from or on behalf of Freedom, but did not

5    receive a prerecorded call is not a Settlement Class Member and does not release any claims,

6    including any Do Not Call claims they may have had by virtue of receiving the text message. To

7    avoid any confusion on this matter, Plaintiffs have submitted a proposed final approval order that

8    makes this clear. *See* Murray Decl., Ex. 2 (Proposed Final Approval Order) ¶ 3 (explicitly

9    providing that individuals who received text messages only—and not artificial or prerecorded

10   voice calls —do not release any claims under the Amended Settlement Agreement).

11        As for valuing the injunctive relief, Class Counsel considered the Court's comments in

12   the preliminary approval order and modified their approach to monetizing prospective relief so

13   that it is based on the amount it will cost Fluent to implement the practice changes ($1,500,000)

14   rather than on the formula adopted by Judge Labson Freeman in *Chinitz v. Intero Real Estate*

15   *Servs.*, 2022 WL 16528137 (N.D. Cal. Oct. 28, 2022). The Ninth Circuit has endorsed Plaintiff's

16   revised methodology as a proper measure for valuing prospective relief. *See McCauley v. Ford*

17   *Motor Co.*, 264 F.3d 952, 958 (9th Cir. 2001). As a result of the modification, Class Counsel

18   reduced their fee request to $2,812,500, which is 25% of the total settlement value ($9,750,000

19   (monetary relief) + $1,500,000 (injunctive relief) x .25 = $2,812,500). Plaintiff describes this

20   methodology in their fee petition. *See* ECF No. 356 (Plfs' Fee Mtn) at 2:7-20, 8:13-24.

21   **D.    The Settlement remains fair, reasonable, and adequate.**

22        Rule 23(e) provides that courts should grant final approval to class action settlements that

23   are "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). The 2018 amendments to Rule 23

24   articulate a four-factor test the intent of which is to "focus the court and the lawyers on the core

25   concerns of procedure and substance that should guide the decision …." Fed. R. Civ. P. 23(e)(2)

26   advisory committee's note to 2018 amendments.

27

28

1    Under Rule 23(e)(2), the Court may approve a class action settlement "only after a

2  hearing and only on finding that it is fair, reasonable, and adequate" after considering whether

3  (1) the class representative and class counsel have adequately represented the class; (2) the

4  proposal was negotiated at arm's length; (3) the relief provided for the class is adequate, taking

5  into account (i) the costs, risks, and delay of trial and appeal, (ii) the effectiveness of any

6  proposed method of distributing relief to the class, including the method of processing class

7  member claims, (iii) the terms of any proposed award of attorney's fees, including timing of

8  payment, and (iv) any agreement required to be identified under Rule 23(e)(3); and (4) the

9  proposal treats class members equitably relative to each other. Fed. R. Civ. P. 23(e)(2).

10    The Rule 23 factors are consistent with factors the Ninth Circuit has identified as guides

11  to determining whether a proposed settlement should be approved. These factors include (1) the

12  strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further

13  litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount

14  offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6)

15  the experience and views of counsel; (7) the presence of a governmental participant; and (8) the

16  reaction of the class members of the proposed settlement. *In re Bluetooth,* 654 F.3d at 946.

17  Ultimately, "[d]eciding whether a settlement is fair" is "best left to the district judge who can

18  develop a firsthand grasp of the claims, the class, the evidence, and the course of the

19  proceedings—the whole gestalt of the case." *In re Volkswagen "Clean Diesel" Mktg., Sales

20  Practices, & Prods. Liab. Litig.*, 895 F.3d 597, 611 (9th Cir. 2018). All factors are satisfied.

21    1.    The relief provided by the settlement taking into account the strength of Plaintiffs'
22         case and the risk, cost, and delay of trial and appeal favors approval.

23    The settlement includes both a monetary component and prospective relief. Defendants

24  have agreed to pay $9,750,000 to settle Plaintiffs' and Settlement Class Members claims. The

25  Settlement Fund will be used to pay the costs of notice and settlement administration, attorneys'

26  fees, costs and expenses, and Service Awards to the Plaintiffs. Once those amounts are paid, the

27

28

1    remainder of the Settlement Fund—approximately $6,142,391.15—will be distributed to

2    Settlement Class Members who timely filed a valid claim.

3         Plaintiffs have a strong case for liability. They believe the evidence supports Freedom's

4    vicarious liability for the prerecorded calls placed by Fluent and Lead Science. Plaintiffs also

5    believe Defendants will not prevail on their defense that they had prior express written consent to

6    place the calls because Defendants did not produce evidence of consent during discovery and,

7    even if they had evidence, the disclosures do not comply with the TCPA. However, Freedom

8    continues to deny that it can be held vicariously liable for Defendants' alleged telemarketing

9    violations and Fluent continues to insist that the disclosures on its webpages satisfy the TCPA.

10   Proving vicarious liability can be challenging in TCPA cases. *See* ECF No. 332 (Plfs' Prelim.

11   Approval Mtn) at 15:9-15 (collecting cases). Furthermore, some courts have found that similar

12   webpages that require a user to check a box on an online form to "consent" to robocalls comply

13   with the TCPA. *See* ECF No. 320 (Defs' Class Cert Opp.) at 15:3-27. Plaintiffs believe that the

14   webpages at issue in this case are distinguishable, but the Court or a jury may disagree.

15        Plaintiffs would also have to prevail at trial and retain any favorable judgment through

16   the appellate process, which would significantly delay recovery of any damages. Litigating this

17   case to trial and through any appeals would be expensive and time-consuming and would present

18   risk to both parties. This Settlement, by contrast, provides prompt and certain relief. *See*

19   *Almanzar v. Home Depot U.S.A., Inc.*, 2024 WL 36175, at *4 (E.D. Cal. Jan. 3, 2024)

20   ("Approval of settlement is 'preferable to lengthy and expensive litigation with uncertain

21   results.'"); *Nat'l Rural Telecommc'ns Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal.

22   2004) ("The Court shall consider the vagaries of litigation and compare the significance of

23   immediate recovery by way of the compromise to the mere possibility of relief in the future, after

24   protracted and expensive litigation."). At the same time, the Settlement Fund is a very significant

25   payment for Defendants. ECF No. 357 (Terrell Fee Decl.) ¶ 26. Securing a $9,750,000 million

26   settlement now with certainty of payment will provide significant relief to Settlement Class

27   Members who submit claims and exacts a significant payment from Defendants' perspective.

28

2.    <u>The risk of maintaining class action status throughout the trial.</u>

The parties finalized the Settlement days before the scheduled hearing on Plaintiffs' Renewed Motion for Class Certification. ECF No. 333 (Terrell Prelim. Approval Decl.) at 4. The Court denied Plaintiffs' first motion for class certification without prejudice (ECF No. 198) and Plaintiffs faced serious risk that the Court would decline to grant Plaintiffs' renewed motion.

Plaintiffs allege that Defendants Fluent, Inc. and Lead Science, LLC used an artificial or prerecorded voice to place calls promoting Freedom's debt relief services. But prerecorded telemarketing calls are only illegal if they are placed without the recipient's prior, express written consent. Courts have reached different results when determining whether it is appropriate to certify classes involving consent issues. *Compare, e.g., Blair v. CBE Grp., Inc.*, 309 F.R.D. 621, 631 (S.D. Cal. 2015) (denying certification where "extensive individual factual inquiries" were required "to determine whether a particular class member provided express consent"), *with Abdeljalil v. Gen. Elec. Capital Corp.*, 306 F.R.D. 303, 311 (S.D. Cal. 2015) (granting certification where plaintiff "present[ed] a viable legal theory along with evidence suggesting defendant did not obtain express consent … before placing the calls" and the court could "revisit the express consent issue if, after the case progresses, it obtains evidence that the issue is too individualized to warrant class status").

Plaintiffs are confident that the consent issues in this case are not unmanageably individualized because the consent webforms on which Defendants rely for their consent defense are substantially uniform. *See Williams v. PillPack LLC*, 343 F.R.D. 201, 208–09 (W.D. Wash. 2022) (certifying class of individuals who purportedly opted in to receive calls by visiting various websites that failed to disclose defendant's name among list of entities on whose behalf calls were initiated finding individualized issues of consent did not predominate). But Defendants cite cases for the opposite proposition. *See* ECF No. 320 (Defs' Class Cert Opp) at 19-20 (citing cases). And courts have declined to grant certification where, as here, the plaintiffs allege that some proposed class members never visited the website at issue in the first place. *See Gordon v. Caribbean Cruise Line, Inc.*, 2019 WL 498937 at *10 (N.D. Ill. Feb. 8, 2019) (finding

NOTICE OF MOTION AND MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION
FOR FINAL APPROVAL OF SETTLEMENT - 11
Case No. 4:18-cv-01060-YGR

1  "individualized factual inquiries will be necessary" to determine whether proposed class

2  members did, in fact, fill out the form through which they allegedly consented to calls). Even if

3  Plaintiffs convinced the Court to certify the proposed classes, Defendants still could seek to

4  decertify the class. *See Legg v. PTZ Ins. Agency, Ltd.*, 321 F.R.D. 572, 578 (N.D. Ill. 2017)

5  (denying certification where defendants provided declarations from class members indicating

6  they consented to calls). In contrast to these risks, the Settlement provides prompt and certain

7  relief for Settlement Class Members. This factor favors preliminary approval.

8       3.    <u>The amount offered in settlement.</u>

9       Defendants have agreed to pay $9,750,000 to settle Plaintiffs' and Settlement Class

10  Members' claims. The Settlement Fund will be used to pay the costs of notice and settlement

11  administration ($580,000), attorneys' fees ($2,812,500), litigation costs and expenses

12  ($200,108.85) and Service Awards to the named Plaintiffs ($5,000 each; $15,000 total). The

13  settlement administration expenses are more than the $475,000 A.B. Data originally estimated,

14  due to the large number of Postcard Notices that required printing and mailing. *See* Reid Decl. ¶

15  19, n.4. A.B. Data has agreed to cap its total expenses at $580,000, which reflects only the

16  additional hard costs (postage and printing) that A.B. Data incurred. *Id.* ¶ 19.

17       Once settlement expenses are paid, the remainder of the Settlement Fund—approximately

18  $6,142,391.15—will be distributed to Settlement Class Members who timely filed valid claim

19  forms. Plaintiffs estimate that each claimant will receive $116.98 for each "share" allocated to

20  them under the terms of the amended Settlement Agreement. Reid Decl. ¶ 21. The Amended

21  Settlement Agreement allocates two shares to Settlement Class Members who have both a

22  prerecorded call claim and a National Do-Not-Call claim. A Settlement Class Member who has

23  only a prerecorded call claim will receive one share. ECF No. 352 § 2.3(b). Thus, a claimant who

24  has a Prerecord Claim only will receive $116.98 and a claimant who has a Prerecord Claim and

25  an NDNC Claim will receive $233.96 ($116.98 x 2 shares). Reid Decl. ¶ 21. This settlement

26  compares very favorably to settlements in TCPA cases that have been approved by courts across

27  the country. The payment amounts claimants will receive are in line with numerous TCPA

28

settlements. *See Abante Rooter and Plumbing, Inc., et al v. Alarm.com, Inc.*, No. 4:15-cv-06314-YGR, (N.D. Cal. Aug. 15, 2019) (claimants received $235 per phone number at which they received calls); *Steinfeld v. Discover Fin. Servs.*, No. C 12-01118, Dkt. No. 96 at ¶ 6 (N.D. Cal. Mar. 10, 2014) (claimants received $46.98); *Adams v. AllianceOne Receivables Mgmt., Inc.*, No. 3:08-cv-00248-JAH-WVG, Dkt. No. 137 (S.D. Cal. Sept. 28, 2012) (claimants received $40); *Kramer v. Autobytel, Inc., et al.*, No. 10-cv-2722, Dkt. 148 (N.D. Cal. 2012) (approving TCPA settlement providing for a cash payment of $100 to each class member); *Estrada v. iYogi, Inc.,* 2015 WL 5895942, at *7 (E.D. Cal. Oct. 6, 2015) (granting preliminary approval to TCPA settlement where class members estimated to receive $40); *Rose v. Bank of Am. Corp.*, 2014 WL 4273358, at *10 (N.D. Cal., 2014) (approving TCPA settlement where claimants were estimated to receive $20 to $40); *Desai v. ADT Sec. Servs., Inc.,* Case No. 1:11-cv-01925, Dkt. No. 229 (N.D. Ill. Feb. 14, 2013) (estimating payments between $50 and $100); *Rinky Dinky v. Elec. Merchant Sys.*, No. C13-1347-JCC, Dkt. No. 151 (W.D. Wash. Apr. 19, 2016) ($97 payments); *In re Capital One Tel. Consumer Prot. Act Litig. (In re Capital One)*, 80 F. Supp. 3d 781, 787 (N.D. Ill. 2015) (approving settlement where each class member received $34.60 per claimant); *see also* Chart of comparable TCPA settlements. ECF No. 350, Ex. 2.

        4.    <u>The extent of discovery completed and the stage of the proceedings.</u>

        This case has been litigated for over five years. *See* ECF No. 333 (Terrell Prelim. Approval Decl.) ¶ 3-6, 8-10. The parties reached a settlement just before oral argument on Plaintiffs' fully-briefed renewed class certification motion. As a result of the voluminous information exchanged in discovery, the extensive motion work, and the aggressive litigation that occurred over the course of five years, the parties were well apprised of the salient legal and factual issues before deciding to settle the case. This factor favors settlement approval. *See Cabiness v. Educ. Fin. Sols., LLC*, 2019 WL 1369929, at *5 (N.D. Cal. Mar. 26, 2019) (holding that "the parties conducted sufficient discovery to make an informed decision about the adequacy of the settlement" because "[a]t the time of settlement, the parties had spent almost two years engaged in litigation, including dispositive motions, discovery, and depositions").

1        5.     <u>The experience and views of counsel.</u>

2        Plaintiffs' counsel have substantial experience litigating TCPA class actions through

3 settlement and trial. They all endorse the Settlement. *See* ECF Nos. 333, 337, 338, 339.

4        6.     <u>The presence of a governmental participant.</u>

5        The Settlement Administrator sent the notice required under the Class Action Fairness

6 Act ("CAFA"), 28 U.S.C. § 1715. ECF No. 351 (Supp. Schachter Decl.) ¶ 3. No governmental

7 entity has objected to the Settlement. *See id.*; *see also* Reid Decl. ¶ 3.

8        7.     <u>The Rule 23(e)(2) considerations favor approval.</u>

9        The considerations outlined in Rule 23(e)(2) also support final approval of the settlement.

10 The first consideration is the adequacy of Plaintiffs' and their counsel's representation of the

11 Settlement Class. In granting preliminary approval of the settlement, the Court found that "the

12 representative parties and class counsel have fairly and adequately represented the interests of

13 the Class." ECF No. 355 at 5:19-20. The Court also found that Plaintiffs satisfy Rule 23's

14 adequacy requirement. *Id.* at 5:23-6:1. Plaintiffs committed significant time to this case and

15 support the settlement. ECF Nos. 334, 335 & 336 (Plaintiff declarations). Class Counsel, who

16 have a great deal of experience litigating, trying, and settling TCPA class action cases, also

17 wholeheartedly support the settlement. This consideration therefore supports approval.

18        The second consideration also supports approval because the settlement was negotiated at

19 arms' length. The Court is well aware of the hard-fought nature of this litigation, which involved

20 multiple disputed motions, and the parties approached settlement discussions in the same way.

21 Murray Decl. ¶ 2. None of the "red flags" of potential collusion the Ninth Circuit has identified

22 exist in this case. *See In re Bluetooth*, 654 F.3d at 947 (noting that plaintiffs' counsel may have

23 allowed pursuit of their own self-interest to infect settlement negotiations when they receive a

24 disproportionate portion of the settlement, the parties agree to a "clear sailing" arrangement

25 providing for the payment of attorneys' fees separate and apart from class funds, or the parties

26 agree that any fees not awarded will revert to defendants rather than be added to the class fund).

27

28

1  This is a non-reversionary settlement with no clear sailing provision, and Class Counsel seek a

2  reasonable 25% of the total settlement value. *See* Murray Decl. ¶ 5.

3       The third consideration also supports settlement. The $9,750,000 Settlement Fund

4  combined with Fluent's changes to its practices and promotion of TCPA compliance is more

5  than adequate to warrant approval, particularly in light of the costs, risks and delay of trial and

6  appeal. The distribution plan ensures that Settlement Class Members will be treated equitably

7  relative to each other. Settlement Class Members who have both a prerecorded call claim and a

8  NDNC claim were eligible to receive twice as much from the Settlement Fund as Settlement

9  Class Members who have only a prerecorded call claim. Reid Decl. ¶ 21. The claim form merely

10 required the Class Member's name, contact information, the telephone number at which he or

11 she received the allegedly unlawful calls, and an affirmation that he or she received the allegedly

12 unlawful calls at the designated telephone number. *Id.*, Ex. B. The Settlement Fund will be

13 distributed to all Settlement Class Members who filed valid claims.

14      Plaintiffs address the reasonableness of the requested attorneys' fees in the motion filed

15 on October 20, 2023, which was 35 days before the deadline for Settlement Class Members to

16 opt out or object in compliance with the Court's Procedural Guidance for Class Action

17 Settlements and *In re Mercury Interactive Corp.*, 618 F.3d at 994. *See* ECF Nos. 356-362.

18      Finally, the fourth consideration—whether the proposed settlement treats class members

19 equitably relative to each other—also supports approval. The method for distributing the

20 Settlement Fund to Settlement Class Members is simple, straightforward, and equitable. After

21 Court-approved deductions for administrative costs, attorneys' fees and costs, and Service

22 Awards, the remaining funds will be divided equally according to the total number of shares

23 claimed and claimants will receive a payment for each share allocated to them.

24 **E.    The Settlement Class should be finally certified for settlement purposes.**

25      The Court conditionally certified the Settlement Class for settlement purposes when it

26 granted preliminary approval of the settlement. Nothing has changed. The Court concluded that

27 the Settlement Class satisfies numerosity because it has at least 675,377 members, satisfies

28

commonality because questions like whether Freedom is vicariously liable for calls made on its

behalf turn on common evidence, satisfies typicality because Plaintiffs' and Class Members'

claims arise from the same course of alleged conduct, and satisfies adequacy because Plaintiffs

have no conflicts with Class Members, have demonstrated their commitment to the Class, and

have retained qualified counsel. In addition, the Court found that predominance was satisfied

because common questions, including Freedom's vicarious liability, predominate over

individualized issues and classwide resolution is the only practical method of addressing the

alleged telemarketing violations at issue. ECF Nos. 355 ¶¶ 5-6. For the same reasons, the Court

should finally certify the Settlement Class for settlement purposes.

## V.    CONCLUSION

Plaintiffs respectfully request that the Court finally certify the Settlement Class and

approve the settlement as fair, reasonable and adequate.

## SIGNATURE ATTESTATION

The CM/ECF user filing this paper attests that concurrence in its filing has been obtained

from its other signatories.

RESPECTFULLY SUBMITTED AND DATED this 29th day of January, 2024.

TERRELL MARSHALL LAW GROUP PLLC

By: /s/ Jennifer Rust Murray, *Admitted Pro Hac Vice*
Beth E. Terrell, CSB #178181
Email: bterrell@terrellmarshall.com
Jennifer Rust Murray, *Admitted Pro Hac Vice*
Email: jmurray@terrellmarshall.com
936 North 34th Street, Suite 300
Seattle, Washington 98103
Telephone: (206) 816-6603

Michael F. Ram, CSB #104805
Email: mram@forthepeople.com
MORGAN & MORGAN
101 Montgomery Street, Suite 1800
San Francisco, California 94104
Telephone: (415) 358-6913

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Anthony I. Paronich, *Admitted Pro Hac Vice*
Email: anthony@paronichlaw.com
PARONICH LAW, P.C.
350 Lincoln Street, Suite 2400
Hingham, Massachusetts 02043
Telephone: (617) 738-7080

Edward A. Broderick, *Admitted Pro Hac Vice*
Email: ted@broderick-law.com
BRODERICK LAW, P.C.
99 High Street, Suite 304
Boston, Massachusetts 02110
Telephone: (617) 738-7080

Matthew P. McCue, *Admitted Pro Hac Vice*
Email: mmccue@massattorneys.net
THE LAW OFFICE OF MATTHEW P.
McCUE
1 South Avenue, Suite 3
Natick, Massachusetts 01760
Telephone: (508) 655-1415

*Attorneys for Plaintiffs*