UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **DANIEL BERMAN**, *et al.*,<br><br>　　　　Plaintiffs,<br><br>　　vs.<br><br>**FREEDOM FINANCIAL NETWORK, LLC**, *et al.*,<br><br>　　　　Defendants. | CASE NO. 4:18-CV-01060-YGR<br><br>**ORDER GRANTING MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT;**<br><br>**GRANTING MOTION FOR ATTORNEYS' FEES, COSTS, AND SERVICE AWARDS;**<br><br>**JUDGMENT**<br><br>Re: Dkt. Nos. 356 & 363 |

　　　The Court previously granted a motion for preliminary approval of the Class Action Settlement between plaintiffs Daniel Berman, Stephanie Hernandez, and Erica Russell and defendants Freedom Financial Network, LLC and Freedom Debt Relief LLC (collectively, the "Freedom Defendants"), Fluent, Inc., and Lead Science LLC. (Dkt. No. 355.) As directed by the Court's preliminary approval order, on October 20, 2023, plaintiffs filed their unopposed motion for attorneys' fees, costs, and service awards. (Dkt. No. 356.) Thereafter, plaintiffs filed their unopposed motion for final settlement approval on January 29, 2024. (Dkt. No. 363.) The Court held a hearing and took arguments from the parties on February 20, 2024.

　　　Having considered the motion briefing, the terms of the Settlement Agreement, the arguments of counsel, and the other matters on file in this action, the Court **GRANTS** the Motion for Final Approval. The Court finds the settlement fair, adequate, and reasonable. The provisional appointments of the class representatives and class counsel are confirmed.

　　　The Motion for Attorneys' Fees, Costs, and Service Awards is **GRANTED**. The Court **ORDERS** that class counsel shall be paid $2,812,500 in attorneys' fees and $200,108.85 in litigation costs; and class representatives and named plaintiffs Daniel Berman, Stephanie Hernandez, and Erica Russell shall be paid $5,000 service awards each.

## I. BACKGROUND

### A. Procedural History

Plaintiffs filed the putative class action complaint on February 19, 2018 against the Freedom Defendants for sending robotexts and robocalls in violation of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227. Plaintiffs amended their complaint four times, including to add defendants Fluent and Lead Science. (*See* Dkt. Nos. 30, 90, 220, 292.)

The parties reached a settlement prior to class certification with the assistance of experienced mediator Robert A. Meyer. The Amended Class Action Settlement Agreement ("Settlement Agreement"),[1] attached hereto as **Exhibit A**, defines the class as:

> [E]very person in the United States (1) to whom Defendants placed a call, (2) to a telephone number listed in LEADSCIENCE_677, (3) using an artificial or prerecorded voice, (4) in order to sell Freedom Financial Network, LLC and Freedom Debt Relief, LLC's products, and (5) between May 17, 2017, and April 17, 2018.

The above-referenced excerpt is hereinafter referred to as "the Settlement Class." In its preliminary approval order, the Court conditionally certified the Settlement Class and provisionally appointed Broderick Law, P.C., Terrell Marshall Law Group PLLC, The Law Offices of Matthew P. McCue, and Paronich Law, P.C. as Class Counsel; plaintiffs Daniel Berman, Stephanie Hernandez, and Erica Russell as class representatives; and A.B. Data as the Settlement Administrator. (*See generally* Dkt. No. 355.)

### B. Terms of the Settlement Agreement

Under the terms of the Settlement Agreement, defendant will pay $9,750,000 into a common settlement fund, without admitting liability. This amount includes attorneys' fees and costs, the cost of class notice and settlement administration, and the class representatives' service awards.

#### 1. *Attorneys' Fees and Costs*

Under the Settlement Agreement, plaintiff's counsel stated they would seek up to one-third of the Settlement Fund of $9,750,000 in attorneys' fees, plus out-of-pocket costs and expenses incurred

---

[1] The filing of an amended agreement was necessary to correct several issues identified by the Court with the initial settlement agreement. *See, e.g.*, Dkt. No. 349 (supplemental brief responding to the Court's concerns).

1 by Class Counsel in this litigation, which were estimated to be approximately $200,000. The
2 Settlement Agreement also stated that Class Counsel intended to request that Class Representatives
3 be awarded service awards in the amount of $5,000 each. Lastly, it provided that costs of class notice
4 and settlement administration would be paid out of the Settlement Fund, although it did not impose
5 limitations on such costs.[2]

### 2.  *Class Relief*

After deductions from the common fund for fees, costs, and service incentive awards, approximately $6,142,391.15 will remain to be distributed among the participating class members. Payments will be made to Settlement Class Members who timely filed valid claim forms, subject to the following protocol: (i) Settlement Class Members with only a prerecorded call claim will receive one settlement share; and (ii) Settlement Class Members who have both a prerecorded call claim and a National Do-Not-Call Claim[3] will be allocated two settlement shares. Plaintiffs estimate that each claimant will receive $116.89 per settlement share.

The Settlement Agreement does not provide for the reversion of settlement funds to defendants, absent the Agreement being terminated, the Court withholding approval, or an order approving the proposed settlement being reversed on appeal.[4]

Separately, the Agreement also provides for injunctive relief. Defendant Fluent agrees to implement changes to its business practices, including as to: record retention, consent authentication, and TCPA compliance. (*See* Settlement Agreement §§ 2.4.) Further, Fluent will: (i) "not initiate,

---

[2] Plaintiffs' Motion for Final Approval states that the Settlement Administrator agreed to cap their fees for notice and settlement administration at $580,000. *See* Dkt. No. 363 at 12:10-11.

[3] The Settlement Agreement explains that National Do-Not-Call Claims are claims arising under the TCPA's National Do-Not-Call Regulations. *See* settlement Agreement at § 2.3(b). "National Do-Not-Call claims are not limited to calls sent using a prerecorded message or artificial voice, but instead include any telemarketing calls or texts." Dkt. No. 349, Supplemental Brief in Support of Plaintiffs' Motion for Preliminary Approval at 14:15-16 (citation omitted).

[4] If the Settlement Agreement "is terminated or is not approved by the Court or an order approving the Agreement is reversed on appeal, the [p]arties shall be restored to their respective positions as of the date of the signing of this Agreement." Settlement Agreement § 10.2. Further, the Settlement Agreement states that, "If the termination or failure to be approved occurs after the Initial Notice Deposit has been made to the Settlement Administrator and charges have been incurred, then any sums not necessary for incurred expenses, or already expended upon notice at the time of the termination or failure to be approved shall be returned to [d]efendants." *Id*.

cause others to initiate, or assist others in initiating any outbound telephone call that plays or delivers a prerecorded message," and (ii) "ensure that those consumers who Fluent asserts ha[ve] previously consented to receive calls or texts selling Freedom's services as it relates to this lawsuit will not receive any further telemarketing text messages or prerecorded calls based on that consent." (*See id*. at §§ 2.4.5-2.4.6.)

### 3. *Cy Pres/Remainder*

The Settlement Agreement states that the Settlement Administrator shall make a second distribution of funds within 30 days of the "stale date" of the checks distributed through the first distribution. Any remaining funds, including to the extent a second distribution is not administratively feasible, will be distributed as a *cy pres* award to the Public Justice Foundation. In exchange for the settlement awards, class members will release claims against defendants as set forth in the Settlement Agreement at section 3.[5]

### C. Class Notice and Claims Administration

The Settlement Agreement is being administered by A.B. Data. Following the Court's preliminary approval and conditional certification of the settlement, A.B. Data implemented the Court-approved notice plan. This included successfully delivering postcard and email notices to Settlement Class Members and implementing a media notice program across digital networks and social media.

The Settlement Administrator also established a settlement website (the "Settlement Website") at www.BermanTCPASettlement.com, which includes the long-form settlement notice, the procedures for class members to submit claims or exclude themselves, contact information such as mailing addresses and telephone numbers for the Settlement Administrator and Class Counsel, the Settlement Agreement, the signed order of preliminary approval, and various other court documents, including the motion for attorneys' fees. The Settlement Administrator also operated a toll-free number for class member inquiries.

---

[5] For clarity, the Court notes that individuals who received text messages only, and not artificial or prerecorded voice calls, do not release any claims under the Settlement Agreement and are not members of the Settlement Class. *See* Dkt. No. 355 at 5 & n.4.

4

1    Class members were given until November 25, 2023, to object to or exclude themselves from the Settlement Agreement. Out of approximately 675,377 total class members, two people filed timely requests to opt out of the Settlement Class. No objections were filed.

A total of 286,324 claim forms were received by the administrator, of which 39,178 were accepted as valid.[6] Thus, valid claims were received for 5.8 percent of class members.

## II.   FINAL APPROVAL OF SETTLEMENT

### A.   Legal Standard

A court may approve a proposed class action settlement of a class "only after a hearing and only on finding that it is fair, reasonable, and adequate," and that it meets the requirements for class certification. Fed. R. Civ. P. 23(e)(2). In reviewing the proposed settlement, a court need not address whether the settlement is ideal or the best outcome, but only whether the settlement is fair, free of collusion, and consistent with plaintiff's fiduciary obligations to the class. *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998), *overruled on other grounds by Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011). The *Hanlon* court identified the following factors relevant to assessing a settlement proposal: (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceeding; (6) the experience and views of counsel; (7) the presence of a government participant; and (8) the reaction of class members to the proposed settlement. *Id.* at 1026 (citation omitted); *see also Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004).

Settlements that occur before formal class certification, such as this, also "require a higher standard of fairness." *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000) (citation omitted). In reviewing such settlements, in addition to considering the above factors, a court also

---

[6] Plaintiffs explain that 62,637 claim forms were denied outright because they did not contain information sufficient to reflect inclusion in the Settlement Class, were duplicative, or were otherwise defective. Thousands of other claims forms appeared fraudulent (*i.e.*, were submitted from IP addresses outside the United States or from the same IP address.) The Settlement Administrator sent deficiency notices to the 184,383 deficient claims and denial notices to the 62,637 denied claims and provided them a chance to cure. This process yielded 115 additional valid claims.

5

must ensure that "the settlement is not the product of collusion among the negotiating parties." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946-47 (9th Cir. 2011) (cleaned up).

### B. Analysis

#### 1. *The Settlement Class Meets the Prerequisites for Certification*

As the Court found in its order granting preliminary approval and conditional certification of the Settlement Class herein, the prerequisites of Rule 23 have been satisfied for purposes of certification of the Settlement Class.  (*See* Dkt. No. 355.)

#### 2. *Adequacy of Notice*

A court must "direct notice [of a proposed class settlement] in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1). "The class must be notified of a proposed settlement in a manner that does not systematically leave any group without notice." *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 624 (9th Cir. 1982).  Adequate notice requires: (i) the best notice practicable; (ii) reasonably calculated, under the circumstances, to apprise the Class members of the proposed settlement and of their right to object or to exclude themselves as provided in the settlement agreement; (iii) reasonable and constitute due, adequate, and sufficient notice to all persons entitled to receive notice; and (iv) meet all applicable requirements of due process and any other applicable requirements under federal law. *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985). Due process requires "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950).

The Court found the parties' proposed notice procedures provided the best notice practicable and reasonably calculated to apprise Class members of the settlement and their rights to object or exclude themselves. (Dkt. No. 355 at 7-8.)  Pursuant to those procedures, the Settlement Administrator carried out that program.  (Dkt. No. 363 at 3-5.)

In all, the Settlement Administrator reports that 86.5 percent of the class received individualized direct notice. The Settlement Administrator did not successfully reach the remaining Class Members, despite their best efforts, due to the limitations of the reverse lookup process used to

match the telephone numbers to which allegedly unlawful calls and messages were sent to names, postal addresses, and email addresses of the recipients; or because the addresses available were undeliverable.

Despite 86.5 percent of the class having received individualized direct notice, only about six percent filed valid claims. This falls on the low end of the Settlement Administrator's 5-15 percent response rate estimate. Plaintiffs explained at the final approval hearing that one reason the valid claim rate may have been lower than anticipated is due to the comparatively large amount of claims (over 200,000) that were denied as either fraudulent or incomplete, and which were not cured by claimants despite them being provided the opportunity to do so. *See supra*, note 6.

Based upon the foregoing, the Court finds that the Settlement Class has been provided adequate notice.

### 3. The Settlement Is Fair And Reasonable

As the Court previously found in its order granting preliminary approval, the *Hanlon* factors indicate the settlement here is fair and reasonable and treats class members equitably relative to one another. (Dkt. No. 355 at 6-7.)

The Court received no objections and two opt-outs as of the November 25, 2023 deadline. These objections and opt-outs constitute less than one percent of estimated class members. "[T]he absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members." *In re Omnivision Techs., Inc.*, 559 F.Supp.2d 1036, 1043 (N.D. Cal. 2008) (citation omitted); *see also Churchill Vill.*, 361 F.3d at 577 (holding that approval of a settlement that received 45 objections (0.05%) and 500 opt-outs (0.56%) out of 90,000 class members was proper).

In its preliminary approval order, the Court approved the proposed plan of allocation. (Dkt. No. 355 at 9.) That plan involved distributing settlement funds to Settlement Class members in the form of settlement "shares." Settlement Class members with both prerecorded call claim and a National Do-Not-Call claim will receive two shares. Settlement Class Members with only a prerecorded call claim will receive one settlement share. The distinction between the two groups arose out of the fact that Settlement Class members with National Do-Not-Call claims could

1 arguably obtain larger statutory damages at trial than those with only prerecorded call claims.
2 Given this, the Court finds the plan of allocation to be fair and reasonable and to treat class
3 members equitably and therefore approves that plan of allocation.

### *4.     Other Findings*

The Settlement Administrator provided the required notice to federal and state attorneys general under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1715(b). (Dkt. No. 365, Decl. of Markeita Reid Regarding Notice and Claims Administration ¶¶ 2-3.) Notice occurred more than 90 days before the date of this order, as required by 28 U.S.C. § 1715(d).

### *5.     Certification Is Granted and the Settlement Is Approved*

After reviewing all of the required factors, the Court finds the Settlement Agreement to be fair, reasonable, and adequate, and certification of the Settlement Class as defined therein to be proper. All persons who timely excluded themselves from the Settlement Class, as identified in **Exhibit B** hereto, are excluded from the Settlement Class.

The *cy pres* recipient, Public Justice Foundation, is **APPROVED**.

## III.   MOTION FOR ATTORNEYS' FEES, COSTS, AND CLASS REPRESENTATIVE AWARDS

Attorneys' fees and costs may be awarded in a certified class action under Federal Rule of Civil Procedure 23(h). Such fees must be found "fair, reasonable, and adequate" in order to be approved. Fed. R. Civ. P. 23(e); *Staton v. Boeing Co.*, 327 F.3d 938, 963 (9th Cir. 2003). To "avoid abdicating its responsibility to review the agreement for the protection of the class, a district court must carefully assess the reasonableness of a fee amount spelled out in a class action settlement agreement." *Id.* at 963 (citation omitted). "[T]he members of the class retain an interest in assuring that the fees to be paid class counsel are not unreasonably high," since unreasonably high fees are a likely indicator that the class has obtained less monetary or injunctive relief than they might otherwise. *Id.* at 964.

Class counsel requests an attorneys' fee award of $2,812,500. Based on the detailed time records submitted by counsel, the requested fees amount to approximately 107% of the lodestar. Defendants do not oppose the fee request.

The Court analyzes the fee request based on either the "lodestar" method or a percentage of the total settlement fund made available to the class, including costs, fees, and injunctive relief.

*Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002). The Ninth Circuit encourages courts to use another method as a cross-check in order to avoid a "mechanical or formulaic approach that results in an unreasonable reward." *In re Bluetooth*, 654 F.3d at 944–45 (citing *Vizcaino,* 290 F.3d at 1050–51.)

Under the lodestar approach, a court multiplies the number of hours reasonably expended by the reasonable hourly rate. *See Kelly v. Wengler*, 822 F.3d 1085, 1099 (9th Cir. 2016) ("[A] court calculates the lodestar figure by multiplying the number of hours reasonably expended on a case by a reasonable hourly rate. A reasonable hourly rate is ordinarily the 'prevailing market rate [] in the relevant community.'"). Under the percentage-of-the-fund method, courts in the Ninth Circuit "typically calculate 25% of the fund as the 'benchmark' for a reasonable fee award, providing adequate explanation in the record of any 'special circumstances' justifying a departure." *In re Bluetooth*, 654 F.3d at 942 (citing *Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990)). The benchmark should be adjusted when the percentage recovery would be "either too small or too large in light of the hours devoted to the case or other relevant factors." *Six (6) Mexican Workers*, 904 F.2d at 1311. When using the percentage-of-recovery method, courts consider a number of factors, including whether class counsel "'achieved exceptional results for the class,' whether the case was risky for class counsel, whether counsel's performance 'generated benefits beyond the cash settlement fund,' the market rate for the particular field of law (in some circumstances), the burdens class counsel experienced while litigating the case (e.g., cost, duration, foregoing other work), and whether the case was handled on a contingency basis." *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 954-55 (9th Cir. 2015) (quoting *Vizcaino*, 290 F.3d at 1048-50). "[T]he most critical factor [in determining appropriate attorney's fee awards] is the degree of success obtained." *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983).

No objector has challenged any of counsel's hour or rates.

Using the percentage of recovery method, the Court finds the requested attorneys' fees to reasonable and fair. The Court has also conducted a cross-check using the lodestar method.

The Court typically approves only a 25 percent award, per Ninth Circuit precedent. Here, parties estimate the total value of the settlement, including monetary relief in the amount of

9

1  $9,750,000 and injunctive relief with an estimated value of $1,500,000, is $11,250,000.[7] The

2  attorneys' fees requested come to 25 percent of this total.

3        The lodestar method confirms that the above-referenced fee award is reasonable under

4  the circumstances. The lodestar figure is calculated based on 3,865 hours of attorney and support

5  staff time at rates ranging from $125 to $1,000 per hour.  Plaintiffs claim hourly rates that are

6  commensurate with their experience and with the legal market in this district.  On the basis of

7  these reasonable hourly rates and amounts, class counsel calculate the lodestar to be

8  $2,632,824.50. Thus, the fee request of $2,812,500 represents a 1.07 multiplier on the

9  $2,632,824.50 lodestar, which is well within the range typically approved by courts in this

10 circuit. *See Vizcaino*, 290 F.3d at 1051 n.6 (noting that multipliers "ranging from one to four are

11 frequently awarded in common fund cases when the lodestar method is applied" and calculating,

12 based on a review of 24 cases, that multipliers ranging from 1.0 to 4.0 are used 83 percent of the

13 time). The Court determines the multiplier of 1.07 proposed here is reasonable and fair in light

14 of the circumstances of this litigation. As discussed, *supra*, plaintiffs litigated this case diligently

15 over more than five years, faced a not insignificant risk of defeat owing to the consent issue, and

16 secured meaningful injunctive relief for the Settlement Class.

---

[7] Courts in this circuit consider the "total benefits being made available to class members" when calculating the total value of the settlement, including the estimated value of injunctive relief secured for the benefit of the Settlement Class. *Chinitz v. Intero Real Estate Servs.*, 2022 WL 16528137, at *6 (N.D. Cal. Oct. 28, 2022). Here, defendant Fluent estimates that it will cost $1.5 million to implement the practice changes required by the Settlement Agreement. *See* Dkt. No. 350, Decl. of Beth Terrell in Support of Supplemental Brief in Support of Plaintiffs' Motion for Preliminary Approval at 2:7-8. Thus, the Court finds plaintiffs' estimate of the total value of the settlement reasonable insofar as it includes the estimated $1.5 million injunctive relief valuation.

      Even if the Court excluded the estimated injunctive relief valuation from the total value of the settlement, plaintiffs request for 28.8 percent of that figure ($9,750,000) as fees would still be reasonable and fair. As set forth above, the Ninth Circuit permits courts to consider, when assessing the reasonableness of a percentage-based award, factors such as: (i) whether counsel secured non-monetary benefits for the Settlement Class; and (ii) whether the case was risky for plaintiffs. *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d at 954-55. Here, plaintiffs secured commitments from defendant Fluent to implement significant practice changes. Further, the case carried a level of risk because defendants asserted an affirmative defense under the TCPA of recipient consent to being contacted. Plaintiffs could have lost on this point had the case progressed. Thus, even if the Court excluded the injunctive relief valuation and assessed the requested fee award against only the monetary value of the settlement, the 28.8 percent fee would still be reasonable and fair.

Based on the foregoing, the Court finds an award of attorneys' fees in the amount of $2,812,500 to be fair, reasonable, and adequate. The Court finds that this will adequately reimburse counsel for the hours spent working on this case. The Court also finds that Class Counsel represented their clients with skill and diligence and obtained an excellent result for the class, taking into account the possible outcomes and risks of proceeding to trial.

### B. Costs Award

Class counsel is entitled to reimbursement of reasonable out-of-pocket expenses. Fed. R. Civ. P. 23(h); *see Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) (holding that attorneys may recover reasonable expenses that would typically be billed to paying clients in non-contingency matters). Costs compensable under Rule 23(h) include "nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). Here, class counsel seeks reimbursement for litigation expenses, and provides records documenting those expenses, in the amount of $200,108.85. The Court finds this amount reasonable, fair, and adequate.

### C. Incentive Award

The district court must evaluate named plaintiffs' requested award using relevant factors including "the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions . . . [and] the amount of time and effort the plaintiff expended in pursuing the litigation." *Staton*, 327 F.3d at 977. "Such awards are discretionary . . . and are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez v. West Publishing Corp.*, 563 F.3d 948, 958-959 (9th Cir. 2009). The Ninth Circuit has emphasized that district courts must "scrutiniz[e] all incentive awards to determine whether they destroy the adequacy of the class representatives." *Radcliffe v. Experian Info. Solutions*, 715 F.3d 1157, 1163 (9th Cir. 2013).

Here, class representatives and named plaintiffs Daniel Berman, Stephanie Hernandez, and Erica Russell came forward to represent the interests of approximately 675,000 others, with very little personally to gain. Together, they protected the interests of the Settlement Class for more than five years. Plaintiffs devoted significant time to this litigation including developing the

11

1  claims, responding to written discovery, and being deposed. They also took the substantial risk of
2  litigation which, at a minimum, involves a risk of losing and paying the other side's costs.
3  Because the laws are not self-enforcing, it is appropriate to give incentives to those who come
4  forward with little to gain and at personal risk and who work to achieve a settlement that confers
5  substantial benefits on others.  Thus, the Court approves the requested incentive award payments
6  of $5,000 each for plaintiffs Berman, Hernandez, and Russell.

### IV. CONCLUSION

Based upon the foregoing, the motion for final approval of class settlement is **GRANTED**. The motion for attorneys' fees, costs, and service awards is **GRANTED** as follows: Class Counsel is awarded $2,812,500 in attorneys' fees and $200,108.85 in litigation costs.  Plaintiffs Berman, Hernandez, and Russell are granted incentive awards of $5,000 each.

Without affecting the finality of this order in any way, the Court retains jurisdiction of all matters relating to the interpretation, administration, implementation, effectuation and enforcement of this order and the Settlement.

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED** that final judgment is **ENTERED** in accordance with the terms of the Settlement Agreement, the Order Granting Preliminary Approval of Class Action Settlement filed on July 28, 2023, and this order.  This document will constitute a final judgment (and a separate document constituting the judgment) for purposes of Rule 58, Federal Rules of Civil Procedure.

The parties shall file a post-distribution accounting in accordance with this District's Procedural Guidance for Class Action Settlements no later than **November 8, 2024**. The Court **SETS** a compliance deadline on **November 15, 2024** on the Court's 9:01 a.m. calendar to verify timely filing of the post-distribution accounting.

**IT IS SO ORDERED.**

This terminates Docket Nos. 356 & 363.

Dated: February 23, 2024

_____
**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**